IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BISOUS BISOUS LLC, | |
| Plaintiff, | |
| v. | Case No. 3:21-cv-01614-B |
| THE CLE GROUP, | |
| Defendant. | |

**PLAINTIFF BISOUS BISOUS LLC'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   FACTS AND EVIDENCE OF TRADEMARK INFRINGEMENT ................................. 2

III.  ARGUMENT ..................................................................................................... 7

    A.    Legal Standard ......................................................................................... 7

    B.    BISOUS BISOUS Is Substantially Likely to Succeed on the Merits .................... 8

        1.    BISOUS BISOUS Has Protectable—and In Fact Incontestable—Rights In Its BISOUS Marks ......................................................................................... 9

        2.    CLE's Use of BISOU Is Likely to Cause Confusion with BISOUS BISOUS and Actual Confusion Has Already Occurred ............................................. 10

    C.    BISOUS BISOUS Will Suffer Irreparable Harm if CLE is Not Enjoined ........... 21

    D.    The Balance of Hardships Favors an Injunction .................................................. 23

    E.    The Public Interest Would Be Best Served by the Issuance of an Injunction ...... 24

IV.   CONCLUSION ................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
    237 F.3d 198 (3d Cir. 2000)...................................................................12, 13

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
    518 F.3d 321 (5th Cir. 2008) ..............................................10, 12, 13, 19

*Brainstorm CC, LLC v. Doe 1*,
    No. 4:20-CV-554, 2020 WL 8267578 (E.D. Tex. July 21, 2020) .......................................8, 20

*Coach, Inc. v. Eye Candy Shoes & Accessories*,
    No. 3:09-CV-2169-O, 2010 WL 11561845 (N.D. Tex. Dec. 16, 2010)................................10

*Elvis Presley Enters., Inc. v. Capece*,
    141 F.3d 188 (5th Cir. 1988) .................................................... *passim*

*Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*,
    628 F.2d 500 (5th Cir. 1980) ..............................................15, 16, 17

*Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings*,
    LLC, 434 F. Supp. 3d 473 (E.D. Tex. 2020) .................................... *passim*

*Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*,
    754 F.2d 591 (5th Cir. 1985) ..............................................11, 12, 15, 19

*Great Am. Rest. Co. v. Domino's Pizza LLC*,
    348 F. App'x 907 (5th Cir. 2009) ..............................................11, 12, 14

*Houston Cigar All. v. Off. Houston Cigar Wk. LLC*,
    No. CV H-20-4115, 2021 WL 1416875 (S.D. Tex. Apr. 14, 2021) .......................................21

*Mary Kay Inc. v. Anderson*,
    No. 3:17-CV-1889-B, 2018 WL 2230623 (N.D. Tex. May 16, 2018) ....................................8

*New Century Fin., Inc. v. New Century Fin. Corp.*,
    No. C-04-437, 2005 WL 2453204 (S.D. Tex. Oct. 4, 2005) ..................................20

*Paulsson Geophysical Servs., Inc. v. Sigmar*,
    529 F.3d 303 (5th Cir. 2008) ..............................................8, 23, 24

*Ramada Franchise Sys., Inc. v. Jacobcart, Inc.*,
    No. CIVA 3:01CV0306D, 2001 WL 540213 (N.D. Tex. May 17, 2001) .........................23, 24

*Roto-Rooter Corp. v. Garcia*,
    No. 4:20-CV-00497, 2021 WL 327569 (E.D. Tex. Feb. 1, 2021)..........................................22

*Scrum All., Inc. v. Scrum, Inc.*,
    No. 4:20-CV-00227, 2020 WL 4016110 (E.D. Tex. July 16, 2020) ................................17, 24

*Suzie's Brewery Co. v. Anheuser-Busch Co. LLC*,
    No. 3:21-cv-178-SI, 2021 WL 472915 (D. Or. Feb. 9, 2021) ..........................................21, 22

*Union Nat. Bank Tex., Laredo, Tex. v. Union Nat. Bank Tex., Austin, Tex.*,
    909 F.2d 839 (5th Cir. 1990) ........................................................................................9, 10, 12

## Statutes

15 U.S.C. § 1065 ...........................................................................................................................10

15 U.S.C. § 1114(1) ......................................................................................................................11

15 U.S.C. § 1115(a) .........................................................................................................................9

15 U.S.C. § 1115(b) ......................................................................................................................10

15 U.S.C. § 1116(a) ...........................................................................................................8, 21, 22

## Other Authorities

Fed. R. Civ. P. 65 ...........................................................................................................................2

## I.      INTRODUCTION

BISOUS BISOUS' hard-earned reputation as the Best Bakery in Dallas is at the mercy of a Dallas newcomer—BISOU—a French-inspired restaurant that opened just 12 days ago, instantly sparking dozens of harsh reviews that consumers mistakenly *gave to BISOUS BISOUS*.  In just one day following BISOU's opening on July 7 on McKinney Avenue, BISOUS BISOUS, a family-run patisserie well-known for its French-inspired pastries and desserts that has long been *on McKinney Avenue*, saw its public-facing Google Business Profile flooded with negative customer comments about slow service, bad food, and racial profiling.  BISOUS BISOUS' positive online rating abruptly dropped—practically overnight.  This prompted BISOUS BISOUS' owner Chef Andrea Meyer to refocus her efforts from running her bakery to engaging  in an emergency corrective advertising campaign over social media to explain to consumers that they were confused, and that their negative reviews should be posted to the online accounts associated with BISOU, rather than her bakery BISOUS BISOUS.  BISOUS BISOUS' small staff was equally distracted, having to field nearly a dozen misdirected phone calls in a *single* day from people calling for BISOU—all the while operating in a compromised back office space that was overrun with packages containing thousands of dollars of restaurant supplies delivered to BISOUS BISOUS, but *meant for BISOU*.

Given the harsh criticism of BISOU's food and service and its owner's "notorious" reputation for flouting Texas safety ordinances at the height of the Covid pandemic—most notably at its other BISOU restaurant in Houston that was called a "COVID NIGHTMARE"—the damage to BISOUS BISOUS' reputation resulting from such marketplace confusion is beyond repair.  For such a small, family-run bakery that relies on word-of-mouth, social media comments and tags, and online reviews, a mistaken association with the Defendant is debilitating.  The damage to BISOUS BISOUS is in fact so significant that the *Dallas Observer* reported on it on July 12, 2021:

> Bisou is a club-centric social dining spot that opened July 7 and, unfortunately, is already racking up negative reviews. And herein lies Meyer's true 21st-century problem: Customers are mistakenly leaving one-star reviews for her bakery instead of the restaurant.

Unhelpful is BISOU's silence on the confusion, which does nothing to repair the marketplace confusion BISOU has caused.

