**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **BISOUS BISOUS LLC,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | **C.A. No. 3:21-cv-01614-B** |
| **v.** | § | |
| | § | **Jury Trial Demanded** |
| **THE CLE GROUP, LLC,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

---

**THE CLE GROUP, LLC'S RESPONSE TO PLAINTIFF BISOUS BISOUS LLC'S
APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR
PRELIMINARY INJUNCTION**

---

**BUETHER JOE & COUNSELORS, LLC**

Eric W. Buether
Christopher M. Joe
Kenneth P. Kula

1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone:     (214) 466-1270
Facsimile:      (214) 635-1842

**ATTORNEYS FOR DEFENDANT
THE CLE GROUP, LLC**

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ........................................................................... 1

III.  LEGAL STANDARD FOR GRANTING A PRELIMINARY INJUNCTION ......... 5

IV.   ARGUMENTS AGAINST GRANTING A PRELIMINARY INJUNCITON ............ 7

    A.   Bisous Bisous Pâtisserie Is NOT Substantially Likely to Succeed on the
         Merits ...................................................................................................... 7

        1.   Plaintiff Sued the Wrong Party as Defendant ............................. 7

        2.   There Is No Likelihood of Confusion between A Quaint Little
             Bakery and a Nearly 10,000 Square Foot "Social Dining Hotspot" ........... 8

    B.   The Bakery Will Not Suffer Irreparable Harm If Defendant Is Not Enjoined
         ................................................................................................................ 20

    C.   The Balance of Hardships Does Not Favor an Injunction .................................. 21

    D.   The Public Would Not Be Best Served by the Issuance of An Injunction .......... 22

V.    CONCLUSION ............................................................................................. 23

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

3:16-CV-1217,
2017 WL 177651 ......................................................................................... 5, 6, 9, 10

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
237 F.3d 198 (3d Cir. 2000).................................................................................. 10

*Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*,
878 F.2d 806 (5th Cir. 1989) ............................................................................... 5, 7

*Bath Authority, LLC v. Aston Global, Inc.*,
No. 3:19-cv-00762, slip op., 2019 WL 6896892 (N.D. Tex. Dec. 3, 2019) ............................... 6

*Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*,
550 F.3d 465 (5th Cir. 2008) ............................................................................... 9, 10

*Brainstorm*,
2020 WL 8267578 ................................................................................................ 19

*Canal Authority v. Callaway*,
489 F.2d 567 (5th Cir. 1974) .................................................................................. 5

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
370 F.3d 151 (1st Cir. 2004).................................................................................. 22

*Clark v. Prichard*,
812 F.2d 991 (5th Cir. 1987) ............................................................................... 5, 6

*Elvis Presley Enters., Inc. v. Capece*,
141 F.3d 188 (5th Cir. 1988) ................................................................................ 10

*Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*,
628 F.2d 500 (5th Cir. 1980) ................................................................................ 13

*Fletcher's*,
434 F. Supp. 3d ................................................................................................... 19

*Florida Intern. Univ. Bd. Of Trustees v. Florida Nat. Univ., Inc.*,
91 F. Supp. 3d 1265 (S.D. Fla. 2015) ....................................................................... 11

*Gonannies, Inc. v. Goupair.Com, Inc.*,
464 F. Supp. 2d 603 (N.D. Tex. 2006) .................................................................... 5, 6

*Legend Airlines, Inc. v. Legend Tours, Inc.*,
  No. CIV. A. 399CV2477D, 2001 WL 1112429 (N.D. Tex. Sept. 14, 2001) ............................ 6

*Marathon Mfg. Co. v. Enerlite Prods. Corp.*,
  767 F.2d 214 (5th Cir. 1985) ........................................................................................ 6

*Medlin v. Palmer*,
  874 F.2d 1085 (5th Cir. 1989) ...................................................................................... 6

*Mississippi Power and Light Co. v. United Gas Pipe Line*,
  760 F.2d 618 (5th Cir. 1985) ................................................................................... 5, 10

*National Football League Props. v. Playoff Corp.*,
  808 F. Supp. 1288 (N.D. Tex. 1992) ...................................................................... passim

*New Century Fin., Inc. v. New Century Fin. Corp.*,
  No. C-04-437, 2005 WL 2453204 (S.D. Tex. Oct. 4, 2005) ...................................... 18

*Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*,
  692 F.3d 343 (5th Cir. 2012) ........................................................................................ 6

*Roho, Inc. v. Marquis*,
  902 F.2d 356 (5th Cir. 1990) ................................................................................... 5, 7

*Security Ctr., Ltd. v. First Nat'l Sec. Ctrs.*,
  750 F.2d 1295 (5th Cir. 1985) ...................................................................................... 8

*Soweco, Inc. v. Shell Oil Co.*,
  617 F.2d 1178 (5th Cir.1980) ....................................................................................... 8

*TGI Friday's Inc. v. Great Northwest Restaurants, Inc.*,
  652 F. Supp. 2d 763 (N.D. Tex. 2009) ......................................................................... 6

*Union Nat. Bank Tex., Laredo, Tex. v. Union Nat. Bank Tex., Austin, Tex.*,
  909 F.2d 839 (5th Cir. 1990) ....................................................................................... 9

## **Statutes**

15 U.S.C. § 1114(1)(a)...................................................................................................... 12

15 U.S.C. § 1115(b) .......................................................................................................... 14

15 U.S.C. § 1116(a) .......................................................................................................... 29

## I.        INTRODUCTION

Defendant, The CLE Group, LLC, which has no ownership interest in *bisou* CONTINENTAL

CUISINE[1]—"Dallas's Newest Social Dining Hotspot,"[2] which "brings an unparalleled combination

of Continental Cuisine and curated entertainment to Uptown Dallas,"[3] is being wrongfully sued

by BISOUS BISOUS LLC, a/k/a "Bisous Bisous Pâtisserie,"[4] the owner of trademarks, including

BISOUS**BISOUS** which it uses to tout its quaint and modest "neighborhood bake shop,"[5] near

Dallas's new and unparalleled "Social Dining Hotspot."[6]  Moreover, the instant Application For

A [TRO] And Motion For A Preliminary Injunction (Doc. 12) [hereinafter "Motion"], was brought

based on false, misleading, fabricated, or totally irrelevant "evidence" that stems from either

Plaintiff or a disgruntled employee fired from Dallas's *bisou* CONTINENTAL CUISINE.[7]  Defendant

The CLE Group, LLC therefore respectfully requests that Plaintiff's Motion be denied in full.[8]

## II.       FACTUAL BACKGROUND

Unlike the purported "Facts and Evidence" section presented to the Court by Bisous Bisous