Plaintiff BISOUS BISOUS respectfully seeks this Court's expedited assistance so that CLE's infringement of the BISOUS BISOUS trademark is enjoined immediately, and the mistaken association between BISOU and BISOUS BISOUS stops before any further irreparable damage is done to BISOUS BISOUS.[1]

## II.      FACTS AND EVIDENCE OF TRADEMARK INFRINGEMENT

In late 2012, pastry chef Andrea Meyer started her patisserie, BISOUS BISOUS.[2]  BISOUS BISOUS—meaning "kisses kisses" or "lots of love" in French—at the White Rock Local Market, offering a variety of French-inspired pastries, prepared daily from scratch.[3]  Under the guidance of Chef Meyer, a professional pastry chef and graduate of Le Cordon Bleu, BISOUS BISOUS began to gain traction in the Dallas area.[4]  By 2015, BISOUS BISOUS expanded to a brick-and-

---

[1] Although Rule 65 of the Federal Rules of Civil Procedure permits the Court to issue a temporary restraining order in certain circumstances without notice to CLE, BISOUS BISOUS is not seeking an ex parte temporary restraining order in this application.  BISOUS BISOUS served CLE with the Summons and Complaint and is attempting to serve CLE with a copy of this Application simultaneously with its filing with the Court.  BISOUS BISOUS has also provided notice of the Complaint and this Application via e-mail to Albert T. Van Huff, CLE's attorney who has previously communicated with BISOUS BISOUS' counsel about this matter and who BISOUS BISOUS believes continues to represent CLE.  Accordingly, BISOUS BISOUS requests that the Court set an expedited briefing schedule for this Application, with CLE's written response due on or before July 21, 2021, and BISOUS BISOUS' reply due on or before July 23, 2021.  Following the response and any reply by BISOUS BISOUS, BISOUS BISOUS respectfully requests that the Court issue a temporary restraining order, then set this matter for a hearing on its Motion for a Preliminary Injunction as soon as reasonably convenient.

[2] App. at 1 (Declaration of Andrea Meyer ("Decl.") ¶ 4).

[3] *Id.* at 1–2 (Decl. ¶¶ 4–5).

[4] *Id.* at 1 (Decl. ¶ 3).

mortar shop on McKinney Avenue in the heart of Uptown Dallas.[5]  In addition to an evolving menu of macarons, cruffins, croissants, tarts, éclairs, and custom-made cakes, BISOUS BISOUS has offered culinary classes, sells its products in multiple locations through its mobile food truck, and operates an off-site kitchen for its wholesale business.[6]  As its name and business grew, BISOUS BISOUS registered a number of trademarks with the United States Patent and Trademark Office for the BISOUS BISOUS word and design marks (collectively, the "BISOUS Marks"), some of which are incontestable.[7]  By mid-2018, in light of the overwhelmingly positive local response to BISOUS BISOUS, Chef Meyer considered an expansion to additional stores in Dallas and other Texas cities.[8]

BISOUS BISOUS' success is in part due to the talent and personal investment of Chef Meyer.  Awarded by CultureMap TasteMaker as the "2019 Pastry Chef of the Year," Chef Meyer has attended and been featured in the promotional material for numerous Dallas-based culinary events as BISOUS BISOUS' owner and pastry chef,[9] as well as conducted many interviews with Dallas news stations, discussing the history of BISOUS BISOUS and sharing its dessert recipes and plans for future menu items.[10]  Beyond this, BISOUS BISOUS has independently received substantial media attention in Dallas.[11]  BISOUS BISOUS has earned the title of "Best Bakery"

---

[5] *Id.* at 2 (Decl. ¶ 5).
[6] *Id.* at 2–3 (Decl. ¶¶ 5, 7).
[7] *Id.* at 2, 22–28 (Decl. ¶ 6, Ex. A).
[8] Medical issues with Chef Meyer in 2018 paused this expansion of BISOUS BISOUS.  App. at 2 (Decl. ¶ 5).
[9] *Id.* at 11, 70–75 (Decl. ¶ 11, Ex. E) (collection of online articles about Chef Meyer and BISOUS BISOUS' participation in culinary events, including Dallas' "Park and Palate" and "Taste of Dallas 2019").
[10] *Id.* at 6–7, 162–206 (Decl. ¶¶ 13–14, Exs. G, H) (collection of online articles in *The Daily Meal*, *Shoutout DFW*, the *Dallas Observer*, and *Central Track* featuring Chef Meyer, and a compilation of webpage screenshots of Chef Meyer's appearances on *Fox 4 KDFW*).
[11] *Id.* at 6, 76–160 (Decl. ¶ 13, Ex. F).

by the *Dallas Observer*, was selected as one of *USAToday's* "10 Best" bakeries in Dallas, and was named the "best bakery for sweets" twice in *D Magazine*.[12]  BISOUS BISOUS is frequently featured in articles discussing eateries in the Dallas area, and consistently is recommended by *EATER Dallas*.[13]  BISOUS BISOUS has received equal praise from its patrons in the form of reviews on websites such as Yelp, Google, TripAdvisor, and Facebook, typically having a rating of least 4.5/5 stars on Yelp.[14]  BISOUS BISOUS also holds a 5/5 rating on Facebook.[15]  BISOUS BISOUS strives to bolster this positive reputation, and has maintained a steady social media presence in addition to its website at <bisous-bisous.com>, amassing nearly 6,500 followers on Facebook and 18,000 followers on Instagram.[16]  BISOUS BISOUS has invested considerable time and money into promoting its brand, devoting tens of thousands of dollars into its advertising and marketing.[17]  Its sales also have steadily increased over the years: in 2019–2020 alone, and during Covid closures, BISOUS BISOUS' revenue approached two million dollars.[18]

In early 2021, BISOUS BISOUS learned that Houston-based hospitality group, The Cle Group ("CLE") was planning to open a French-inspired restaurant in Dallas by the name "BISOU" ("BISOU Dallas").[19]  Concerned by the near identical nature of the mark and French-inspired eatery—BISOU is pronounced "bi-zu" exactly like the word "bisous"—BISOUS BISOUS promptly notified CLE of its rights in the BISOUS Marks and requested that CLE not use the name

---

[12]*Id.* at 6, 78–82, 149–160 (Decl. ¶ 12, Ex. F).
[13] *Id.* at 6, 83–148 (Decl. ¶ 12, Ex. F) (*EATER Dallas'* articles featuring BISOUS BISOUS, entitled "10 Places to Indulge in Dallas's Finest Macarons"; "Where to Find the Best Pies in DFW"; and "17 Excellent Options for Father's Day Takeout").
[14] App. at 3–4, 57–69 (Decl. ¶ 9, Ex. D).
[15] *Id.* at 4–5, 53–56 (Decl. ¶ 9, Ex. C) (screenshot of BISOUS BISOUS' 5/5 rating on Facebook).
[16] *Id.* at 3, 42–56 (Decl. ¶ 8, Ex. C).
[17] *Id.* at 5 (Decl. ¶ 10).
[18] *Id.* at 7 (Decl. ¶ 16).
[19] *Id.* at 8 (Decl. ¶ 17).