Pâtisserie in its Motion—much of which relates to entities not parties to this litigation, not relevant

---

[1] App. at 02 (Truesdell Decl. ¶ 3 at 1).
[2] App. at 19 (Dallas's Newest Social Dining Hotspot screenshot).
[3] *Id.* at 21 (Dallas's Social Dining Hotspot Curated Entertainment screenshot).
[4] *Id.* at 24 (Plaintiff's Certificate of Assume Business Name).
[5] *Id.* at 27 (Plaintiff's webpage touting Neighborhood Bake Shop).
[6] *Id.* at 19 (Dallas's Newest Social Dining Hotspot screenshot).
[7] *See generally id.* at 02-04 (Truesdell Decl. ¶¶ 6-18, including video clips A – F).
[8] In the alternative, Defendant The CLE Group, LLC requests that the Court allow for expedited limited discovery to determine whether Bisous Bisous Pâtisserie and others, including the disgruntled employee, are acting in concert to damage Defendant's reputation and wrongfully interfere with *bisou* CONTINENTAL CUISINE's business.  As such, if the Court is inclined to grant injunctive relief that requires the owners of the Dallas-based restaurant to cease using the name "*bisou*," the owners anticipate the potential damages to the restaurant would be tremendous, and they request that the Court require Plaintiff to post a bond of not less than $500,000.

to determining whether a preliminary injunction should issue, or clearly inadmissible[9]—Defendant The CLE Group, LLC provides the Court with this concise section of relevant factual information.

On December 27, 2012, BISOUS BISOUS LLC filed to become a Domestic Limited Liability Company (LLC) with the Texas Secretary of State.[10]  On January 3, 2013, it filed to assume the name "Bisous Bisous Pâtisserie."[11]  By 2015, Bisous Bisous Pâtisserie moved into a quaint maybe 900 square foot suite on McKinney Avenue in Dallas.[12]  The little bakery devotes itself to providing French-style pastries and prides itself on its "original creations tailored to each customer."[13]  Its menu consists largely of "macarons, cruffins, croissants, tarts, éclairs, and custom-made cakes."[14]  Bisous Bisous Pâtisserie sells these scrumptious treats at prices ranging from $2.00 to $6.75[15] at its charming and petite bakery "to those who live nearby or want to [visit] . . . this neighborhood,"[16] as well as out of its food truck.[17]  By mid-2018, Bisous Bisous Pâtisserie—"the Little Bakery that could"—enjoyed "positive local response"[18] in its niche market as "a family-friendly bakery and sweet shop."[19]

Around this same time in Houston, a restaurant named *bisou* CONTINENTAL CUISINE opened its doors to the general public.[20]  It brought to Houston "an unparalleled combination of Continental Cuisine and curated entertainment to River Oaks District with a robust beverage program featuring classic cocktails, an extensive wine list, and champagne magnums served up in

---

[9] *See* separate filing (providing evidentiary objections to Bisous Bisous Pâtisserie's "evidence").
[10] App. at 30 (Plaintiff's Certificate of Formation).
[11] *Id.* at 24 (Plaintiff's Certificate of Assume Business Name).
[12] *Id.* at 33, 35; *see also* Doc. 12 at 2-3.
[13] *Id.* at 27.
[14] Doc. 12 at 3.
[15] App. at 37 (Plaintiff's webpage of Bake Shop menu).
[16] Doc. 12 at 17.
[17] *Id.* at 3; *see also* App. at 40 (Plaintiff's webpage of Bake Shop food truck).
[18] Doc. 12 at 3.
[19] *Id.* at 20.
[20] The CLE Group, LLC does not own the Houston-based restaurant either.  *See* App. 02 (Truesdell Decl. ¶ 3 at 1).

a sleek contemporary interior."[21] Unlike Bisous Bisous Pâtisserie's limited menu of French pastries being sold from its quaint little bakery or out of its mobile pastry truck for $2.00 or more, the Houston-based restaurant offered a full menu, ranging from a single piece of *Nigiri* salmon sold for $6 to Prime Ribeye at $59 to the Happy Hour special of "25% OFF SELECTED BOTTLES OF WINE AND CHAMPAGNE OVER $100."[22]

According to Plaintiff Bisous Bisous Pâtisserie, "[b]ecause of [its owner] Chef Meyer's diagnosis and focus on [medical] treatment, BISOUS BISOUS did not learn about BISOU Houston until well after its opening."[23]  This is somewhat surprising, if true, since the Houston-based restaurant is "helmed by Master Chef of France Frédéric Perrier,[24] and Bisous Bisous Pâtisserie's Owner and Executive Pastry Chef Andrea Meyer professes to be somewhat of a Francophile, "[h]aving spent months in Paris, France immersing herself in the culture and . . . [then] embraced pastry as her passion at the Le Cordon Bleu College of Culinary Arts."[25]  Nevertheless, nearly three years after the restaurant's opening in Houston, Bisous Bisous Pâtisserie's attorneys sent The CLE Group, LLC's attorney a letter about the Bisous Bisous Pâtisserie trademarks at issue in the instant Motion.  On March 2, 2021, The CLE Group, LLC's attorney responded, stating "[w]hile Bisou Bisou may be recognized in the Dallas, Texas area, it is virtually unknown in the Houston

---

[21] App. at 42 (Webpage of Houston-based *bisou* Continental Cuisine).

[22] *Id.* at 49-50 (Webpage menu of Houston's *bisou* Continental Cuisine); *see id.* at 53 (Happy Hour menu of Houston's *bisou* Continental Cuisine).

[23] Doc. 12 at 6 n.31; *see also id.* at 1.  This is but one example of Plaintiff's attempt to garner sympathy from the Court by injecting gratuitous and irrelevant comments into its brief in support of its Motion.  *See also id.* at 3 n.8 (discussing "Medical issues with Chef Meyer"); Doc. 13-1 at App. 008 ("I was in treatment for cancer.").  The Court, however, is not Plaintiff's only target for sympathy.  The Plaintiff's owner, Chef Andrea Meyer, has also targeted the media and the public in general, hoping to "raise $150,000 to pay for attorneys to sue . . . after a lawyer advised her that she had a 'very valid claim of infringement.'"  App. at 56 (Eater Article providing Motivation for Plaintiff's suit).

[24] App. at 44 (Webpage of Houston-based *bisou* Continental Cuisine).

[25] App. at 27.

area.  Therefore, we respectfully deny your demand that **Houston's Bisou location** phase out the use of the generic term Bisou."[26]  No Dallas restaurant was ever mentioned.