BISOU.[20]  In response, CLE's attorney acknowledged that "*Bisou[s] Bisou[s] may be recognized in the Dallas, Texas area*," but that CLE would not be ceasing use of BISOU in any event.[21]

More recently, CLE started to publicize the opening of BISOU Dallas on its website and social media, referring to it as simply "BISOU."[22]  Right before BISOU Dallas' opening, packages and visitors intended for BISOU mistakenly arrived at BISOUS BISOUS.[23]  For example, one week prior to BISOU Dallas' opening, BISOUS BISOUS received a large set of supplies intended for BISOU Dallas and addressed to "BISOU UPTOWN."[24]  BISOU Dallas' launch exacerbated these one-off incidents of confusion, causing damage to BISOUS BISOUS on a whole new level. On July 7, 2021, BISOU Dallas opened its doors on McKinney Ave., less than a mile away from BISOUS BISOUS.[25]  Within hours of its opening, dozens of consumers left negative reviews about the food, service, and poor treatment received at BISOU Dallas; however, most of these reviews were mistakenly posted to *BISOUS BISOUS'* pages on Yelp and Google, including the representative examples below:



---

[20] App. at 8 (Decl. ¶ 18).
[21] *Id.* at 8, 210 (Decl. ¶ 19, Ex. J) (response letter from CLE's attorney, whose misspelling of BISOUS to BISOU renders that response even more troubling).
[22] *Id.* at 14, 375–387 (Decl. ¶ 27, Ex. P) (compilation of screenshots of BISOU Dallas' Instagram, Facebook, and website referring to the restaurant simply as "BISOU").
[23] On or around May 24, 2021, BISOU Dallas advertised its staff openings on its Instagram.  On June 9, 2021, one individual mistakenly showed up to BISOUS BISOUS to interview, when, on information and belief, he was seeking to interview at BISOU.  *Id.* at 16, 375–387 (Decl. ¶ 28).
[24] *Id.* at 16 (Decl. ¶ 29).
[25] *Id.* at 8, 207–208 (Decl. ¶ 17, Ex. I) (Google Maps imaging showing the proximity of BISOU Dallas and BISOUS BISOUS).



Twenty-four hours following BISOU Dallas' launch, BISOUS BISOUS' Google rating fell as a result of the influx of misdirected one-star reviews.[27]  The confusion even drew the attention of the media: the *Dallas Observer* published an article on July 12, 2021 entitled "Just One Kiss: Bisous Bisous Gets 32 One-Star Reviews Intended for New Neighbor."[28]  BISOUS BISOUS' Facebook, Instagram, and its physical store were not exempt from this confusion, either. Following the launch, customers of BISOU Dallas mistakenly selected the location tag for BISOUS BISOUS on both Instagram and Facebook when posting photos of BISOU, interspersing photos of BISOU among a feed of photos tagged at BISOUS BISOUS.[29]  Additionally, since the launch, BISOUS BISOUS has mistakenly received numerous calls—11 in just one day—from customers asking for BISOU.  Customers had called with questions for BISOU, including whether they can bring balloons, what the hours are, whether they can make a reservation, and what the wait time is at BISOU.[30]

Making matters worse, CLE and its restaurants have earned a notoriously bad reputation in the media and among its customers.  CLE maintains multiple restaurants and nightclubs in Houston, including Clé, Spire, and another restaurant by the name BISOU ("BISOU Houston").[31]

---

[26] *Id.* at 17–18, 407–421 (Decl. ¶ 30, Ex. R).
[27] App. at 18 (Decl. ¶ 31).
[28] *Id.* at 18, 422–426 (Decl. ¶ 32, Ex. S).
[29] *Id.* at 19–20, 427–430 (Decl. ¶¶ 34–35, Ex. T).
[30] *Id.* at 21 (Decl. ¶ 36).
[31] *Id.* at 14, 368–371 (Decl. ¶ 26, Ex. O) (*EATER Dallas* article identifying CLE as owner of Clé, Spire, and BISOU Houston).  Because of Chef Meyer's diagnosis and focus on treatment, BISOUS BISOUS did not learn about BISOU Houston until well after its opening.  *Id.* at 8 (Decl. ¶ 18).

In the past year and a half, all three venues have blatantly disregarded capacity limits and social distancing requirements imposed in light of the Covid-19 pandemic, prompting criticism by the media,[32] negative online reviews by patrons,[33] and even liquor license suspensions by the Texas Alcoholic Beverage Commission.[34]  In addition to its Covid-19 violations, BISOU Houston has received years of criticism online commenting on the poor quality of its food, sanitation, and service.[35]  CLE's reputation followed it to Dallas, where media outlets like *EATER Dallas* reported in March on the "notorious" CLE opening BISOU in the coming months.[36]

On July 13, 2021, BISOUS BISOUS filed its complaint against CLE in the Northern District of Texas alleging trademark infringement and unfair competition.  Since then, CLE has nonetheless continued to promote BISOU on social media, including on Facebook and Instagram.[37]

## III.    ARGUMENT

### A.    Legal Standard

A temporary restraining order and preliminary injunction are necessary to prevent further irreparable injury to BISOUS BISOUS.  Section 34 of the Lanham Act empowers district courts

---

[32] App. at 13, 354–374 (Decl. ¶ 24, Ex. O) (compilation of articles published by *EATER Houston*, *EATER Dallas*, *CultureMap Houston*, and *Fox26* discussing CLE's violations of Covid-19 safety guidelines).

[33] *Id.* at 12–13, 213–331, 340–353 (Decl. ¶ 23, Exs. L, N) (compilations of Yelp and Google reviews for BISOU Houston that feature reviews expressing concern over BISOU Houston's failure to abide by Covid-19 safety protocols).

[34] *Id.* at 13, 358–363 (Decl. ¶ 24, Ex. O) (Articles by *EATER Houston* covering Cle and Spire's multiple, repeated suspensions of liquor licenses).

[35] *Id.* at 9–11, 213–353 (Decl. ¶¶ 21, 22, Exs. L–N) (compilations of Yelp, TripAdvisor, and Google reviews that feature reviews criticizing BISOU Houston's food and sanitation, describing it as "extremely underwhelming" and reporting food poisoning and spotting vermin, and describing experiences of discrimination).

[36] *Id.* at 13, 368–371 (Decl. ¶ 24, Ex. O).