As stated, Defendant The CLE Group, LLC does not have an ownership interest in Dallas's *bisou* CONTINENTAL CUISINE, nor does it have an ownership interest in Houston's *bisou* CONTINENTAL CUISINE.[27]  Granted, some of the same entities that have an ownership interest in Dallas's *bisou* CONTINENTAL CUISINE also have an ownership interest in Houston's *bisou* CONTINENTAL CUISINE, but not one of those entities is The CLE Group, LLC.[28]  And Defendant The CLE Group, Inc. does not control the determination or use of either restaurant's marks or signage.[29]

As the Court will note, Bisous Bisous Pâtisserie's Owner and Executive Pastry Chef Andrea Meyer has submitted a 21-page Declaration, a 400-plus page Appendix, and filed a 31-page Complaint—the vast majority of which scantly mentions Dallas's *bisou* CONTINENTAL CUISINE—but, instead, hurls or perpetuates false, misleading, incendiary, unsubstantiated, inadmissible, and potentially defamatory accusations of illegal activity, immoral actions, and racism against entities not a party to this action, including "the nightclubs 'Clé Day & Night,' 'Spire,' and 'Heart,' restaurant 'Kiss,' and"[30] of course Houston's *bisou* CONTINENTAL CUISINE.

What the Court will also note is that within that nearly 500-page tome, Plaintiff Bisous Bisous

---

[26] Doc. 13-11 at App. 210 (emphasis added).
[27] App. at 02 (Truesdell Decl. ¶ 3 at 1).
[28] *Id.* (Truesdell Decl. ¶ 5 at 1).
[29] *Id.* (Truesdell Decl. ¶ 2 at 1).
[30] Doc. 1 ¶ 20 at 9; *see also* Doc. 12 at 6 (claiming nightclubs Clé and Spire, as well as the Houston-based restaurant have a "notoriously bad reputation in the media and among its customers."); *id.* at 1 (perpetuating the unsubstantiated and false charge that the owners of the Dallas-based restaurant practice "racial profiling").

Pâtisserie never indicates that it reached out to the owners of Dallas's *bisou* CONTINENTAL CUISINE

before filing its Complaint or this Motion.  That is because it did not.

## III.    LEGAL STANDARD FOR GRANTING A PRELIMINARY INJUNCTION[31]

"The decision to grant a preliminary injunction is to be treated as the **exception** rather than

the rule."  *Nerium SkinCare, Inc. v. Nerium Intern'l, LLC*, No. 3:16-CV-1217, 2017 WL 177651,

at *4 (N.D. Tex. Jan. 16, 2017) (quoting *Mississippi Power and Light Co. v. United Gas Pipe Line*,

760 F.2d 618, 621 (5th Cir. 1985)) (emphasis added).  As such, "[t]here are four prerequisites for

the extraordinary relief of a temporary restraining order or preliminary injunction."  *Gonannies,*

*Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 607 (N.D. Tex. 2006). In particular, the movant

must establish the following: "(i) a substantial likelihood of success on the merits; (ii) a substantial

threat of immediate and irreparable harm for which it has no adequate remedy at law; (iii) that

greater injury will result from denying the [relief] than from its being granted; and (iv) that [the

relief] will not disserve the public interest."  *Id.* (citing *Clark v. Prichard,* 812 F.2d 991, 993 (5th

Cir. 1987)); *see Canal Authority v. Callaway,* 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). This

Court has long held that these factors are "four stringent criteria."  *National Football League*

*Props. v. Playoff Corp.*, 808 F. Supp. 1288, 1291 (N.D. Tex. 1992) (citing *Roho, Inc. v. Marquis*,

902 F.2d 356, 358 (5th Cir. 1990)); *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806,

809 (5th Cir. 1989)).  Thus, in the instant case, Plaintiff Bisous Bisous Pâtisserie, being the party

---

[31] "As a preliminary matter, the Court must first address the . . . scope of the injunction now requested by Plaintiff[], which in turn affects the analysis the Court must follow in deciding the motion for preliminary injunction." *Nerium SkinCare, Inc.*, No. 3:16-CV-1217, 2017 WL 177651, at *5. *See* Doc. 1 ¶ F(1) at 26 (requesting "the Court grant an injunction preliminarily and permanently enjoining . . . [u]sing the term "BISOU" . . . in association with [any] . . . food . . . products"). Thus, the scope of the injunction as stated in Plaintiff's Complaint is extremely broad, ensnaring many food items that are not French, French-inspired, or sold by Plaintiff simply because they are associate with the term "BISOU". In fact, "an injunction as initially requested likely would . . . totally prevent[] [Defendant] from selling . . . products altogether," *id.*, that is, if Defendant The CLE Group, LLC sold any products at all, which it does not. Accordingly, the Court should carefully scrutinize Plaintiff's overly broad motion.

seeking the extraordinary relief of a preliminary injunction, must convincingly "satisfy a cumulative burden of proving each of the four elements enumerated before a . . . preliminary injunction can be granted." *Gonannies, Inc.*, 464 F. Supp. 2d at 607 (citing *Mississippi Power and Light Co.,* 760 F.2d at 621); *see also Clark,* 812 F.2d at 993. But "[b]ecause a preliminary injunction is an extraordinary form of equitable relief, the movant must '**clearly** carr[y] the burden of persuasion on **all four** requirements.'" *Nerium SkinCare, Inc.*, No. 3:16-CV-1217, 2017 WL 177651, at *4 (quoting *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012)). "Otherwise stated, if [Plaintiff Bisous Bisous Pâtisserie] fails to meet *any* of the four requirements, the court cannot grant the . . . preliminary injunction." *Gonannies, Inc.*, 464 F. Supp. 2d at 607. This is because the Fifth Circuit has declared that the "[f]ailure of the movant to establish **any one** of the four elements will result in denial of the preliminary injunction." *Nerium SkinCare, Inc.*, No. 3:16-CV-1217, 2017 WL 177651, at *4 (citing *Medlin v. Palmer*, 874 F.2d 1085, 1091 (5th Cir. 1989)) (emphasis added). Thus, although "[t]he decision whether to grant a preliminary injunction is within the discretion of the court, . . it is an extraordinary remedy that should **only be granted** if the movant has clearly carried its burden." *TGI Friday's Inc. v. Great Northwest Restaurants, Inc.*, 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009); *see also Bath Authority, LLC v. Aston Global, Inc.*, No. 3:19-cv-00762, slip op., 2019 WL 6896892, at *3 (N.D. Tex. Dec. 3, 2019); *Legend Airlines, Inc. v. Legend Tours, Inc.*, No. CIV. A. 399CV2477D, 2001 WL 1112429, at *2 (N.D. Tex. Sept. 14, 2001).