[37] *Id.* at 21, 381–382 (Decl. ¶ 37, Ex. P) (screenshots of BISOU Dallas' Facebook and Instagram taken after BISOUS BISOUS' complaint had been filed).

to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . ."  15 U.S.C. § 1116(a).  A plaintiff seeking a preliminary injunction or a temporary restraining order must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008); *see also Brainstorm CC, LLC v. Doe 1*, No. 4:20-CV-554, 2020 WL 8267578, at *2 (E.D. Tex. July 21, 2020) (applying the same four-prong test in granting a temporary restraining order).  All of these factors are easily satisfied here.

## B.    BISOUS BISOUS Is Substantially Likely to Succeed on the Merits

BISOUS BISOUS is substantially likely to prevail on the merits of its claims for trademark infringement, false designation of origin, and unfair competition under the Lanham Act and Texas common law.  To establish federal and common law trademark infringement, a plaintiff must show that (1) it has a protectable right in the mark, and (2) that there is a likelihood of confusion between the marks.  *Paulsson*, 529 F.3d at 309; *Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings*, LLC, 434 F. Supp. 3d 473, 492 (E.D. Tex. 2020).[38]

---

[38] The crux of BISOUS BISOUS' claims in Counts I–III of the Complaint is CLE's infringement of the BISOUS Marks.  Because the facts giving rise to these claims *and* the test under which courts in the Fifth Circuit analyze these claims are essentially the same, BISOUS BISOUS addresses the likelihood of success on the merits on Counts I–III simultaneously unless otherwise stated.  *See Mary Kay Inc. v. Anderson*, No. 3:17-CV-1889-B, 2018 WL 2230623 at *3 (N.D. Tex. May 16, 2018) (jointly considering plaintiff's claims for trademark infringement and unfair competition under the Lanham Act and Texas common law).

1.    ***BISOUS BISOUS Has Protectable—and In Fact Incontestable—Rights In Its BISOUS Marks***

BISOUS BISOUS owns valid, protectable, and federally registered trademark rights in the BISOUS Marks in connection with bakery goods, retail bakery shop services, and café and restaurant services.  BISOUS BISOUS has used the BISOUS Marks continually as a source identifier for these goods and services for nearly a decade.[39]  As such, BISOUS BISOUS owns common law rights in the BISOUS Marks dating back to 2012, which is well prior to any use of the confusingly similar mark BISOU by Defendant.  *Union Nat. Bank Tex., Laredo, Tex. v. Union Nat. Bank Tex., Austin, Tex*., 909 F.2d 839, 842–43 (5th Cir. 1990) ("Ownership of trademarks is established by use, not by registration.  The first one to use a mark is generally held to be the "senior" user and is entitled to enjoin other "junior" users from using the mark, or one that is deceptively similar to it.").  BISOUS BISOUS' federal trademark registrations for the BISOUS Marks are also evidence that the BISOUS Marks are valid and protectable.  *See* 15 U.S.C. § 1115(a) (providing that "[a]ny registration . . . of a mark registered on the principal register . . . owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration . . . ."); *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1988) (holding that a party's registration in the "Elvis Presley" marks "establish[ed] that it is entitled to protection from infringement by junior users, thereby meeting the threshold requirement that the plaintiff must possess a protectable mark.").

Moreover, Reg. No. 4,811,207 for the word mark BISOUS BISOUS and Reg. No. 4,811,208 for the design mark BISOUS BISOUS PÂTISSERIE both for "[b]akery goods,

---

[39] App. at 1 (Decl. ¶ 4).

excluding solid chocolate," are *incontestable* within the meaning of 15 U.S.C. § 1065 because they were registered more than five years ago and the marks have been in continuous use ever since.[40] These incontestable registrations are *conclusive evidence* of the validity and registration of the BISOUS Marks, of BISOUS BISOUS' ownership of the BISOUS Marks, and of BISOUS BISOUS' exclusive right to use the BISOUS Marks in commerce in connection with bakery goods. 15 U.S.C. § 1115(b) ("[t]o the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce"); *see Coach, Inc. v. Eye Candy Shoes & Accessories*, No. 3:09-CV-2169-O, 2010 WL 11561845, at *4 (N.D. Tex. Dec. 16, 2010) (explaining that plaintiff's incontestable registrations "conclusively evince [p]laintiffs' ownership of the mark and their legal validity").

BISOUS BISOUS has satisfied the first element of its claims.

### 2.    CLE's Use of BISOU Is Likely to Cause Confusion with BISOUS BISOUS and Actual Confusion Has Already Occurred

The "two principal concerns of trademark law" are "(1) to protect consumers against confusion and monopoly, and (2) to protect the investment of producers in their trade names to which goodwill may have accrued and which goodwill free-riders may attempt to appropriate by using the first producer's mark, or one that is deceptively similar." *Union Nat. Bank.,* 909 F.2d at 843–44. Both of these concerns are present here.

To determine whether use of a mark creates a likelihood of confusion as to affiliation, sponsorship, or source, the Fifth Circuit considers eight non-exhaustive "digits of confusion." *Elvis Presley*, 141 F.3d at 194; *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th

---

[40] App. at 2, 22–28 (Decl. ¶ 6, Ex. A).

Cir. 2008).  These include: "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) any evidence of actual confusion[,]'...[and] (8) the degree of care exercised by potential purchasers." *Elvis Presley*, 141 F.3d at 194; *see also Fletcher's*, 434 F. Supp. 3d at 490.  A finding of likelihood of confusion need not be supported even by a majority of the factors. *Elvis Presley*, 141 F.3d at 194.  The digits are a flexible and non-exhaustive list, and do not apply mechanically.  Yet, the "likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion." *Id.* at 193.  Here, not only is there a probability of confusion caused by CLE's use of BISOU, an extraordinary amount of actual confusion *has already occurred.*  Actual confusion is the "best" evidence of likelihood of confusion.  *Id.* at 203–204 (internal citations omitted).

In addition to a likelihood of "forward" confusion, CLE's use of BISOU has caused "reverse" confusion among relevant consumers.  Both types of confusion (i.e., forward and reverse) are actionable under the broad language of 15 U.S.C. § 1114(1)[41] and require an analysis of the digits of confusion.  *Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591, 596 (5th Cir. 1985) (noting that "the broad language of § 1114(1) clearly encompasses confusion on the part of purchasers of either (or both) party's products").  Reverse confusion arises when "a larger and more well-known company uses the mark of a smaller senior user." *Great Am.*

---

[41] 15 U.S.C. § 1114(1) provides that "[a]ny person who shall, without the consent of the registrant—use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided."