Equally important in the Court's analysis is the dictate from the Fifth Circuit that the district court "should consider each factor in light of the circumstances of the case, and 'different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved.'" *Bath Authority, LLC*, No. 3:19-cv-00762, slip op., 2019 WL 6896892, at *4 (quoting

*Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 218 (5th Cir. 1985)).  Those are the relevant facts, and they are indisputable.

## IV.    ARGUMENTS AGAINST GRANTING A PRELIMINARY INJUNCITON

### A.    Bisous Bisous Pâtisserie Is NOT Substantially Likely to Succeed on the Merits

#### 1.    Plaintiff Sued the Wrong Party as Defendant

Plaintiff Bisous Bisous Pâtisserie will not succeed on the merits because it cannot even clear the initial hurdle of bringing its action against the proper Defendant.  As stated, Defendant The CLE Group, LLC has no ownership interest in Dallas's *bisou* CONTINENTAL CUISINE, and it does not determine or control what Trademarks or Service Marks any restaurant or other entity uses.[32]   The Court's denial of Plaintiff's Motion is axiomatic because it "must also consider defenses that the Defendant raises because their success or lack of success may impact the likelihood of success on the merits."  *NFL Properties*, 808 F. Supp. at 1292.  *See Allied Mktg. Group, Inc.*, 878 F.2d at 811-12 (remanding case for assessment of defenses in preliminary injunction context).  Defendant The CLE Group, LLC contends that the Court need not go any further in its analysis of whether Plaintiff Bisous Bisous Pâtisserie is properly entitled to a preliminary injunction and that, based on this factor alone, the Court should deny Plaintiff's Motion.  Nevertheless, Defendant The CLE Group, LLC will provide the Court with additional reasons why Plaintiff will not succeed in its trademark-infringement action.

---

[32] On March 1, 2021, The CLE Group, LLC did file for the Service Mark "Bisou Continental" to be used in the "Arranging and conducting nightclub entertainment events" as well as "[r]estaurant and bar services," App. at 62 (PTO webpage showing Defendant's TM Application), but currently it is still under review at the United States Patent and Trademark Office.

2.      **There Is No Likelihood of Confusion between A Quaint Little Bakery and a Nearly 10,000 Square Foot "Social Dining Hotspot"**[33]

"Substantive law provides the standards for the likelihood of success on the merits determination, and the Court therefore proceeds to issues arising thereunder." *NFL Properties*, 808 F. Supp. at 1291 (citing *Roho, Inc.*, 902 F.2d at 358). At its most rudimentary level, a trademark-infringement action "rests on the notion that a particular use of a registered trademark is likely to cause confusion." *Id.* (citing 15 U.S.C. § 1114(1)(a)). But because trademark-infringement cases often involve delicate "line drawing in areas of which the points of distinction are inherently indistinct, the United States Court of Appeals for the Fifth Circuit has reduced the trademark inquiry to two basic questions." *Id.* (citing *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1182 (5th Cir.1980), *cert. denied,* 450 U.S. 981 (1981). In particular, "[w]hether the plaintiff has a protectable right in its mark, and, if so, whether there is infringement as judged by the likelihood of confusion." *Id.* (citing *Security Ctr., Ltd. v. First Nat'l Sec. Ctrs.,* 750 F.2d 1295, 1298 (5th Cir. 1985)). Defendant The CLE Group, LLC does not contest whether Plaintiff Bisous Bisous Pâtisserie "has a protectable right in its mark." *Id.* Consequently, it will focus on disproving any **legitimate** likelihood of confusion between the marks "BISOUS BISOUS" or BISOUS BISOUS *pâtisserie* and the mark "*bisou* CONTINENTAL CUISINE."[34]

a.      **Bisous Bisous Pâtisserie's Protectable Right in Its Mark**

As stated above, Defendant The CLE Group, LLC acknowledges that Plaintiff Bisous Bisous Pâtisserie has a protectable right in its trademarks. But the protectable right is extremely

---

[33] App. at 64-65 (Webpage of photos of 10,000 sq. ft. Dallas's *bisou* Continental Cuisine).

[34] *See* Doc. 12 at 8 n.38 (conceding "crux of BISOUS BISOUS' claims in Counts I-III of the Complaint is CLE's [alleged] infringement of the BISOUS Marks" and "the facts giving rise to these claims *and* the test under which courts in the Fifth Circuit analyze these claims are essentially the same."). Thus, the same analysis applies to all unless otherwise stated.

limited.  As Plaintiff admits, its exclusive right to use the trademarks in commerce is limited to using them in "connection with **bakery goods**."[35]  The CLE Group, LLC does not sell bakery goods.  In fact, very few "bakery goods" are even offered for sale by the separate entity—and not a party to this action—Dallas's *bisou* CONTINENTAL CUISINE.

> **b.** **There Is No Likelihood of Confusion and No Actual Confusion Has Occurred with the Bakery and the Social Dining Hotspot**

Plaintiff Bisous Bisous Pâtisserie states that the first principal concern of trademark law is "to protect consumers against confusion and monopoly."[36]  The CLE Group, LLC agrees. Unfortunately, Plaintiff than abandons that principal and provides the Court with sundry examples—some possibly true; some clearly fabricated—of alleged "confusion" not by **consumers**, as required, but by a disgruntled employee, her "followers" on social media, a postal worker, a delivery person, and a single potential worker who simply happened to go to the wrong address for an interview.  None of the cited examples is shown to be in "connection with bakery goods," which is the only product that Plaintiff Bisous Bisous Pâtisserie admits its marks protect. As this Court explained in *Nerium SkinCare*, the focus to be put on the likelihood of confusion is a narrow one.

> Most trademark infringement actions focus largely on the second element—the likelihood of confusion analysis—which usually involves comparing a trademark in use by a plaintiff side-by-side with a trademark in use by a defendant to determine whether the two marks are similar enough that consumers would likely be confused as to the "source, affiliation, or sponsorship" of the plaintiff's product.

*Nerium SkinCare*, No. 3:16-CV-1217, 2017 WL 177651, at *6 (citing *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008).

---

[35] *Id.* at 10 (citing 15 U.S.C. § 1115(b) (emphasis added).
[36] *Id.* (quoting *Union Nat. Bank Tex., Laredo, Tex. v. Union Nat. Bank Tex., Austin, Tex.*, 909 F.2d 839, 843-44 (5th Cir. 1990).