*Rest. Co. v. Domino's Pizza LLC*, 348 F. App'x 907, 908 (5th Cir. 2009).  As explained in *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, a seminal case on reverse confusion cited by the Fifth Circuit (*see id.*), "the harm following from reverse confusion is that the public comes to assume the senior user's products are really the junior user's or that the former has somehow connected to the latter. . . . The senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." 237 F.3d 198, 228 (3d Cir. 2000) (citations omitted); *see also Fuji Photo Film*, 754 F.2d 591, 596 (discussing doctrine of "reverse confusion" and citing cases).  In light of the relative status of the parties, we address the likelihood of success on the merits on a claim for both forward and reverse confusion below.  And as to either theory, "'likelihood of confusion' may be found absent confusion as to source; trademark infringement occurs also "when the use sought to be enjoined is likely to confuse purchasers with respect to ... [the products'] endorsement by the plaintiff, or its connection with the plaintiff.'"  *Fuji Photo Film*, 754 F.2d at 596.

<u>First</u>, the BISOUS Marks are strong and inherently distinctive.  The Fifth Circuit analyzes the strength of a trademark under two factors: (1) where the mark falls on a spectrum from weak to strong:  from descriptive, to suggestive, to arbitrary, or to fanciful; and (2) the standing of the mark in the marketplace, i.e., its commercial strength.  *Am. Rice, Inc.*, 518 F.3d at 330.

BISOUS BISOUS, which translates to "kisses kisses" in English,[42] is arbitrary because "kisses kisses" has no particular significance to bakery goods or related services and an ordinary consumer hearing the term BISOUS BISOUS would not be able to determine what types of goods or services BISOUS BISOUS sells.  *Union Nat. Bank.*, 909 F.2d at 845 (explaining arbitrary marks are ordinary words that do not suggest or describe the services involved) (citations omitted).

---

[42] App. at 1 (Decl. ¶ 4).

Accordingly, the BISOUS Marks are entitled to strong protection.  *Am. Rice, Inc.*, 518 F.3d at 330 (arbitrary marks afforded the greatest protection in the spectrum from generic to arbitrary marks).[43] Aside from their inherent strength by being arbitrary, the BISOUS Marks are commercially strong in Dallas.  BISOUS BISOUS has been a steady fixture in the Dallas food scene since its opening at White Rock Local Market in 2012, and expansion to a brick-and-mortar store on McKinney Avenue in 2015.[44]  BISOUS BISOUS quickly became known for its high-quality and innovative pastries and desserts, earning it many accolades, including being named as the "Best Bakery" by the *Dallas Observer* and one of the "10 Best" bakeries in Dallas by *USAToday*.[45]  BISOUS BISOUS also has received ample press coverage[46] and numerous rave reviews on Google, Yelp, and Trip Advisor.[47]  BISOUS BISOUS has invested considerable time and resources into the promotion of its business and the BISOUS BISOUS brand including through advertising, on-air television news features, and social media, where it has a growing number of thousands of fans and followers.[48]  Indeed, CLE's counsel admitted that "Bisou[s] Bisou[s] may be recognized in the Dallas, Texas area."[49]

Still, as a family-owned business, BISOUS BISOUS' resources and reach are no match for those of a "notorious" hospitality group that operates several nightclubs and restaurants in two cities like CLE.  Indeed, in just one week, all of the negativity surrounding BISOU Dallas combined with its prominent social media marketing, swallowed up the decade-long progress that

---

[43] *See A & H Sportswear, Inc.*, 237 F.3d at 231 (in a reverse confusion case, "just as in direct confusion cases, a [conceptually] strong mark should weigh in favor of a senior user").
[44] App. at 1–2 (Decl. ¶¶ 4–5).
[45] *Id*. at 6, 76–160 (Decl. ¶ 13, Ex. F).
[46] *Id*. at 6–7, 70–75, 161–206 (Decl. ¶¶ 11, 14–15, Exs. E, G, H).
[47] *Id*. at 3–4, 53–69 (Decl. ¶ 9, Exs. C–D).
[48] *Id*. at 3, 5, 7, 42–56, 161–206 (Decl. ¶¶ 8, 10, 14–15, Exs. C, G, H).
[49] *Id*. at 8, 210 (Decl. ¶ 19, Ex. J).

13

BISOUS BISOUS made in building brand strength and goodwill.  *See Great Am. Rest. Co.*, 348 F. App'x at 908 (explaining that in the case of reverse confusion, "the 'commercial strength' of the junior user's mark" is also assessed).  In *Great Am. Rest. Co.*, the Court noted that the junior user (Domino's Pizza)'s mark, "BSP," had "acquired a secondary meaning associating it with Domino's due to Domino's extensive advertising campaign," and "such evidence of the 'commercial strength' of the defendants' mark is probative in cases of reverse confusion."  *Id.* Likewise here, CLE has been advertising its BISOU restaurants in both Houston and Dallas even before the Dallas location opened and appears to have surpassed BISOUS BISOUS' advertising in terms of its size and commercial reach.  For example, CLE's "bisouhouston" Instagram account has more followers than BISOUS BISOUS' "bisousbisouspatisserie" Instagram account.[50]  And as *EATER Dallas* reported, CLE is "notorious" in Texas and has made headlines for repeatedly flouting the state's Covid restrictions.[51]  While BISOUS BISOUS is well-known among the Dallas community, and also likely among visitors who have sought out Dallas' "Best Bakery,"[52] the goodwill and reputation it has built in the Dallas area is harmed when a larger entity using a virtually identical mark for virtually identical services makes a publicized entrance into its market. This perfectly describes the opening of BISOU Dallas on July 7 and all of its ensuing negative reviews, which both dwarfed and negatively impacted BISOUS BISOUS.[53]  In sum, the first digit favors BISOUS BISOUS under both a forward and reverse confusion analysis.

---

[50] *Compare* App. at 3, 43 (Decl. ¶ 8, Ex. C) (BISOUS BISOUS' Instagram) *with id.* at 14, 389 (Decl. ¶ 27, Ex. Q) (BISOU Houston's Instagram).
[51] App. at 14, 368–370 (Decl. ¶ 26, Ex. O); *see also id.* at 358–363 (articles by *EATER Houston*).
[52] *Id.* at 6, 78–82 (Decl. ¶¶ 12–13, Ex. F).
[53] *See id.* at 13, 354–374 (Decl. ¶ 24–25, Ex. O) (series of 2020–21 articles concerning CLE's violations of Covid safety protocols); *see also id.* at 9–13, 213–353 (Decl. ¶¶ 21–23, Exs. L–N) (online reviews for CLE's BISOU Houston criticizing its food, sanitation, and service).

*Second*, BISOU is essentially identical to BISOUS BISOUS in all relevant respects.  The similarity of the marks is determined by comparing their appearance, sound, and meaning.  *Elvis Presley*, 141 F. 3d at 201; *Fletcher's*, 434 F. Supp. 3d at 491 (assessing the similarity of the competing marks requires "consideration of the marks' appearance, sound, and meaning").  It is clear from their face that the marks look the same.  They also sound the same, i.e., /bi-zu/.[54]  And they also have the identical meaning: "Bisou" is French for the word "kiss," as acknowledged in CLE's marketing material,[55] and "bisous" is merely the plural of the same word, i.e., "kisses."[56] This digit favors BISOUS BISOUS.