Furthermore, although the Court must compare the marks-at-issue side-by-side, "the Court must not view marks in isolation, but rather must look at the marks in their entirety, not merely at individual similar features." *NFL Properties*, 808 F. Supp. at 1292. In addition, the likelihood of confusion has to be significant. It cannot—even if experienced by a consumer—be simply a few "one-off incidents of confusion,"[37] as admittedly experienced by Plaintiff Bisous Bisous Pâtisserie. This is because the Fifth Circuit has held that the "likelihood of confusion is synonymous with a **probability** of confusion, which is more than a mere possibility of confusion." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1988) (emphasis added).

Putting aside the fact that Defendant The CLE Group, LLC is not the entity that uses the mark "*bisou* CONTINENTAL CUISINE," it will nevertheless address each of the "digits of confusion" recognized by the Fifth Circuit in determining whether there is a legitimate and sufficient probability of a likelihood of confusion with the bakery's mark "BISOUS BISOUS" or  to warrant the extraordinary relief of a preliminary injunction, which always should be the exception, not the rule. *See id.*, 2017 WL 177651, at \*4 (quoting *Mississippi Power and Light Co.,* 760 F.2d at 621). The "digits of confusion" include the following:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) and evidence of actual confusion." Also relevant is the degree of care exercised by potential purchasers. No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors.

*Id.* (quoting *Bd. Of Supervisors*, 550 F.3d at 478).[38]

---

[37] Doc. 12 at 5.

[38] Without any factual support, Plaintiff Bisous Bisous Pâtisserie represents to this Court that "CLE's use of BISOU has caused 'reverse' confusion among relevant consumers." Doc. 12 at 11. The bakery, however, does not provide a single Declaration or any other admissible evidence to indicate that someone looking for a 10,000 square foot "Social Dining Hotspot," *see* App. at 64-65, confusingly walked into the bakery, *see* App. at 28, and tried to order a dessert

i.     The Plaintiff's Type of Mark that Is Allegedly Infringed
by Defendant Is in A Crowded Field

Plaintiff Bisous Bisous Pâtisserie contends its trademarks are "strong and inherently distinctive."[39]  Defendant The CLE Group, LLC does not agree.  "Bisou" is French for "kiss." "Bisous" is French for "kisses."  As its then-attorney explained to the bakery when it demanded that the word "Bisous" not be used by the defendant in Houston, "The term 'Bisou' is a generic term, as is its English counterpart.  Because Bisou is a generic term it is our opinion it should receive weak trademark protections as it is used by a large number of entities . . . As you know, weak trademarks are given weak protections by the USPTO."[40]  The instant case is analogous to *Florida Intern. Univ. Bd. Of Trustees v. Florida Nat. Univ., Inc.* 91 F. Supp. 3d 1265 (S.D. Fla. 2015).  The Court here should find as the district court in Florida found; namely, the "evidence of intentional infringement is not persuasive, and the evidence of actual confusion is *de minimis* at best.  Finally, the crowded field . . . using the terms . . . diminishes the likelihood that consumers would be appreciably confused."  *Id.* at 1284.

Consequently, and contrary to Plaintiff Bisous Bisous Pâtisserie's contention, "the first digit [does not] favor[] BISOUS BISOUS under both a forward and reverse confusion analysis."[41] At best, it is neutral.

---

item that the person had had previously at Dallas's "*bisou* CONTINENTAL CUISINE," assuming the bakery's "products are really [the Social Dining Hotspot's] or that the [bakery] has somehow connected to [Dallas's Newest Social Dining Hotspot]."  *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 228 (3d Cir. 2000) (citations omitted).  Because the argument is unsubstantiated and frivolous, The CLE Group, LLC will not address it further.
[39] Doc. 12 at 12.
[40] Doc. 13-11 at App. 210; *see also* App. 75-77 (PTO webpage showing use of "Bisous" is a crowded field).
[41] Doc. 12 at 14.

###### ii.        The Marks at Issue Are Not Sufficiently Similar

Plaintiff Bisous Bisous Pâtisserie contends "BISOU is essentially identical to BISOUS BISOUS in all relevant respects."[42]  This is not a fair or accurate representation.  As stated above, the Court must compare the marks-at-issue side-by-side, and "the Court must not view marks in isolation, but rather must look at the marks in their entirety, not merely at individual similar features." *NFL Properties*, 808 F. Supp. at 1292.  Thus, the marks when viewed side-by-side are:

(1) "BISOUS BISOUS" and "*bisou* CONTINENTAL CUISINE" as well as

(2)     and "*bisou* CONTINENTAL CUISINE".

The Court cannot disregard the fact that the bakery uses the term "BISOUS" in the plural— at times juxtaposed without spacing—whereas Dallas's Newest Social Dining Hotspot always uses the term in the singular.  Nor can the Court disregard that the fact that only the bakery repeats the plural term "BISOUS" twice in all its trademarks—again, sometimes without spacing.  Similarly, the Court cannot ignore the fact that Dallas's Newest Social Dining Hotspot uses the term "*bisou*" in all lower-case letters and in cursive, whereas the bakery always has it in all capital letters and in block print.   Finally, the Court cannot turn a blind eye to the fact that the term "CONTINENTAL CUISINE" follows the Dining Hotspot's term "*bisou*" whereas the term "patisserie" is written under the bakery's "BISOUSBISOUS" mark.

Consequently, when the marks are viewed side-by-side and in their entirety, as the Court is required to do, *see NFL Properties*, 808 F. Supp. at 1292, it is clear that no reasonable consumer would consider the marks sufficiently similar to become confused and mistakenly try to order a

---

[42] Doc. 12 at 15.

$2.00 tart at Dallas's "*bisou* CONTINENTAL CUISINE"[43] or a $240 "TOMAHAWK RIBEYE"[44] out of the Bakery's food truck.[45]  Thus, this digit favors Defendant The CLE GROUP, LLC.