*Third*, BISOUS BISOUS and CLE offer similar and overlapping products and services in the same industry. "The greater the similarity between products and services, the greater the likelihood of confusion." *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980) (finding petroleum sales and car repair services similar because both involve "car care"); *see also Fuji Photo Film,* 754 F.2d at 596 (finding a similarity between the products where plaintiff sold equipment and material supporting printing services, and defendant sold printing presses).  It is indisputable that both parties are in the restaurant/food service industry.  More specifically, they both sell French-inspired food, including dessert, in French-themed eateries.[57] Making matters worse, BISOU serves its dessert in a *highly* confusingly manner, exemplified by the image below:[58]

---

[54] App. at 1 (Decl. ¶ 4).
[55] *Id.* at 14 (Decl. ¶ 27); *see, e.g.*, *id.* at 376–377, 383, 389, 393, 399 (Exs. P–Q) (images of neon signage displays at BISOU Houston and Instagram posts promoting BISOU Dallas stating "It was just a kiss").
[56] App. at 8 (Decl. ¶ 17); *id.* at 22–28 (Ex. A) (BISOUS BISOUS' trademark registrations referencing the English translation of "bisous bisous" as "kiss kiss").
[57] As noted, CLE's attorney admitted that "pastries are offered" at BISOU.  App. at 8, 210 (Decl. ¶ 19, Ex. J).
[58] App. at 48 (Ex. C); *id.* at 212 (Ex. K).

| BISOUS BISOUS | BISOU |
|---|---|
|  | |

The direct overlap in the parties' products and services causes the third digit to also favor BISOUS BISOUS.

*Fourth*, there is a strong similarity between the predominant consumers of the parties' goods and services, and the retail outlets are also quite similar. While it is likely that both parties appeal to a wide variety of customers, their customers all have one trait in common—an attraction to French inspired dining and food. Thus, there is an "identity of purchasers." *See Exxon Corp.,* 628 F.2d 500, 505 (finding "identity of purchasers" because both parties' customers drive cars).

The retail outlets also overlap. Both parties are French-themed eateries that tout the French culinary roots of their respective chefs.[59]  Further, the two eateries are not only located in the same

---

[59] *Compare* App. at 403 (CLE's website for BISOU discussing the "Master Chef of France Frédéric Perrier") *with id*. at 41 (BISOUS BISOUS' website discussing its specialization in "French-style"

city, but less than a mile away from one another on the *same* street in an area of Dallas known as "Uptown," catering to those who live nearby or want to go out in this neighborhood.[60]  Indeed, both eateries even interplay the French meaning of their names in their advertising: BISOU Dallas' Facebook and Instagram accounts display photo of a neon-sign featured prominently in the restaurant saying "It Was Just a Kiss,"[61] while BISOUS BISOUS' website explains that "bisous bisous" means "kiss kiss," and "lots of love."[62]

"The greater the overlap between retail outlets and purchasers, the greater the likelihood of confusion." *Fletcher's*, 434 F. Supp. 3d at 492 (in granting preliminary injunction, court found fourth digit to weigh in favor of plaintiff where "both [plaintiff and defendant] appeal to the corn-dog-consuming public in the same general geographic area").  Such significant and numerous overlaps mean that this fourth digit also favors BISOUS BISOUS.

*Fifth*, the parties use the same advertising channels to target the same market.  Both parties rely on their websites, social media—including the same platforms such as Facebook and Instagram—and online review websites and accounts such as Yelp, TripAdvisor, and Google (where numerous instances of mistaken identification occurred) to bolster their presence in their shared market—McKinney Avenue, in Uptown Dallas.[63]  *See Exxon Corp.*, 628 F.2d 500, 506 (noting use of virtually identical advertising media and that "both parties aim at the Houston market"); *Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-CV-00227, 2020 WL 4016110, at *12 (E.D.

---

[60] *Id.* at 8, 208 (Decl. ¶ 17, Ex. I).

[61] App. at 376–77, 382–83 (BISOU Dallas' social media displaying a neon sign stating "It Was a Just a Kiss" and a promotional post for BISOU Dallas featuring "It Was a Just a Kiss").

[62] App. at 41 (BISOUS BISOUS' "about" page on its website).

[63] *See* App. at 3, 42–69 (Decl. ¶¶ 8–9 Exs. C–D) (BISOUS BISOUS' Facebook, Instagram, Yelp, Google, and TripAdvisor pages); *id.* at 8, 213–353, 375–406 (Decl. ¶¶ 17–18, Exs. L–N, P–Q) (BISOU's Facebook, Instagram, Yelp, Google, and TripAdvisor pages).

pastries and Chef Andrea Meyer's immersion in Paris, France).

Tex. July 16, 2020) (finding that the fifth factor weighs in favor of confusion because both parties "market[] on the Internet" and "advertise on social media" despite defendant's argument that the parties' marketing materials are "very different" and finding balance of factors "point overwhelmingly" in favor of a preliminary injunction).  BISOUS BISOUS and BISOU have also both received publicity from the same publication focused on food and dining in Dallas, *EATER Dallas*.[64]  They also both receive press coverage from the same local newspapers.[65]  "The greater the similarity in the [advertising] campaigns, the greater the likelihood of confusion." *See Fletcher's*, 434 F. Supp. 3d at 492; *see also Elvis Presley*, 141 F.3d at 197 ("The use of a mark in advertising is highly probative of whether the mark creates a likelihood of confusion in relation to another mark.").  This is particularly true in the case of service marks, where "advertising is of even greater relevance" and the mark "cannot be isolated from the advertising in which it appears." *Id.* at 197.  This digit favors BISOUS BISOUS.

*Sixth*, BISOU had actual knowledge of BISOUS BISOUS' trademark rights before it launched its BISOU restaurant in Dallas and has continued to use BISOU prominently to promote its restaurant even *after* it was advised of actual confusion and after BISOUS BISOUS filed its Complaint.[66]  While BISOUS BISOUS' investigation into CLE's intent to confuse the public is still ongoing at this early stage, "an innocent intent in adopting a mark does not immunize an intent to confuse in the actual use of a mark." *Elvis Presley*, 141 F. 3d at 203.  An inference that confusion

---

[64] App. at 6, 83–126 (Decl. ¶ 13, Ex. F); *id.* at 7, 368–370 (Decl. ¶ 16, Ex. O).