### iii.   There Is Virtually No Similarity in Products or Services

Plaintiff glosses over all the differences between a small quaint neighborhood bakery and a 10,000 square foot Social Dining Hotspot and misleadingly contends that "both parties are in the restaurant/food service industry."[46]  A simple comparison of the two businesses, in context with the products and services they provide, refutes that contention.[47]  Worse yet, to bolster its case of infringement, Plaintiff provides the Court with the menu from the Houston-based restaurant and not the Dallas-based restaurant.  Again, neither restaurant is a defendant in this case, and Defendant The CLE Group, LLC has no ownership interest in either restaurant, nor does it control those restaurants' use of their marks.  Furthermore, Dallas's Newest Social Dining Hotspot does not even offer the dessert Plaintiff complains about "BISOU BISOU."  Instead, it serves "BISOU MAKI" a "*Spicy Tuna, Asparagus, Avocado, Topped with Tuna, Hamachi & Spicy Motoyaki.*"[48] According to Plaintiff's Complaint, however, it is requesting "the Court grant an injunction preliminarily and permanently enjoining . . . [u]sing the term "BISOU" . . . in association with [any] . . . food . . . products."[49]  Maki is not similar to a croissant, yet Plaintiff apparently seeks to enjoin the sale of it to the public by Dallas's *bisou* CONTINENTAL CUISINE.  Defendant agrees that "[t]he greater the similarity between products and services, the greater the likelihood of

---

[43] App. at 37 (Plaintiff's webpage of Bake Shop menu).
[44] App. at 67 (Webpage menu of Dallas's *bisou* Continental Cuisine).
[45] App. at 40 (Plaintiff's webpage of Bake Shop food truck).
[46] Doc. 12 at 15.
[47] *Compare* App. at 69-73 (Dallas Hotspot Gallery) *with* App. at 35 (Bakery's Interior).
[48] App. at 67 (Webpage menu of Dallas's *bisou* Continental Cuisine).
[49] Doc. 1 ¶ F (1) at 26.

confusion," *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980), but the parties surely do not agree that "French-inspired"[50] Maki is not similar to a French tart or any other items that each establishment provides to the public.[51]  Also, the services provided by a small neighborhood bakery are not similar to the services provided by a Social Dining Hotspot.  As Plaintiff admits, the bakery caters to customers "who live nearby"[52] and for whom the bakery creates its pastries "tailored to each customer."[53]  Dallas's *bisou* CONTINENTAL CUISINE, on the other hand, attracts fine-food enthusiast and social hotspot seekers from all around the DFW area who are looking to stay out in Uptown Dallas until possibly 2:00 a.m., enjoying "curated entertainment . . . [and] classic cocktails, an extensive wine list, and champagne magnums."[54]

Consequently, the third digit also favors Defendant The CLE Group, LLC.

> #### iv.   There Is Little Similarity between the Consumers Who Frequent Dallas's Newest Social Dining Hotspot and Those Who Stop by A Little Neighborhood Bakery, and Even Less Similarity between the Actual Retail Outlets

Plaintiff makes the unsubstantiated and inaccurate claim that "the predominant consumers of the parties' goods and services, and the retail outlets are also quite similar."[55]  Again, putting aside the fact that Defendant The CLE Group, LLC offers no "goods and services," simply looking at the hours of operation for the bakery and for Dallas's *bisou* CONTINENTAL CUISINE establishes the neither entity's consumers or outlets are substantially similar.  Plaintiff cannot dispute that most of its business occurs before Dallas' Newest Social Dining Hotpot even opens.  The bakery

---

[50] Doc. 12 at 15.
[51] *Compare* App. at 67 (Dallas Hotspot Menu) *with* App. at 37 (Bakery's menu).
[52] Doc. 12 at 17.
[53] App. at 27.
[54] App. at 21.
[55] Doc. 12 at 16.

typically opens at 8:00 a.m. and closes between 3-5 p.m., whereas Dallas's *bisou* CONTINENTAL

CUISINE opens no earlier than 4:00 p.m. and closes between 10:00 p.m. and 2:00 a.m.  As stated

immediately above, the bakery caters to customers "who live nearby,"[56] whereas Dallas's *bisou*

CONTINENTAL CUISINE attracts fine-food enthusiast and social hotspot seekers from all around the

DFW area who are looking for "curated entertainment."[57]  In addition, and as has also already been

established, the foods, services, and retail outlets—Defendant doesn't even have a food truck—

are in stark contrast.[58]

     Consequently, the fourth digit also favors Defendant The CLE Group, LLC.

### v.    The Identity of the Advertising Media Used

     Defendant concedes that both the bakery and the Dallas-based restaurant currently "use the

same advertising channels."[59]  The CLE Group, LLC does not agree, however, that both the bakery

and Dallas's Newest Social Dining Hotspot "target the same market,"[60] as claimed by the bakery.

Defendant will not reiterate all the reasons therefor, but it directs the Court to the arguments above.

     Consequently, the fifth digit favors Plaintiff Bisous Bisous Pâtisserie slightly.

### vi.    Neither Defendant nor the Dallas-based Restaurant Intended to Infringe on the Bakery's Trademarks

     The CLE Group, LLC does not deny that its attorney received a letter from the bakery's

attorney, claiming the bakery had all rights to the word "Bisou" and demanding that The CLE

Group, LLC agree to "**never** . . . use  or apply to register a trademark that features the term BISOU

---

[56] Doc. 12 at 17.
[57] App. at 21.
[58] *Compare* App. at 67 (Dallas Hotspot Menu) *with* App. at 37 (Bakery's menu); *Compare* App. at 69-73 (Dallas Hotspot Gallery) *with* App. at 35 (Bakery's Interior); *see* App. at 40 (Plaintiff's webpage of Bake Shop food truck).
[59] Doc. 12 at 17.
[60] *Id.*

in connection with [**any**] food or restaurant services."[61]  The bakery's attorney also claimed that the bakery's rights to "Bisou" extended beyond "food or restaurant services," declaring "no other use of the mark is permissible."[62]  Faced with such broad claims and outrageous demands, The CLE Group LLC's attorney responded that it found its claims and demands to be without merit. In particular, counsel stated with respect to the Houston's *bisou* CONTINENTAL CUISINE, it "is a high quality dinner and night club experience, while [the bakery] is a local pastry shop.  Cle Group, LLC does not intent to affiliate or cause confusion with your client's trademarks."[63]

As shown above, Plaintiff's brief is replete with accusations of illegal activity, immoral actions, and racism against both Defendant and entities not a party to this action, including "the nightclubs 'Clé Day & Night,' 'Spire,' and 'Heart,' restaurant 'Kiss,'"[64] as well as Plaintiff's current claim-at-issue; namely, that the defendant had a specific "intent to confuse the public."[65] None of it is true, and this Court should treated the unfounded accusations as it did similar accusations in the *NFL Properties* case.  There, the Court found: "Although Plaintiff's filings are replete with allegations of bad faith on Defendant's part, the Court concludes that Defendant's actions evidence no ill intent to appropriate Plaintiff's marks or to capitalize on Plaintiff's good will."  *NFL Properties*, 808 F. Supp. at 1292.