[65] *See, e.g.*, *id.* at 6, 80–82 (Decl. ¶¶ 12, Ex. F) (*Dallas Observer* articles about BISOUS BISOUS); *id.* at 18, 422–426 (Decl. ¶ 32, Ex. S) (*Dallas Observer* article about BISOU Dallas and BISOUS BISOUS).

[66] App. at 8, 210 (Decl. ¶¶ 18–19, Ex. J) (discussing prior correspondence between counsel for the parties); *id.* at 16–18 (Decl. ¶¶ 28–30) (discussing confusion prior to and immediately after the July 8 launch of BISOU Dallas); *id.* at 21, 376, 379–380, 382, 396–397 (Decl. ¶ 37) (recent social media posts for BISOU).

is likely may arise from other circumstances that suggest an intent to confuse, including a party's failure to take reasonable steps to minimize the risk of confusion. *Id.* Irrespective of CLE's intent in adopting BISOU, its continued use of the mark after it was advised of actual confusion indicates bad faith. Nevertheless, proof of intent is not necessary for a finding of a likelihood of confusion, much less for this Court to issue an injunction. *Fuji Photo Film Co.*, 754 F.2d at 597 (5th Cir.1985) (noting that "[w]hile evil intent may evidence unfair competition and deception, lack of guile is immaterial") (internal citations omitted); *Am. Rice*, 518 F.3d at 333 (evidence of intent to confuse is not necessary for a court to enter an injunction). For the purposes of this motion, and without the benefit of discovery, this digit appears to weigh in favor of BISOUS BISOUS, or is neutral.

*Seventh*, there have been numerous instances of actual consumer confusion between the parties. Actual confusion is "the best evidence of a likelihood of confusion.'" *Elvis Presley*, 141 F.3d. at 203–204. The confusion began when CLE advertised that it was hiring for BISOU on its "Bisou Dallas" Instagram account. CLE's Instagram post, which prominently featured the BISOU name and included the hashtag #Bisou, specified in *two* places that applicants could apply in person at 2619 McKinney Ave, Suite 120—the address of the then-forthcoming BISOU in Dallas.[67] In response to that ad, an individual mistakenly showed up at *BISOUS BISOUS,* located down the street on McKinney Avenue*, for an interview.*[68] Similarly, a week prior to the opening of BISOU, a carrier mistakenly delivered a large set of supplies intended for BISOU and addressed to "BISOU UPTOWN" to BISOUS BISOUS.[69]

In the week since CLE opened BISOU in Dallas, numerous aggrieved customers have already taken to mistakenly leaving their negative feedback of BISOU's food and customer service

---

[67] App. at 16, 381 (Decl. ¶ 28, Ex. P).
[68] *Id.* at 16 (Decl. ¶ 28).
[69] *Id.* at 16 (Decl. ¶ 29).

on BISOUS BISOUS' pages, rather than CLE's. The confusion between the parties' establishments is so extensive that it was picked up the local news. "Very little evidence is required to establish the existence of the actual confusion factor." *Brainstorm*, 2020 WL 8267578, at *2 (finding that testimony of confusion of several customers "more than satisfied" Plaintiff's showing of confusion). Here, BISOUS BISOUS has not one, but many instances of actual confusion in the form of (i) over 30 negative, one-star reviews intended for BISOU, but erroneously directed at BISOUS BISOUS and (ii) nearly a dozen phone calls from consumers attempting to reach BISOU—in addition to the misdirected package delivery and interview noted above.[70] Misdirected calls, particularly at this frequency and volume, constitute evidence of actual confusion. *See New Century Fin., Inc. v. New Century Fin. Corp.*, No. C-04-437, 2005 WL 2453204, at *7–9 (S.D. Tex. Oct. 4, 2005) (finding plaintiff's evidence of two to three misdirected calls per week constituted "some evidence of actual confusion"). Further, because the parties promote their goods and services on the same social media platforms using virtually identical marks, and are located just down the block from each other, consumers have mistakenly selected the "location tag" for BISOUS BISOUS on Instagram and Facebook when posting photos of BISOU. As a result, a photo of BISOU erroneously tagged for BISOUS BISOUS' location appears among photos of BISOUS BISOUS and its bakery goods on Instagram, inevitably confusing consumers scrolling through BISOUS BISOUS' social media account and further damaging BISOUS BISOUS' reputation as family-friendly bakery and sweet shop.[71] This digit favors BISOUS BISOUS.

---

[70] App. at 16–18 (Decl. ¶¶ 30–32, 36).
[71] App. at 19, 427–430 (Decl. ¶ 34, Ex. T).

*Eighth*, the parties' goods are priced comparably and are inexpensive.[72]  When items, such as food/beverages, are relatively inexpensive a buyer takes less care in selecting them, thereby increasing the risk of confusion.  *See Fletcher's*, 434 F. Supp. 3d at 495 (noting that plaintiff and defendant's corn-dogs were "relatively inexpensive").   This digit also weighs in favor of confusion.

**In sum**, given that all of the relevant digits of confusion weigh in favor of finding a likelihood of confusion, the Court should find that BISOUS BISOUS is likely to prevail on its claims for trademark infringement and grant its request for immediate injunctive relief.

## C.      BISOUS BISOUS Will Suffer Irreparable Harm if CLE is Not Enjoined

Because BISOUS BISOUS has shown a likelihood of success on the merits on its federal trademark infringement and false designation of origin claims under Sections 32 and 43(a) of the Lanham Act, it is entitled to a presumption of irreparable harm under 15 U.S.C. § 1116(a).

"[I]rreparable injury is presumed as a matter of law whenever there is a likelihood of confusion," stating that "[a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion – injury is presumed."  *Houston Cigar All. v. Off. Houston Cigar Wk. LLC*, No. CV H-20-4115, 2021 WL 1416875, at *15 (S.D. Tex. Apr. 14, 2021).[73]   While that presumption had been questioned, the issue was recently resolved in the affirmative.  Effective December 27, 2020, the Trademark Modernization Act of 2020 (the "TMA") added the following text to 15 U.S.C. § 1116(a) (emphasis added):

A plaintiff seeking any such injunction [to prevent the violation of a

---

[72] As a point of comparison, BISOU Houston's menu features items starting at $8.00.  *See BISOU Continental Dinner Menu* (last visited July 19, 2021), at https://bisourestaurant.com/dinner/.  BISOUS BISOUS' dessert prices vary, but its prices for individual desserts start around $2 to $5.50 dollars depending on the item.  App. at 33–39 (Ex. B) (menu on <bisous-bisous.com>).

[73] *See also Suzie's Brewery Co. v. Anheuser-Busch Co. LLC*, No. 3:21-cv-178-SI, 2021 WL 472915 at * 12, n.13 (D. Or. Feb. 9, 2021) (citing cases).