As such, the sixth digit should favor The CLE Group, LLC or, in the alternative and as Plaintiff suggests, be considered neutral.[66]

---

[61] App. at 80 (Letter from Bakery's Attorney to The CLE Group, LLC).
[62] *Id.* at 81.
[63] Doc. 13-11 at App. 210.
[64] Doc. 1 ¶ 20 at 9; *see also* Doc. 12 at 6 (claiming nightclubs Clé and Spire, as well as the Houston-based restaurant have a "notoriously bad reputation in the media and among its customers."); *id.* at 1 (perpetuating the unsubstantiated and false charge that the owners of the Dallas-based restaurant practice "racial profiling").
[65] Doc. 12 at 18.
[66] *Id.* at 19.

### vii.   There Is No Evidence of Actual Confusion

Plaintiff Bisous Bisous Pâtisserie claims that "there have been numerous instances of actual consumer confusion between the parties."[67]  This is not true.  As explained by Mr. Truesdell, an owner and manager of Dallas's *bisou* CONTINENTAL CUISINE, almost all of the claims of "actual confusion" that Plaintiff raises to the Court, can be attributed to a disgruntled employee who was fired and then orchestrated a campaign to flood the internet with bad reviews.[68]  For example, this disgruntled employee had 624,000 views on TikTok regarding her firing and call for fake, false, and negative reviews.[69]  This resulted in nearly 340 "negative reviews [being] submitted **after** Ms. Sanchez posted her 'call for negative reviews' and **before** Dallas's *bisou* CONTINENTAL CUISINE even had its grand opening."[70]  Unfortunately, many of these fake, false, and negative reviews went to "both Dallas's *bisou* CONTINENTAL CUISINE and Bisous Bisous Pâtisserie."[71]

As such, this does not constitute evidence of "actual confusion".  The individuals were never customers of either party.  They never saw, bought, or experienced any good or services of either party.  Thus, they were never confused by the parties' marks as intended by the Lanham Act.  The relevant "actual confusion" that is a factor in trademark infringement has to involve actual consumers who have been exposed to actual products or actual services, and experience actual confusion about the actual products or services bearing the mark.  As this Court stated in the *NFL Properties* case, "[t]he likelihood of confusion test focuses on whether a defendant's use of a plaintiff's trademark would likely create confusion in the minds of potential buyers as to the

---

[67] *Id.*
[68] *See generally* App. 02-04 (Truesdell Decl. ¶¶ 6-18, including video clips A – F).
[69] *Id.* (Truesdell Decl. ¶ 12 at 2).
[70] *Id.* (Truesdell Decl. ¶ 17 at 3).
[71] *Id.* (Truesdell Decl. ¶ 16 at 3).

source, affiliation or sponsorship of the parties' products." *NFL Properties*, 808 F. Supp. at 1291. Here, there were **no** buyers—actual or potential—that were confused.   In fact, based on the ubiquitous of the Internet, most of the 624,000 viewers of the disgruntled employee's TikTok post and the majority of the 340 negative reviewers were most likely not within the DFW area and, thus, could not even be considered potential buyers of the bakery's goods.   As this Court astutely asked and answered in the *NFL Properties* case, "The question necessarily arises, buyers of what? The purchasers who may be confused by any infringement would be purchasers dealing in products like Defendant's and **therefore be purchasers of football trading cards**."   *Id.* at 1292 (emphasis added).   In the instant case, there is no evidence that any of the allegedly confused individuals were actual purchasers of any products sold by Dallas's *bisou* CONTINENTAL CUISINE or The CLE Group, LLC for that matter.

Plaintiff Bisous Bisous Pâtisserie points to other instances of confusion.   In particular, the bakery points to "an individual mistakenly showed up at [the bakery] . . . for an interview,"[72] "a carrier mistakenly delivered a large set of supplies . . . to [the bakery],"[73] and allegedly some "phone calls from consumers attempting to reach [Dallas's Newest Social Dining Hotspot]."[74]

None of the above, however, is admissible evidence of actual confusion as that term is used in the trademark-infringement analysis.   First, neither a potential interviewee nor a mail carrier is a consumer, and there is no evidence or even suggestion that either ever saw, bought, or experienced any product or service offered by Dallas's *bisou* CONTINENTAL CUISINE. Consequently, any confusion they had regarding "where they were" is not relevant to the

---

[72] Doc. 12 at 19.
[73] *Id.*
[74] *Id.* at 20.

trademark-infringement analysis.  Second, although The CLE Group, LLC does not deny that misdirected telephone calls may constitute "'some evidence of actual confusion,'"[75] there must be admissible evidence of those calls, not inadmissible hearsay statements of a party about alleged calls.  As even Plaintiff acknowledges, the evidence of "actual confusion" that is relevant to a trademark-infringement analysis must be admissible and come via "**testimony** of . . . customers."[76]

The only undisputed testimony regarding the actual-confusion factor comes from Mr. Truesdell, who has testified: "I know of no legitimate actual confusion between Dallas's *bisou* CONTINENTAL CUISINE and Bisous Bisous Pâtisserie."[77]

Consequently, the seventh digit favors Defendant The CLE Group, LLC.

### viii.   The Degree of Care Exercised by Customers of Bakery Goods Compared to the Degree of Care Exercised by Patrons of Dallas's Newest Social Dining Hotspot

Plaintiff Bisous Bisous Pâtisserie's only argument on this digit is the contention that "the parties' goods are priced comparatively and are inexpensive."[78]  Plaintiff is mistaken.  Contrary to Plaintiff's intimation, this is not a case of two corn-dog sellers in a tussle.[79]  Defendant The CLE Group, LLC has already requested that the Court compare the menus for the bakery and Dallas's *bisou* CONTINENTAL CUISINE.[80]  Thus, it will not belabor the point.  It will only note that one item on its menu that uses the term "BISOU" is neither a pastry nor "priced comparatively" to the bakery's $2.00 tarts.  Dallas's *bisou* CONTINENTAL CUISINE's BISOU MAKI sells for $18.[81]

---

[75] *Id.* at 20 (quoting *New Century Fin., Inc. v. New Century Fin. Corp.*, No. C-04-437, 2005 WL 2453204, at *7-9 (S.D. Tex. Oct. 4, 2005).
[76] *Id.* at 20 (citing *Brainstorm*, 2020 WL 8267578, at *2) (emphasis added).
[77] App. 04 (Truesdell Decl. ¶ 19 at 3).
[78] Doc. 12 at 21.
[79] *Id.* (citing *Fletcher's*, 434 F. Supp. 3d at 495).
[80] *Compare* App. at 67 (Dallas Hotspot Menu) *with* App. at 37 (Bakery's menu).
[81] Defendant takes no position as to whether that price is expensive or inexpensive.

Thus, digit eight favors Defendant The CLE Group, LLC.