> federally registered mark or a violation under § 1125(a), (c), or (d)]
> sh***all be entitled to a rebuttable presumption of irreparable harm***
> upon a finding of a violation identified in this subsection in the case
> of a motion for a permanent injunction or ***upon a finding of
> likelihood of success on the merits for a violation identified in this
> subsection in the case of a motion for a preliminary injunction or
> temporary restraining order***.

*See* Pub. L. 116-260, § 226, 134 Stat. 2208 (2020).  Given the novelty of the TMA, there are few decisions discussing its effect, but courts that have addressed it have recognized the presumption afforded to plaintiff.  *See, e.g.*, *Suzie's Brewery Co.,* 2021 WL 472915 at * 12, n. 13 (applying the presumption provided in § 1116(a) upon a showing of likelihood of success on the merits of plaintiff's § 1125(a) claim and granting plaintiff's motion for a TRO); *see also Roto-Rooter Corp. v. Garcia*, No. 4:20-CV-00497, 2021 WL 327569, at *3 (E.D. Tex. Feb. 1, 2021) (applying the presumption of harm in granting Plaintiff's request for a permanent injunction).  The presumption applies to BISOUS BISOUS.

But even if there was no statutory presumption, the facts make plain that BISOUS BISOUS has been damaged irreparably already.  Highly negative, misdirected reviews intended for BISOU impacted BISOUS BISOUS' Google rating in just 48 hours.  This is devastating for a small, independent business like BISOUS BISOUS, which relies on word of mouth promotion and its typically stellar reviews on websites like Yelp and Google.[74]  And while Google has erased all of these misdirected reviews, it simultaneously erased all of the recent *positive* reviews that were actually intended for BISOUS BISOUS, leaving BISOUS BISOUS with reviews that are weeks and months old, and making it appear that BISOUS BISOUS had received no reviews at all in at least two weeks.[75]  Given how typical it is for consumers to decide which businesses to patronize

---

[74] App. at 4–5, 53–69 (Decl. ¶ 9, representative 5-star reviews on Facebook in Ex. C and positive reviews on Yelp, Google, and TripAdvisor in Ex. D).
[75] *Id.* at 18 (Decl. ¶ 31).

based on a quick look at online reviews, BISOUS BISOUS may never know how many customers and sales it lost—and may continue to lose—as a result of the slew of negative reviews left by BISOU's customers and the resulting confusion.[76] According to a 2020 consumer survey conducted by BrightLocal, "79% of consumers say they trust online reviews as much as personal recommendations from friends or family," and "negative reviews can have a significant impact on consumer behavior, making *92%* of consumers less likely to use a business."[77]   In fact, BrightLocal's survey shows that "only 48%" of customers would consider using a business that has fewer than 4 stars[78]—a volume that could leave a significant impact on a small business like BISOUS BISOUS.   Moreover, CLE's prominent use of BISOU is undermining consumers' association of the BISOUS Marks with BISOUS BISOUS.   And in light of CLE's poor reputation—particularly with respect to its low quality food, discriminatory practices, and disregard for the health and safety of its customers discussed in public forums referring to BISOU—CLE's actions are diminishing the reputation and goodwill that BISOUS BISOUS has spent nearly a decade building in its BISOUS Marks.   This is precisely the type of irreparable injury that warrants injunctive relief.  *See Paulsson*, 529 F.3d at 312 (stating that the "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill" and that "[t]he absence of an available remedy by which the movant can later recover monetary damages may be sufficient to show irreparable injury").

### D.    The Balance of Hardships Favors an Injunction

The balance of hardships ordinarily weighs against a party that is found to be infringing trademarks in violation of the Lanham Act.  *See Ramada Franchise Sys., Inc. v. Jacobcart, Inc.*,

---

[76] *Id.* at 18 (Decl. ¶ 33).
[77] Rosie Murphy, *Local Consumer Review Survey 2020*, BrightLocal (December 9, 2020), https://www.brightlocal.com/research/local-consumer-review-survey/ (emphasis added).
[78] *Id.*

No. CIVA 3:01CV0306D, 2001 WL 540213, at *3 (N.D. Tex. May 17, 2001) ("[C]ourts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants.").  The requested temporary restraining order and preliminary injunction would require that CLE simply observe its already-existing obligations to not infringe BISOUS BISOUS' protected marks. *See id.* (injunction warranted where a defendant "improperly use[s] a plaintiff's trademark").  Any potential costs to CLE for rebranding is self-inflicted since CLE chose to proceed with an infringing mark despite BISOUS BISOUS' clear concerns of the inevitable confusion. *Fletcher's*, 434 F. Supp. 3d at 497 ("When the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration.") (internal citations omitted); *see also Elvis Presley*, 141 F.3d at 205 ("Any acts after receiving a cease-and-desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts.").  Such costs would also be minimal since CLE can continue operating its restaurant under a different, non-infringing name and BISOU has been open in Dallas for only eight days. *See Scrum*, 2020 WL 4016110, at *17 (granting a preliminary injunction for plaintiff where defendant "will suffer little comparable harm in stopping the use of recently created and introduced [marks].").  CLE's self-contained harm is far outweighed by the negative publicity and loss of goodwill already suffered by BISOUS BISOUS to date, and that will be exacerbated absent an injunction. Accordingly, the balance of hardships in this case strongly favors BISOUS BISOUS.

### E.      The Public Interest Would Be Best Served by the Issuance of an Injunction

It is well-established that the public interest is served by enjoining the improper use of trademarks and making such use unprofitable. *See Paulsson*, 529 F.3d at 313 (affirming that enjoining an infringing user serves the public interest).  Indeed, "[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by

enjoining the use of infringing marks." *Fletcher's*, 434 F. Supp. 3d at 497.  Because BISOUS BISOUS has shown a likelihood of success on the merits of its Lanham Act claims, it has also shown that a preliminary injunction will serve the public interest.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant this Application for a Temporary Restraining Order and set this matter for a hearing on BISOUS BISOUS' request for a preliminary injunction as soon as convenient.  BISOUS BISOUS prays for all such further relief that it may be justly entitled to.

Respectfully submitted,

**FISH & RICHARDSON P.C.**

Dated: July 19, 2021

By: */s/ David B. Conrad*
David B. Conrad
Texas Bar No. 24049042
conrad@fr.com
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

Kristen McCallion (*admitted pro hac vice*)
mccallion@fr.com
Vivian Cheng (*admitted pro hac vice*)
cheng@fr.com
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

*Attorneys for Plaintiff*
BISOUS BISOUS LLC

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on July 19, 2021, a true and correct copy of the

foregoing document has been filed with the clerk of court for the U.S. District Court, Northern

District of Texas and served on all counsel of record who are deemed to have consented to

electronic service via the Court's CM/ECF system.


Dated: July 19, 2021                                    */s/ David B. Conrad*
                                                         David B. Conrad