*In sum*, given that nearly all the relevant digits of confusion weigh in favor of finding no likelihood of confusion, the Court should find that Plaintiff Bisous Bisous Pâtisserie is **not** likely to prevail on its claims of trademark infringement and, thus, deny its request for injunctive relief in full.

### B.    The Bakery Will Not Suffer Irreparable Harm If Defendant Is Not Enjoined

Because Plaintiff has not shown a likelihood of success on the merits on its federal claims under the Lanham Act, it is not entitled to a presumption of irreparable harm under 15 U.S.C. § 1116(a).   Plaintiff acknowledges this possibility, stating "even if there was no statutory presumption, the facts make plain that [the bakery] has been damaged irreparably already."[82]   The bakery, however, provides insufficient evidence to establish this claim.   For example, although admittedly the disgruntled employee's call for negative reviews did prompt several hundred negative reviews within a few days, that ended weeks ago.   Since she "called off her campaign," there is no evidence that the negative reviews continue.   As Mr. Truesdell testifies, "Since the flurry of false and negative reviews following Ms. Sanchez's posts, Dallas's *bisou* CONTINENTAL CUISINE has received only a few negative reviews that were verified as coming from actual patrons."[83]   There is no evidence that the bakery has continued to receive any misdirected negative reviews.   In fact, the bakery acknowledges that the harm was pretty much confined to about "48 hours" and then Google "erased all of the[] misdirected reviews."[84]   In addition, as of the date of this filing, the bakery's Google rating is right back to 4.6, which "typically ha[s] a rating of [at]

---

[82] Doc. 12 at 22.
[83] App. 04 (Truesdell Decl. ¶ 18 at 3).
[84] Doc. 12 at 22.

least 4.5/5 stars on Yelp."[85]  Consequently, Plaintiff offers the Court nothing in support of its claim of irreparable harm other than its unsubstantiated, gratuitous, false, and inflammatory statements that "in light of CLE's poor reputation—particularly with respect to its low quality food, discriminatory practices, and disregard for the health and safety of its customers . . . CLE's actions are diminishing the reputation and goodwill [of the bakery]."[86]

> Thus, the Court should find as it did in the *NFL Properties* case; namely that:

> One could not say with a straight face that [the bakery] would lose control of its reputation if an injunction does not issue under the facts of this case. . . . Plaintiff['s] assertion that irreparable harm will result absent an injunction amounts to a tenuous, insubstantial or remote possibility of irreparable harm.

*NFL Properties*, 808 F. Supp. at 1294.

### C.    The Balance of Hardships Does Not Favor an Injunction

Plaintiff Bisous Bisous Pâtisserie represents to the Court that its "requested temporary restraining order and preliminary injunction would require that CLE simply observe its already-existing obligations to not infringe [the bakery's] protected marks."[87]  That is not true.  As shown above, both Plaintiff's cease-and-desist letter to Defendant The CLE Group, LLC and its Complaint seek restraints and prohibitions far beyond the limited protections that the bakery currently has in the fields of "bakery goods, excluding solid chocolate," "retail bakery shop," and its limited protection in the field of "café and restaurant services."[88]

Plaintiff Bisous Bisous Pâtisserie wants to obtain the Court's assistance to ensure that Defendant "**never** . . . use[s]  or appl[ies] to register a trademark that features the term BISOU in

---

[85] *Id.* at 4; *see also* App. 96 (Rating of 4.6 as of July 28, 2021).
[86] *Id.* at 23.
[87] Doc. 12 at 24.
[88] Doc. 13-1 at App. 002.

connection with [**any**] food or restaurant services."[89]  The bakery's Complaint requests, in part, that "the Court grant an injunction preliminarily and permanently enjoining . . . [Defendant from] [u]sing the term "BISOU" . . . in association with [any] . . . food . . . products").[90]

Consequently, in light of its actual requested relief, it is clear that Plaintiff Bisous Bisous Pâtisserie misrepresents to the Court that "[s]uch costs would also be minimal since CLE can continue operating its restaurant under a different, non-infringing name and [it] has been open in Dallas for only eight days."[91]  It is equally clear from Plaintiff's filings and correspondence that the bakery is not simply trying to protect "a family-owned patisserie located in the heart of Uptown Dallas."[92]  It is trying to completely shut down Dallas's Newest Social Dining Hotspot that offers a panoply of food items, including but not limited to "Asian Chicken Salad," "Braised Oxtail & Pasta," "Smoked Korean Spiced Short Rib," and "Pan Seared Duck Breast," simply because it also offers "Bisou Salad" and "Bisou Maki."[93]

The Court should not countenance or facilitate such overreaching and improper use of trademark rights.  "A preliminary injunction is a potent weapon that should be used only when necessary to safeguard a litigant's legitimate interests. The instant record reflects no basis for a reasoned belief that such an order is necessary."  *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004).

### D.    The Public Would Not Be Best Served by the Issuance of An Injunction

An honest assessment of the facts should indicate that Defendant The CLE Group, LLC is not infringing any of the bakery's trademarks.  Furthermore because the bakery has not shown a

---

[89] App. at 80 (Letter from Bakery's Attorney to The CLE Group, LLC).
[90] Doc. 1 ¶ F(1) at 26.
[91] Doc. 12 at 24.
[92] Doc. 1 ¶ 11 at 5.
[93] App. at 67 (Dallas Hotspot Menu).

likelihood of success on the merits of its Lanham Act claims, it cannot show and has not established that a preliminary injunction will serve the public interest.

## V.      CONCLUSION

For all the foregoing reasons, the Court should deny Plaintiff's Application for a Temporary Restraining Order and Preliminary Injunction in full.


Dated:  July 28, 2021                              Respectfully submitted,


                                        **BUETHER JOE & COUNSELORS, LLC**

                                        By:      */s/ Kenneth P. Kula*
                                                 Eric W. Buether
                                                 State Bar No. 03316880
                                                 Eric.Buether@BJCIPLaw.com
                                                 Christopher M. Joe
                                                 State Bar No. 00787770
                                                 Chris.Joe@BJCIPLaw.com
                                                 Kenneth P. Kula
                                                 State Bar No. 24004749
                                                 Ken.Kula@BJCIPLaw.com

                                                 1700 Pacific Avenue
                                                 Suite 4750
                                                 Dallas, Texas 75201
                                                 Telephone:    (214) 730-5660
                                                 Facsimile:    (972) 707-1248

                                        **ATTORNEYS FOR DEFENDANT
                                        THE CLE GROUP, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5.1(d) on this 28th day of July, 2021.

/s/ Kenneth P. Kula
Kenneth P. Kula