UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BISOUS BISOUS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-1614-B |
| | § | |
| THE CLE GROUP, LLC, BISOU | § | |
| UPTOWN MANAGER, LLC, and | § | |
| JOHN DOES 1–10, | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff Bisous Bisous LLC ("Bisous Bisous")'s Application for a Temporary Restraining Order and Motion for a Preliminary Injunction (Doc. 12). The Court heard argument on the motion at a hearing on August 11, 2021, at 3:30 p.m. On the record at this hearing, the Court **GRANTED** Bisous Bisous's motion in part. This Order further explains the Court's reasoning. Specifically, the Court **GRANTS** the pending motion to the extent it seeks a preliminary injunction enjoining Defendants the Cle Group ("Cle"), Bisou Uptown Manager LLC ("Bisou Uptown"), and anyone acting in concert with them, from using the term "Bisou" in association with restaurant services and food and/or beverage products, including advertising for the same, in Dallas, Texas.

## I.

## BACKGROUND

A.     *Factual Background*

This is a trademark infringement case. Bisous Bisous is a bakery on McKinnney Avenue in Dallas, Texas. Doc. 26, Am. Compl., ¶¶ 1–2. It serves a variety of cakes and French pastries. *See* Doc. 13-3, Pl.'s App., 31–38. Andrea Meyer, Bisous Bisous's owner and pastry chef, began serving her pastries in 2012 "at the White Rock Local Market in Dallas[.]" Doc. 26, Am. Compl., ¶ 14. She opened her storefront on McKinney Avenue in 2015. *Id.* Bisous Bisous owns the following trademarks:

- BISOUS BISOUS, a word mark, Reg. No. 4,811,207, covering "bakery goods, excluding solid chocolate";

- BISOUS BISOUS, a word mark, Reg. No. 5,120,605, covering "retail bakery shop";

- BISOUS BISOUS, a word mark, Reg. No. 5,120,206, covering "café and restaurant services";

- , a design mark, Reg. No. 4,811,208, covering "bakery goods, excluding solid chocolate";

- , a design mark, Reg. No. 5,106,226, covering "retail bakery shop"; and

- , a design mark, Reg. No. 5,106,227, covering "café and restaurant services[.]"

Doc. 13-2, Pl.'s App., 23–28.

According to Bisous Bisous, Cle owns and operates restaurants and nightclubs in Houston, including a restaurant called Bisou ("Bisou Houston"), which opened in 2018. Doc. 26, Am.

Compl, ¶¶ 24–26. Bisous Bisous alleges that Bisou Houston has a reputation for poor health standards, bad food, and rude service. *Id.* ¶¶ 27–28.

"In January 2021, Bisous Bisous learned about Cle's intentions to open another restaurant under the . . . name Bisou in Dallas" ("Bisou Dallas"). *Id.* ¶ 33. That same month, Bisous Bisous's counsel wrote a letter to Cle "demand[ing] that [Cle]: 1. Cease use of the BISOU mark; and 2. Undertake never to use or apply to register a trademark that features the term BISOU in connection with food or restaurant services." Doc. 22-27, Cle's App., 80. Cle responded by letter dated March 2, 2021, refusing Bisous Bisous's requests. Doc. 13-11, Pl.'s App., 210.

After weeks of promotion on social media, Bisou Dallas opened on July 7, 2021, on McKinney Avenue. Doc. 26, Am. Compl., ¶ 45; Doc. 13-10, Pl.'s App., 208. Within 24 hours of Bisou Dallas's opening, "dozens of customers left negative reviews about bad food, service, and treatment" at Bisou Dallas on *Bisous Bisous's* Google and Yelp profiles. Doc. 13-1, Pl.'s App., 16–17; *see also generally* Doc. 13-19, Pl.'s App., 409–20. Chef Meyer states that Bisous Bisous's internet rating fell as a result. Doc. 13-1, Pl.'s App., 18. But Google has since deleted the misdirected internet reviews. *See id.*; Doc. 12, Pl.'s Mot., 22.

According to Chef Meyer, however, confusion between the two eateries began before Bisou Dallas opened its doors and continued after its opening day. Indeed, Chef Meyer testifies that one month before Bisou Dallas opened, a prospective employee "mistakenly showed up at Bisous Bisous" seeking an interview with Bisou Dallas, and "[o]ne week" before it opened, "a carrier mistakenly delivered a large set of supplies intended for Bisou Dallas to Bisous Bisous." Doc. 13-1, Pl.'s App., 16. Additionally, according to Chef Meyer, the bakery receives misdirected phone calls intended for Bisou Dallas, and she recounts that on July 10, 2021, alone, the bakery received eleven such phone calls. *Id.* at 21. Moreover, on August 10, 2021, Bisous Bisous filed a supplemental

appendix (Doc. 43) comprising: (1) a declaration of Matthew Meyer, co-owner of Bisous Bisous, (2) two voicemails received by Bisous Bisous, contained on a flash drive, and (3) an email received by Bisous Bisous.

In his declaration Mr. Meyer states that, in addition to the eleven misdirected phone calls on July 10, 2021, the bakery received "at least eleven (11) more misdirected calls between July 16 and August 3, 2021" and "five (5) additional misdirected phone calls between August 4 and August 6, 2021[.]" Doc. 43, Pl.'s Suppl. App., 435. He further states that the bakery received two misdirected voicemails on August 4, 2021, and one misdirected email on August 4, 2021, from customers seeking to make reservations at Bisou Dallas. *Id.* at 434–35.

Cle adds an interesting twist to this story. Cle submits the declaration of Justin Truesdell, "an owner and manager" of Bisou Dallas, and Mr. Truesdell describes the following incident: In preparation for opening, Bisou Dallas hired Vanessa Sanchez as a waitress in early June 2021. Doc. 22-2, Cle's App., 3. On June 30, 2021, Bisou Dallas sent Ms. Sanchez home after she reported to work in "inappropriate attire[.]" *Id.* According to Mr. Truesdell, Ms. Sanchez immediately took to TikTok, a popular social-media site, and posted a video ("the First TikTok") describing this incident. *Id.*[1] In the First TikTok, Ms. Sanchez is sitting in her car, visibly upset, as she recounts why she was sent home. *See* Cle's Ex. 2.

About a week later, Bisou Dallas learned of the First TikTok and fired Ms. Sanchez. Doc. 22-2, Cle's App., 3. According to Mr. Truesdell, Ms. Sanchez again immediately took to TikTok and posted another video ("the Second TikTok") describing this incident. *Id.* In the Second TikTok, Ms. Sanchez reveals to the viewer that the "name of the restaurant" from which she was

---

[1] Cle submits the First TikTok, and subsequent TikTok videos purportedly posted by Ms. Sanchez (identified by her username "@vaneskinnylegnd"), but none of the TikTok videos are timestamped.

fired is "Bisou" and that the restaurant's "grand opening is tomorrow." Cle's Ex. 3. She then tells the viewer to "do what you want with that information. I'm kidding." *Id.* Ms. Sanchez's final words in the Second TikTok were: "I'm gonna cause a scene online. I'm literally about to leave so many bad reviews. I don't care." *Id.* Mr. Truesdell states that the Second TikTok received "624,000 views[.]" Doc. 22-2, Cle's App., 3.

Cle submits three more TikToks, two of which ("the Third TikTok" and "the Fourth TikTok") contain relevant content. In the Third TikTok, among other things, Ms. Sanchez states: "I don't care, like, anymore, like, it's fine. Like, y'all don't have to keep leaving reviews and commenting on them, just leave them alone." Cle's Ex. 4. And in the Fourth TikTok, among other things, Ms. Sanchez states: "Stop leaving roaches reviews. Stop leaving reviews of roaches, guys." Cle's Ex. 7. As will be discussed below, it is Cle's position that these TikToks, particularly the Second TikTok, instigated all the misdirected negative reviews on Bisous Bisous's internet pages. Doc. 21, Cle's Resp., 9.

B.     *Procedural Background*

Bisous Bisous filed its original complaint on July 13, 2021, naming Cle as the only defendant and alleging claims under the Lanham Act and Texas trademark common law, as well as a claim for express abandonment/refusal of Cle's pending trademark application for the words "Bisou Continental." Doc. 1, Compl., ¶¶ 46–82. It then filed the pending motion for a TRO and preliminary injunction (Doc. 12) on July 19, 2021. The Court ordered an expedited response, *see* Doc. 15, Order, which it timely received on July 28, 2021. *See* Doc. 21, Cle's Resp. Although the Court had initially ordered the parties that no reply would be permitted, because Cle disputed in its briefing that it was the proper defendant in this action, the Court ordered Bisous Bisous to file a reply limited to that issue. Doc. 25, Order. Bisous Bisous timely filed that reply on July 30, 2021.

*See* Doc. 31, Reply. Simultaneously, Bisous Bisous filed an amended complaint adding Bisou Uptown, as well as John Does 1–10, as defendants. Doc. 26, Am. Compl., ¶¶ 6–9. The amended complaint, the pending motion, and the motion's supporting materials have been served on Bisou Uptown, but Bisou Uptown has not appeared in this matter as of August 16, 2021.[2] Bisous Bisous's motion is fully briefed and argued.

## II.

## LEGAL STANDARD

"Injunctive relief is an extraordinary and drastic remedy, and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quotation marks and citation omitted). To obtain a preliminary injunction, a plaintiff must show: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that it will suffer irreparable injury absent the injunction; (3) that the threatened injury outweighs any harm the injunction might cause the defendants; and (4) that the injunction will not impair the public interest." *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000) (citation omitted).

"When crafting an injunction, district courts are guided by the Supreme Court's instruction that 'the scope of injunctive relief is dictated by the extent of the violation established.'" *ODonnell v. Harris Cnty.*, 892 F.3d 147, 163 (5th Cir. 2018) (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). However, when a court finds injunctive relief proper, it may bind the parties as well as "the parties' officers, agents, servants, employees, . . . attorneys," and "other persons who are in active concert or participation with" any of the previously listed persons. Fed. R. Civ. P. 65(d)(2);

---

[2] At the August 11 hearing, counsel for Cle confirmed that he will represent Bisou Uptown in this matter.

*see also Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1985) ("An injunction binds not only the parties subject thereto, but also nonparties who act with the enjoined party." (citations omitted)).

## III.

## ANALYSIS

A.   *Likelihood of Success on the Merits*

Like in its original complaint, in its amended complaint, Bisous Bisous brings claims for: (1) federal trademark infringement under 15 U.S.C. § 1114(1); (2) federal unfair competition under § 1125(a); (3) trademark infringement and unfair competition under Texas common law; and (4) an order for express abandonment/refusal of Cle's trademark application for "Bisou Continental." Doc. 26, Am. Compl., ¶¶ 53–89. The parties agree that the elements of Bisous Bisous's first three claims are the same: (1) that Bisous Bisous has a protectable right in the asserted marks; and (2) that there is a likelihood of consumer confusion resulting from Defendants' conduct. Doc. 12, Pl.'s Mot., 8; Doc. 21, Cle's Resp., 8 & n.34; *see also Transparent Energy LLC v. Premiere Mktg. LLC*, 2020 WL 4678438, at *6 (N.D. Tex. July 28, 2020) (collecting cases establishing that trademark infringement under federal and Texas law, as well as unfair competition under federal and Texas law, all have the same elements), *R.&R. adopted*, 2020 WL 4673102 (N.D. Tex. Aug. 12, 2020). Thus, after dispensing with Cle's preliminary argument that it is an improper defendant, the Court analyzes these two elements in turn. Overall, the Court concludes that Bisous Bisous is substantially likely to succeed on the merits of at least one of its first three claims with respect to its registered word marks.

1.     Bisous Bisous has sued the proper parties.

As a preliminary matter, Cle claims Bisous Bisous is not likely to succeed on the merits of its claims against Cle because Cle is not a proper defendant in this case. In his declaration, Mr. Truesdell states that he is "an owner" of Cle and the person "responsible for all operations and management" of Cle. Doc. 22-2, Cle's App., 2. According to Mr. Truesdell, Cle "has no ownership interest in" either Bisou Houston or Bisou Dallas. *Id.* Rather, Bisou Dallas is owned by "Bisou Uptown Manager, LLC." *Id.*[3] Cle further posits that it "does not control the determination or use of either restaurant's marks or signage." Doc. 21, Cle's Resp., 4.

But contrary to Cle's contention, the evidence supports an inference that Cle promotes Bisou Dallas under the "Bisou" name. First, Cle itself provides a screenshot of bisourestaurant.com/experience/, which prominently displays "Cle Group" as the Bisou founder. Doc. 22-18, Cle's App., 45–46; *see also* Doc. 13-17, Pl.'s App., 387. Moreover, Bisou Dallas's Instagram profile touts Bisou Dallas as "A #CleGroup Concept." Doc. 13-17, Pl.'s App., 376, 379, 381. Bisou Dallas's Facebook profile does as well. *Id.* at 382. Additionally, Bisou Dallas's social media posts direct prospective employees to apply via email at careers@theclegroup.com, *id.* at 378, 381, and encourage customers to make reservations via email at reservations@theclegroup.com. *Id.* at 379, 382–85. Finally, and importantly, "The Cle Group, LLC" applied on March 1, 2021, for trademark registration of the words "Bisou Continental" as a word mark in the restaurant and bar services and nightclub entertainment classes. Doc. 22-22, Cle's App., 62. Bisous Bisous has filed a reply appendix comprising even more social media posts suggesting that Cle promotes and manages Bisou Dallas under the "Bisou" name, but the Court

---

[3] As noted above, Mr. Truesdell states that he also "work[s] for" Bisou Dallas "as an owner and manager," and his "responsibilities include all aspects of operations and management." *Id.* at 3.

need not consider this additional evidence to conclude that Cle has not been "wrongfully sued." Doc. 21, Cle's Resp., 1.

In sum, regardless of its ownership status, it appears that Cle has greater control over the management and promotion of Bisou Dallas than it has revealed in its briefing. The evidence in the record suggests that Cle is at least *a* proper defendant in this matter. But even if it is not, Bisous Bisous has cured its error by filing an amended complaint to add Bisou Uptown—the entity to whom Cle is pointing its finger—as a defendant. *See* Doc. 26, Am. Compl. Bisous Bisous served the amended complaint, the instant motion, and its supporting appendix on Bisou Uptown on July 29, 2021. Doc. 30, Summons Return. And, as mentioned above, Cle's counsel is also Bisou Uptown's counsel.

2.   Bisous Bisous has a protectable interest in the mark.

Bisous Bisous argues it has a protectable right in all its registered marks because it has continuously used them in commerce for "nearly a decade," and their registration further lends to their validity. Doc. 12, Pl.'s Mot., 9. It further posits that its trademark Reg. No. 4,811,208—one of its design marks—is incontestable because it has been registered for more than five years. *Id.* at 10.[4]

Cle concedes that Bisous Bisous has a protectable right in its trademarks. Doc. 21, Cle's Resp., 8. Cle simply argues that the rights are "limited to using [the marks] in 'connection with bakery goods.'" *Id.* at 9 (citing Doc. 12, Pl.'s Mot., 10). But Cle ignores that Bisous Bisous owns

---

[4] As noted above, the Court concludes that Bisous Bisous has established likelihood of success on the merits of its claims at least with respect to its word marks. Bisous Bisous's word marks protect the use of the words "Bisous Bisous" in various classes, including restaurant and café services, without regard to the font, style, or color of the words. Doc. 13-2, Pl.'s App., 22–25. Bisous Bisous's design marks protect its logo. *See id.* at 26–28. The Court need not, and does not, consider Bisous Bisous's design marks.

both a word mark for "Bisous Bisous" and a design mark for its logo in the "[c]afé and restaurant services" class. Doc. 13-2, Pl.'s App., 25, 28. This class includes "[s]ervices for providing food and drink[.]" 37 C.F.R. § 6.1(43). Thus, Bisous Bisous's interest is not necessarily as narrow as Cle states. Because Cle "does not contest whether [Bisous Bisous] 'has a protectable right in its mark'" and "[c]onsequently . . . focus[es] on disproving" likelihood of confusion, the Court finds Bisous Bisous has met this element. Doc. 21, Cle's Resp., 8.

3.    Bisous Bisous has established a likelihood of confusion.

In considering whether a likelihood of confusion exists, courts in the Fifth Circuit consider the following factors:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) any evidence of actual confusion, and (8) the degree of care exercised by potential purchasers.

*Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 812 (5th Cir. 2019) (cleaned up). "No one factor is dispositive, and a finding of likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'" *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (citation omitted).

The Court analyzes each of the confusion factors in turn below.

i.    *Type of Mark*

This factor favors Bisous Bisous. A mark is either generic, descriptive, suggestive, or arbitrary and fanciful. *Dall. Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 637 (N.D. Tex. 2009). The more arbitrary or fanciful the mark, the stronger it is—and the more likely an infringing mark could cause consumer confusion. *See id.* "A generic term refers to a particular genus or class of which an individual article or service is but a member[.]" *Soweco, Inc.*

*v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir. 1980) (quotation marks and citation omitted). "[I]t suggests the 'basic nature of articles or services.'" *Id.* (citation omitted). "A descriptive term identifies a characteristic or quality of" the item, such as its "color, odor, function, dimensions, or ingredients." *Id.* (quotation marks and citations omitted). Meanwhile, a "suggestive term suggests, rather than describes, some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of those goods." *Id.* (quotation marks omitted). Finally, "[a]rbitrary or fanciful terms . . . bear no relationship to the product or service with which they are associated." *Id.* (quotation marks omitted).

Cle argues that because "Bisous" means "kisses," which Cle contends is a generic term, Bisous Bisous's marks are generic. Doc. 21, Cle's Resp., 11. This is incorrect. Neither "bisous" nor "kisses" suggests the basic nature of Bisous Bisous's products or services; these words have nothing to do with bakery goods. Thus, the marks are not generic but arbitrary. *See Soweco*, 617 F.2d at 1183. Under Cle's argument, any mark that is not a completely made-up word is generic. This is not the case. Marks can be stronger than generic, even if they comprise everyday words. *See id.* at 1184 (noting that the term "'Penguin' would be suggestive" "[i]f used as a trademark for refrigerators"); *Sun Water Sys., Inc. v. Vitasalus, Inc.*, 2007 WL 628099, at *14 (N.D. Tex. Feb. 28, 2007) ("Arbitrary marks, for example, are 'Fish' as applied to a bank or 'Camel' as applied to cigarettes." (citing, *inter alia*, *Wal-Mart Stores, Inc. v. Samra Bros., Inc.*, 529 U.S. 205, 211 (2000)); *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986) (noting that "Black & White" is arbitrary as applied to scotch whiskey).

This factor favors Bisous Bisous because Bisous Bisous's marks are arbitrary—thus they are strong.

ii.     *Similarity Between the Marks*

This factor also weighs in favor of Bisous Bisous. Courts assessing the similarity of marks compare the marks' appearance, sound, and meaning. *Dall. Cowboys*, 616 F. Supp. 2d at 638. Here, the marks look, sound, and mean the same. "Bisous" is pronounced "bi-zu," and it means "kisses." Doc. 26, Am. Compl., ¶ 1; Doc. 13-2, Pl.'s App., 25. "Bisou" is also pronounced "bi-zu," and it means "kiss." Doc. 12, Pl.'s Mot., 15. The only difference between Bisous Bisous's word mark "Bisous Bisous" and Bisou Dallas's use of the word "Bisou" is that Bisou Dallas uses the word in the singular (without an "s" on the end), and Bisou Dallas does not repeat the word twice as Bisous Bisous does.

Cle emphasizes these differences, but they do not render the marks dissimilar. First, Bisou Dallas's use of the word "bisou" in the singular does not mitigate its similarity to Bisous Bisous's mark, as the word is pronounced the same in both the singular and the plural. And even if they were not pronounced the same, this Court agrees with the Second and the Sixth circuits, which have both found singular/plural distinctions insignificant when considering similarities between marks. *See Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 535 (6th Cir. 2014); *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 47–48 (2d Cir. 1978). Second, there is no reason to discount that the words look virtually identically and sound identically simply because Bisous Bisous repeats the word and Defendants do not.

Cle also argues that Bisou Dallas's mark and Bisous Bisous's logo do not look the same. Doc. 21, Cle's Resp., 12. But as noted above in footnote 4, the Court does not consider Bisous Bisous's logo or any of its design marks, but rather its word marks. As part of this argument, Cle emphasizes that Bisou Dallas's mark is "Bisou Continental Cuisine," rather than just "Bisou." *See id.* But, while Bisou Dallas's menu displays "Bisou Continental Cuisine," Bisou Dallas *advertises*

-12-

often with the word "Bisou" alone, not "Bisou Continental Cuisine." Doc. 22-29, Cle's App., 49; Doc. 13-17, Pl.'s App., 380–81. Moreover, while Bisou Dallas's profile picture on social media contains the words "continental cuisine," the word "Bisou" is much more prominently displayed, and Bisou Dallas's name itself on social media is simply "Bisou DTX" or "Bisou Dallas." Doc. 13-17, Pl.'s App., 376, 382.

In sum, the Court gives little weight to Cle's arguments regarding the dissimilarities between the marks. The Court finds that the marks are similar, and this factor weighs in favor of Bisous Bisous.

### iii.     Similarity Between Products or Services

This factor is a closer call, but the Court concludes it favors Bisous Bisous. In assessing the similarity of products and services, "exact similarity is not required." *Dall. Cowboys*, 616 F. Supp. 2d at 638. "There may be a likelihood of confusion even if the parties are not direct competitors." *Get Me, LLC v. Abello*, 2017 WL 10121544, at *4 (N.D. Tex. Sept. 20, 2017) (citing, *inter alia*, *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 669 (5th Cir. 1975) ("This court has repeatedly held that direct competition is not the sine qua non of trademark infringement; rather the gist of the action lies in the likelihood of confusion to the public.")).

The Court finds the products and services in this case sufficiently similar that this factor favors Bisous Bisous because both entities sell French-inspired food in a French-inspired eatery. Cle argues that the products are not similar because Bisous Bisous is a "small quaint neighborhood bakery and [Bisou Dallas] is a 10,000 square foot Social Dining Hotspot[.]" Doc. 21, Cle's Resp., 13. Cle points out that Bisous Bisous sells "$2.00 tart[s]" while Bisou Dallas sells food including a "$240 'tomahawk ribeye[.]'" *Id.* However, that the two establishments offer different types of food does not mitigate the similarity between the products and services here. As a threshold matter,

they both provide restaurant services. Moreover, both serve French-inspired food. *Compare* Doc. 13-3, Pl.'s App., 34 (Bisous Bisous's menu—macarons), *id.* at 36 (Bisous Bisous's menu—croissants), *id.* at 37 (Bisous Bisous's menu—cruffins), *id.* at 38 (Bisous Bisous's menu—eclairs), *id.* at 39 (Bisous Bisous's menu—scones and tarts), *with* Doc. 22-24, Def.'s App., 67 (Bisou Dallas's menu—including, among other things, "escargot & bone marrow," "jumbo lump crab cake beignets," and "pommes frites").

It is not required that the entities sell identical items for there to be a similarity between products. *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980) (finding similarity of products between "Plaintiff Exxon Corporation[,] most noted for its wide range of petroleum products" sold at service stations that sometimes also provide other car-care services, and defendant, "engaged primarily in providing automotive repair" because both parties were "heavily involved in car care"); *Choice Hotels Int'l, Inc. v. Goldmark Hosp., LLC*, 2014 WL 642731, at *5 (N.D. Tex. Feb. 19, 2014) (rejecting defendant-hotel's argument that it was higher-end than plaintiff-hotel and attracted customers seeking longer stays than that of plaintiff-hotel because both were hotels); *but see Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 261 (5th Cir. 1980) (finding no similarity "between defendants' pizza and plaintiff's sugar, salt, mustard, ketchup and other condiments").

In sum, the Court finds this factor favors Bisous Bisous because the products and services at issue here—restaurant services and French-inspired food—are similar. However, even if the products and services were too dissimilar to find in favor of Bisous Bisous on this factor, the confusion factors on balance still weigh in favor of Bisous Bisous.

-14-

iv.    *Identity of Retail Outlets/Purchasers*

This factor favors Bisous Bisous. "Dissimilarities between the retail outlets for and the predominant consumers of [the parties'] goods lessen the possibility of confusion, mistake, or deception." *Amstar Corp.*, 615 F.2d at 262. Likewise, "[d]ifferences in the parties' customer bases can lessen the likelihood of confusion." *Dall. Cowboys*, 616 F. Supp. 2d at 639 (citations omitted).

The entities' retail outlets are similar. Both are brick-and-mortar storefronts on McKinney Avenue in Dallas. Doc. 13-10, Pl.'s App., 208. Cle makes no direct argument that the retail outlets are dissimilar; however, many times throughout its briefing it refers to Bisou Dallas as "a 10,000 square foot Social Dining Hotspot," Doc. 21, Cle's Resp., 8, 10, 13, and to Bisous Bisous as a small "neighborhood bakery[.]" *Id.* at 13, 14. But the Court does not find the size of the establishments relevant given their proximity to one another and the fact that they are both eateries.

The establishments also have similar purchasers due to their proximity. *See Fletcher's Orig. State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473, 492 (E.D. Tex. 2020) (finding identity of purchasers based in part on the fact that the parties shared a geographic area). Cle argues that the business hours of the two eateries establish that each one has distinct consumer groups—"most of [Bisous Bisous's] business occurs before [Bisou Dallas] even opens." Doc. 21, Def.'s Resp., 14. According to Cle, this suggests that Bisou Dallas "attracts fine-food enthusiast[s] and social hotspot seekers from all around the DFW area," while Bisous Bisous "caters to customers who live nearby." *Id.* at 15 (quotations omitted). But the Court gives this argument little weight.

To the extent Bisou Dallas attracts patrons from across the DFW area, Bisous Bisous likely does, too. Indeed, Bisous Bisous and Chef Meyer have been the subject of local news media and articles about Dallas-area eateries. *See generally* Doc. 13-7, Pl.'s App., 77–160; Doc. 13-8, Pl.'s

App., 162–98. Thus, Bisous Bisous likely attracts customers from around the DFW area. That the two eateries maintain different business hours does not mitigate that both cater to DFW residents—whether they have traveled to Uptown for a day or a night out, or whether they live in in Uptown and are simply visiting a neighborhood spot.

In sum, the Court finds this factor favors Bisous Bisous because the retail outlets and purchasers here are similar. However, even if the retail outlets and purchasers were too dissimilar to find in favor of Bisous Bisous on this factor, the factors on balance would still weigh in favor of Bisous Bisous.

> v.     *Identity of Advertising Media Used*

This factor favors Bisous Bisous. "The greater the degree of overlap in the marketing approaches of the two entities, the greater the likelihood of confusion." *Dall. Cowboys*, 616 F. Supp. 2d at 639 (alterations incorporated and quoting *Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 827 (S.D. Tex. 1999)).

Bisous Bisous posits that both it and Bisou Dallas "rely on their websites[ and] social media" to advertise. Doc. 12, Pl.'s Mot., 17. Cle "concedes that both the bakery and the Dallas-based restaurant currently use the same advertising channels." Doc. 21, Cle's Resp., 15 (citation and quotation marks omitted). Thus, the Court finds this factor weighs in favor of Bisous Bisous.

> vi.     *Defendants' Intent*

This factor is neutral. "If a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone 'may be sufficient to justify the inference that there is confusing similarity." *Dall. Cowboys*, 616 F. Supp. 2d at 640 (quotations and citations omitted). Courts in this circuit focus "on whether the defendant intended to derive benefits from the reputation of the plaintiff." *Streamline Prod. Sys., Inc. v. Streamline Mfg.,*

*Inc.*, 851 F.3d 440, 455 (5th Cir. 2017) (citation omitted). "But mere awareness of the senior user's mark does not establish bad intent." *Id.* at 456 (cleaned up) (quoting *Conan Props., Inc. v. Conans Pizza*, 752 F.2d 145, 150 (5th Cir. 1985)). "If there is no evidence of intent to confuse, then this factor is neutral." *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 195 (5th Cir. 2018).

Bisous Bisous argues that because Defendants were advised of Bisous Bisous's rights in the marks via the demand letter and the filing of the complaint in this case, they used the marks with the intent to confuse the public. Doc. 12, Pl.'s Mot., 18. But because "mere awareness" of Bisous Bisous's marks is not enough to establish intent, and Bisous Bisous offers nothing further to establish Bisou Dallas's intent, this factor is neutral. *Viacom*, 891 F.3d at 195.

  *vii.* *Any Evidence of Actual Confusion*

This factor favors Bisous Bisous. "Although not necessary to find a likelihood of confusion, the best evidence of likelihood of confusion is provided by evidence of actual confusion." *Dall. Cowboys*, 616 F. Supp. 2d at 640; *see also Exxon Corp.*, 628 F.2d at 506 (citation omitted). "To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion or consumer surveys." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004) (citations omitted). Importantly, "very little proof of actual confusion" is needed to establish a likelihood of confusion. *Streamline*, 851 F.3d at 457 (quoting *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009)). "Testimony of a single known incident of actual confusion by a consumer has been found to be sufficient evidence to support the district court's finding of actual confusion." *Id.* (citing *La. World Exposition, Inc. v. Logue*, 746 F.2d 1033, 1041 (5th Cir. 1984)). And "[e]ven if initial consumer confusion is quickly dispelled, this initial misunderstanding is evidence of confusion." *Viacom*, 891 F.3d at 197. "However, not all confusion counts: evidence of actual confusion must show more than a fleeting mix-up of names; rather it must show that the

confusion was caused by the trademarks employed and it swayed consumer purchases." *Id.* (internal quotations omitted and alterations incorporated) (quoting *Xtreme Lashes*, 576 F.3d at 230).

Bisous Bisous has presented evidence of actual confusion. First, Bisous Bisous submitted a declaration of Chef Meyer in which she states that since Bisou Dallas opened, Bisous Bisous has received phone calls "with questions for Bisou, including whether [the caller may] bring balloons, what the hours are, whether [the caller] can make a reservation, and what the wait time is[.]" Doc. 13-1, Pl.'s App., 21. In fact, Chef Meyer states that "[o]n July 10, 2021, alone, Bisous Bisous'[s] bakery manager counted 11 calls that were intended for Bisou Dallas." *Id.* But the phone calls did not end on July 10. As detailed above, Bisous Bisous has received at least fifteen more misdirected calls (and at least one misdirected email) in the one month since July 10. Doc. 43, Pl.'s Suppl. App. 435. These phone calls alone are enough to find consumer confusion. *See Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.*, 295 F. App'x 630, 638 (5th Cir. 2008) (finding this factor "slightly in favor of" plaintiff where plaintiff established three misdirected phone calls over "a number of years," along with three other incidents of actual confusion).

But the phone calls are not the only evidence of confusion. Bisous Bisous has submitted screenshots of Google and Yelp reviews posted on and soon after the day Bisou Dallas opened that were intended for Bisou Dallas but were erroneously posted on Bisous Bisous's page. *See generally* Doc. 13-19, Pl.'s App., 409–21. Bisous Bisous posits that it has received "over 30" of these misdirected reviews. Doc. 12, Pl.'s Mot., 20. Third, Bisous Bisous has submitted screenshots of at least two social-media posts by Bisou Dallas patrons who, using the social-media sites' geographical tag function, "tagged" photos of themselves as located at Bisous Bisous when in fact the photos reflect that they were at Bisou Dallas. Doc. 13-21, Pl.'s App., 428–30. Finally, Chef Meyer describes the following two instances: (1) "on June 9, 2021, one individual mistakenly showed up at Bisous

-18-

Bisous for an interview when, on information and belief he was seeking to interview at Bisou [Dallas]"; and (2) "[o]ne week prior to the opening of Bisou Dallas, a carrier mistakenly delivered a large set of supplies[, addressed to "Bisou Uptown"] and intended for Bisou Dallas[,] to Bisous Bisous." Doc. 13-1, Pl.'s App., 16.

Bisous Bisous has clearly demonstrated actual confusion between it and Bisou Dallas. And this confusion is not simply a "fleeting mix-up of names[.]" *Viacom*, 891 F.3d at 197 (citations omitted). Indeed, the influx of one-star reviews Bisous Bisous experienced following the Bisou Dallas opening cannot likely be described as "fleeting"; it occurred over the course of a 24-hour period, and misdirected reviews came from numerous people. They also likely impacted purchases from Bisous Bisous, as a number of the negative reviews on Bisous Bisous's Google page were marked as "helpful" by Google users, indicating visitors to Bisous Bisous's Google page viewed the negative reviews and found them helpful in making a purchasing decision. Doc. 13-19, Pl.'s App., 411–12, 415–17, 420. Further, any doubts about whether the confusion is "fleeting" or enduring are dispelled by the fact that misdirected phone calls continue to occur.

Cle raises three arguments in its briefing to rebut Bisous Bisous's mounting evidence of actual confusion. First, Cle relies on Ms. Sanchez's TikToks in arguing that "almost all of the claims of 'actual confusion' that [Bisous Bisous] raises . . . can be attributed to a disgruntled employee" and her internet following, rather than to actual patrons of Bisou Dallas. Doc. 21, Cle's Resp., 17. In support of this argument, Cle points out that some of the negative reviews brought on by the Second TikTok were posted before Bisou Dallas even opened its doors. *Id.* Thus, according to Cle, the internet reviews "do not constitute evidence of 'actual confusion[.]'" *Id.* Second, Cle argues that the interview applicant and the parcel carrier were not consumers. *Id.* at 18. Third, Cle acknowledges "that misdirected phone calls may constitute some evidence of actual confusion,"

but it argues that because the evidence of these phone calls is not testimony of actual consumers, it is hearsay and should not be considered. *Id.* at 19 (quotation marks omitted). The Court addresses each of these arguments in turn below. None are persuasive.

First, the Court acknowledges the fact that Ms. Sanchez's Second TikTok may have instigated *some* of Bisous Bisous's misdirected reviews, but it does not accept that the Second TikTok resulted in *all* the misdirected reviews. The Court moreover rejects Cle's argument that the misdirected internet reviews occurred before Bisou Dallas opened its doors on July 7, 2021, because this is inaccurate. Bisous Bisous's screenshots evidencing the misdirected Google reviews were taken on July 8, 2021. *See* Doc. 13-19, Pl.'s App., 409 (timestamp on top right of page). The screenshots displaying the misdirected reviews demonstrate that the earliest review was posted "a day ago" (from July 8, 2021), *id.* at 420, and the most recent was posted "two hours ago" (from July 8, 2021). *Id.* at 409. This means that the reviews began on July 7, 2021—the day Bisou Dallas opened *and began serving customers*—and continued the following day.[5]

The Court also rejects Cle's general contention that the Second TikTok caused all Bisous Bisous's misdirected reviews. Admittedly, some of Bisous Bisous's reviews posted on July 7 and July 8 appear to be retaliatory and motivated by the Second TikTok. *E.g.*, *id.* at 414 (stating that "the manager made a pass" at the reviewer, so the reviewer spit in his water bottle and then "hid in the bushes" to watch him drink it); *id.* at 417 (stating that the reviewer's dog ran away because of the

---

[5] Bisous Bisous offers screenshots of many Google reviews and three Yelp reviews. Doc. 13-19, Pl.'s App., 409–21. The Court notes that one of the three Yelp reviews was posted the day before Bisou Dallas opened—on July 6, 2021—and all three appear to have been posted from outside the state of Texas. *Id.* at 421. This tends to support Cle's argument that many of the misdirected reviews were not from customers but from Ms. Sanchez's TikTok followers. However, as explained below, there are many Google reviews that appear legitimate, and the Court credits those. Thus, the Court need not rely on Bisous Bisous's Yelp reviews at all.

business); *id.* at 418 (stating that reviewer was served "pulverized cockroaches" and was told it was "artisanal honey"); *id.* at 419 (stating that "the manager body slammed" the reviewer); *id.* at 411 ("guys this isn't the place the girl on tiktok was talking about"). But many more of the negative reviews are simply one-star reviews without comment or with comments that appear legitimate, reflective of a customer's actual experience at Bisou Dallas. *E.g.*, *id.* 409 ("their food is way overpriced and it's not even good. it was a waste of my time"); *id.* at 411 ("horrible experience, service was slow and the food was mediocre at best."); *id.* at 412 (reflecting three one-star reviews without comment and another with the comment "DO NOT COME HERE!!! Just such a disgusting place"); *id.* at 413 (reflecting four one-star reviews without comment); *id.* at 415 (reflecting three one-star reviews without comment); *id.* at 417 (reflecting two one-star reviews without comment and another with the comment "Very rude service would not go back ever again. Do not recommend.").[6]

Given that more of the negative reviews on Bisous Bisous's Google page appear to reflect actual Bisou Dallas customers' true experiences at Bisou Dallas than appear to be motivated by Ms. Sanchez's Second TikTok, the Court assumes that at least some of the misdirected negative reviews *were* instances of confused consumers.

Second, the Court does not reject the confusion of the interview applicant and the parcel carrier wholesale. As this Court has held before, non-consumer confusion can be given some slight, "discount[ed]" weight. *See Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*, 397 F. Supp. 3d 847, 867 (N.D. Tex. 2019) (Boyle, J.) (citing *Healix Infusion Therapy, Inc. v. Healix, Inc.*, 2018 WL 1801149,

---

[6] The Court acknowledges that Cle has lodged hearsay objections to Bisous Bisous's evidence of misdirected internet reviews, but this hearsay objection is summarily overruled. Doc. 24, Obj., 4. Bisous Bisous offers these internet reviews for the same reason that Cle offers the TikToks—to simply established that they happened, not to establish the truth of the matters asserted in them.

at *18–19 (S.D. Tex. Apr. 16, 2018)). Thus, the Court considers the confusion of the interview applicant and the parcel carrier as weighing slightly in favor of Bisous Bisous.

Finally, the Court overrules Cle's argument based on the admissibility of Chef Meyer's statements about the misdirected phone calls. As stated above, Cle argues that because Bisous Bisous's evidence of misdirected phone calls is in Chef Meyer's declaration and not actual consumer testimony, it is hearsay. Doc. 21, Cle's Resp., 19. It is not hearsay because the phone calls are not being offered for the truth of the matters asserted in the phone calls, but instead for the fact that they *happened*. It matters not what the customers said or asked in their phone calls; it only matters that the customers called Bisous Bisous, intending to reach Bisou Dallas. The testimony is therefore not hearsay.[7]

At the August 11 hearing, Cle raised the additional argument that this factor is only met when consumers are actually confused between a plaintiff's and a defendant's products. Cle posited at the hearing that no consumer would be confused between a pastry (from Bisous Bisous) and a steak (from Bisou Dallas), for example. Cle pointed the Court to various cases noting that, to be infringing, a mark must create confusion as to the source of products. *E.g.*, *Checkpoint Sys. Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 279–80 (3d Cir. 2001); *Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 881 (N.D. Ill. 1999), *opinion clarified*, 1999 WL 1186802 (N.D. Ill. Dec. 9, 1999). The Court finds that evidence of confusion for purposes of this factor does not need to be as specific as Cle states. *See Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1160 (5th Cir. 1982) (finding evidence of misdirected phone calls "at least once a

---

[7] In any event, the evidentiary standard at this stage in the proceedings is "less rigorous" than at trial. *ADT, LLC v. Cap. Connect, Inc.*, 145 F. Supp. 3d 671, 687 n.15 (N.D. Tex. 2015) (considering "news reports [that] contain[ed] hearsay" "to support [a] finding that [the plaintiff had] proven actual confusion" for purposes of a preliminary injunction in a trademark case).

month" and of confusion of an employee's friends sufficient under this factor). Nonetheless, Bisous Bisous *has* established confusion as to the source of products and services at issue. The misdirected Google reviews demonstrate that at least some consumers received products and services from Bisou Dallas and later—when writing their reviews—mistook those products and services as having come from Bisous Bisous. *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 706–07 (S.D. Tex. 2009) (noting that "post-sale confusion" "is relevant to a determination of a likelihood of confusion" (quoting *Elvis Presley Enters.*, 141 F.3d at 204)).

In sum, Bisous Bisous has demonstrated actual confusion, and Cle's attempts to cast doubt on the actual confusion are unavailing. The Court finds this factor favors Bisous Bisous.

### viii.   *Degree of Care Exercised by Potential Purchasers*

This factor favors Bisous Bisous. "[T]he greater the care potential purchasers exercise, the less likely it is they will confuse a junior mark user's products or services with the senior mark user's products or services." *Springboards to Educ.*, 912 F.3d at 817 (citation omitted). "Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Streamline*, 851 F.3d at 458 (citation omitted).

Bisous Bisous's menu includes sweets ranging in price from $2.00 for a tart or $4.00 for a croissant, to $45.00 for a cake or macaron platter. Doc. 13-3, Pl.'s App., 32, 34, 36, 39. Bisou Dallas's menu includes food items ranging in price from $7.00 for an appetizer or a salad, to $29.00 for pasta, to $59.00 for a prime ribeye, to $240.00 for a "double" "tomahawk ribeye alla florentina[.]" Doc. 22-24, Cle's App., 67. Neither eatery serves items that are of such "a 'big ticket'" that purchasers "are likely to exercise great care" in selecting them. *RE/MAX Int'l*, 655 F. Supp. 2d at 707. Rather, consumers likely *do not* exercise great care in selecting food items. *See id.* (collecting

cases noting that things like "rice" or "t-shirts" are of such a price that consumers are not likely to exercise great care but "carpeting" is).

Cle emphasizes that its items are pricey while Bisous Bisous serves items that are priced as low as $2.00. Doc. 21, Def.'s Resp., 19 (describing a Bisou Dallas entrée that costs $18.00). But Bisou Dallas's food is not so expensive that consumers would apply extra scrutiny in selecting it.

In sum, the Court finds that this factor favors Bisous Bisous because the two eateries' items are not so expensive that consumers are likely to exercise a high degree of care in selecting them. And overall, because Bisous Bisous has demonstrated a protectable interest in its marks, and it has demonstrated a likelihood of confusion under the confusion factors based on Bisou Dallas's use of the word "bisou" in connection with food and restaurant services, Bisous Bisous has demonstrated a substantial likelihood of success on the merits of its three trademark claims.

B.     *Irreparable Injury*

The Court finds that Bisous Bisous has demonstrated irreparable injury such that a preliminary injunction is warranted. "[A]n injury is irreparable only if it cannot be undone through monetary remedies[.]" *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472–73 (5th Cir. 1985) (citations omitted). Threat of irreparable injury is present in a trademark case when a plaintiff has lost control of the quality of goods and services being associated with its mark. *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008); *see also Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." (citation omitted)).

Bisous Bisous first contends that, while this has been an open question in the past, Congress recently clarified by amendment to the Lanham Act that when a trademark plaintiff has established likelihood of success on the merits, irreparable injury is presumed. Doc. 12, Pl.'s Mot., 21. Indeed,

as of December 27, 2020, the Lanham Act provides: "A plaintiff seeking any . . . injunction [under § 1125(a), (c), or (d)] shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits . . . in the case of a motion for a preliminary injunction or a temporary restraining order." 15 U.S.C. § 1116(a); *see also Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*, 2021 WL 472915, at *12 (D. Or. Feb. 9, 2021) (applying this newly codified presumption). Neither the Fifth Circuit, nor, until now, any district court within the Fifth Circuit, has applied a rebuttable presumption under this statutory language. At the hearing, this Court found that Bisous Bisous is entitled to this statutory presumption, and that finding remains unchanged. But even absent the statutory presumption, Bisous Bisous has demonstrated a threat of irreparable injury.

Indeed, according to Bisous Bisous, "even if there was no statutory presumption," that "[h]ighly negative, misdirected reviews . . . impacted [its] Google rating in just 48 hours" establishes irreparable injury, and the Court agrees. Doc. 12, Pl.'s Mot., 22. Chef Meyer testifies that Bisous Bisous "relies on word of mouth promotion and customer reviews posted" online to promote its business. Doc. 13-1, Pl.'s App., 4. And, while Bisous Bisous acknowledges that Google has deleted the misdirected reviews on Bisous Bisous's page, it argues that it "may never know how many customers and sales it lost—and may continue to lose—as a result of the . . . negative reviews" before they were deleted. Doc. 12, Pl.'s Mot., 22–23. In fact, as noted above, many of the misdirected negative reviews were deemed "helpful" by other Google users, indicating that potential Bisous Bisous customers viewed the negative reviews and considered them in deciding whether to visit Bisous Bisous. Doc. 13-19, Pl.'s App., 411–12, 417. The Court finds this sufficient to establish threat of irreparable harm.

Cle argues Bisous Bisous cannot establish irreparable harm because the misdirected negative reviews "ended weeks ago," there is "no evidence that the negative reviews continue," and the "bakery's Google rating is right back to 4.6[.]" Doc. 21, Cle's Resp., 20. It is unclear whether the misdirected negative reviews continue. But even if Bisous Bisous has not received any more misdirected reviews, that does not undermine the loss of control of its reputation and goodwill that Bisous Bisous has likely experienced as a result of Bisou Dallas's conduct. The Court poses the following illustration as an example: Two friends, both Dallas residents, discuss local French eateries. Friend One asks Friend Two, "Have you heard of Bisous Bisous?" Friend Two responds, "That place on McKinney?" Friend One replies, "Yes." Meanwhile, Friend One is referring to Bisous Bisous and Friend Two is referring to Bisou Dallas. Friend Two will now relay any impression Friend Two has of Bisou Dallas, and Friend One will impute that impression to Bisous Bisous. Whether positive or negative, Bisous Bisous, in this scenario, has lost control of its reputation to Bisou Dallas. And on this record, the Court finds this scenario entirely plausible, if not extremely likely. This is irreparable.

Cle also argued at the hearing that Bisous Bisous's irreparable harm is undermined by the fact that Bisous Bisous had notice of Cle's intentions to open Bisou Dallas months before it filed the pending motion. Cle points to the demand letter Bisous Bisous sent in January 2021. Doc. 22-27, Cle's App., 79–81. Cle posits that Bisous Bisous should have filed this motion then. But as the Court stated at the hearing, any injury would have been too speculative in January, and the Court would not have provided Bisous Bisous relief at that time.

Given that Bisou Dallas's use of the word "bisou" in connection with its restaurant and food likely infringes Bisous Bisous's word marks, and given that Bisous Bisous has no control over the

quality of Bisou Dallas's offerings,[8] Bisous Bisous has established irreparable harm such that a preliminary injunction is warranted.

C.     *Balance of the Harms*

The balance of the harms favors issuing a preliminary injunction. "Although defendants will suffer some amount of harm if a preliminary injunction is issued, courts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants." *Ramada Franchise Sys., Inc. v. Jacobcart, Inc.*, 2001 WL 540213, at *3 (N.D. Tex. May 17, 2001) (citation omitted). Here, Bisous Bisous has established likelihood of success on the merits of its trademark claims and a finding that it has established a threat of irreparable injury. As a result, the Court finds that the balance of the harms favors a preliminary injunction. *See Fletcher's*, 434 F. Supp. 3d at 496 (noting that defendants would "incur costs associated with ceasing to use the . . . marks" at issue, but holding the plaintiff's "burden of losing control of its mark, the loss of customers, and the harm to [the plaintiff's] reputation and goodwill are greater than the costs to Defendants, who ha[d] failed to identify any cost to them not created by their own likely infringing activities").

Cle offers no concrete hardship it will suffer if Bisous Bisous is afforded injunctive relief— Cle only argues that the requested relief is overreaching. Doc. 21, Cle's Resp., 22. According to

---

[8] Bisous Bisous emphasizes Bisou *Houston*'s negative reputation to support its contention that Bisous Bisous's reputation may be tarnished if it is erroneously associated with Bisou *Dallas*. *See generally* Doc. 13-13, Pl.'s App., 213–331 (Bisou Houston's Yelp reviews); Doc. 13-14, Pl.'s App., 332–39 (Bisou Houston's TripAdvisor reviews); Doc. 13-15, Pl.'s App., 340–53 (Bisou Houston's Google reviews); Doc. 13-16, Pl.'s App., 354–74 (Houston Culture Map article describing Bisou Houston as "controversial"). The Court will not impute Bisou Houston's reputation to Bisou Dallas. In any event, Bisou Dallas's reputation does not matter—Bisous Bisous has lost control of its reputation and goodwill to Bisou Dallas, even if Bisou Dallas's reputation is good. *See Joy Mfg. Co .v CGM Valve & Gauge Co.*, 730 F. Supp. 1387, 1394 (S.D. Tex. 1989) ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm, regardless of the actual quality of the defendant's goods.").

Cle, it is "clear" from Bisous Bisous's filings "that the bakery is not simply trying to protect [itself, but it is] trying to completely shut down" Bisou Dallas. *Id.* The Court rejects this argument, as Cle offers no support for its position that Bisous Bisous's requested relief would "shut down" Bisou Dallas. The Court also notes that Cle had notice that its conduct may be infringing *before* it opened Bisou Dallas. In any event, by this Order, the Court will enter a limited preliminary injunction— no broader than necessary to alleviate the harm that Bisous Bisous is suffering.

D.     *The Public Interest*

Entering a preliminary injunction serves the public interest. "The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Sparrow Barns & Events, L.L.C. v. Ruth Farm Inc.*, 2019 WL 1560442, at *10 (E.D. Tex. Apr. 10, 2019) (citing *T-Mobile US, Inc. v. AIO Wireless L.L.C.*, 991 F. Supp. 2d 888, 929 (S.D. Tex. 2014)); *see also Paulsson*, 529 F.3d at 313 (finding that enjoining an infringing user serves the public interest). Because Bisous Bisous has demonstrated likelihood of success on the merits of its infringement claims, "it has also shown that a preliminary injunction will serve the public interest." *Fletcher's*, 434 F. Supp. 3d at 497.

E.     *Cle's Evidentiary Objections*

Cle raises thirty-four discrete evidentiary objections to Bisous Bisous's appendix materials. *See* Doc. 24, Obj. The Court reviews those objections below.

First, several of Cle's objections are overruled as moot because the evidence is not necessary, and has not been relied on, in considering Bisous's Bisous's motion. Those are:

- Exhibit D, "Screenshots of excerpts of Bisous Bisous'[s] pages on Yelp, Google, and TripAdvisor as of July 15, 2021," which Cle argues are hearsay;

- Exhibits L, M, and N, Screenshots of reviews of Bisou Houston on Yelp, Google, and TripAdvisor, which Cle argues are hearsay;

- Exhibit O, "Compilation of online articles discussing Cle's violations of Covid safety guidelines and expansion of Bisou to Dallas," which Cle argues are hearsay;

- Exhibit Q, "Compilation of screenshots of Bisou Houston's Instagram, Facebook, and website taken on July 13–15, 2021," which Cle argues are hearsay;

- Exhibit S, "Article published by the *Dallas Observer*, 'Just One Kiss: Bisous Bisous Gets 32 One-Star Reviews Intended for New Neighbor,'" which Cle argues is hearsay;

- Meyer Declaration ¶ 20, in which Chef Meyer states that following sending Cle a demand letter, Bisous Bisous was hopeful Cle would cease using the word "bisou," but instead the Bisou restaurants "cop[y] Bisous Bisous by creating a desert sampler [they] call[] Bisou Bisou," and which Cle claims contains legal conclusions; and

- Meyer Declaration ¶¶ 21, 22, 23, 24, 25, and 26 which discuss Bisou Houston's negative reviews and press, and which Cle claims are hearsay.

Next, many of Cle's hearsay objections are overruled on the ground that they are not offered

nor considered for the truth of the matter asserted, but for the fact that they occurred or exist.

Those are:

- Exhibit E, "Collection of online articles about Bisous Bisous'[s] participation in Dallas culinary events";

- Meyer Declaration ¶¶ 11, 12, and 13, in which Chef Meyer discusses the media attention Bisous Bisous has received;

- Exhibit F, "Collection of online articles about Bisous Bisous";

- Exhibit P, "Compilation of screenshots of Bisou Dallas's Instagram, Facebook, and website taken on July 11–15, 2021";

- Exhibit R, "Compilation of screenshots of Yelp and Google reviews on Bisous Bisous'[s] pages directed to Bisou Dallas taken on July 8, 2021"; and

- Meyer Declaration ¶¶ 28, 30, and 31, noting that Bisou Dallas advertised its staff needs on Instagram, noting that Bisou Dallas advertised its opening night on Instagram, and that following the opening, Bisous Bisous received misdirected reviews.

Finally, Cle raises a few non-hearsay objections to certain paragraphs in the Meyer Declaration. Those are:

- Meyer Declaration ¶ 17, in which Chef Meyer describes when she learned of the plans to open Bisou Dallas on McKinney and discusses what the words "bisou" and "bisous" mean in French. Cle claims this paragraph comprises legal conclusions of a lay witness. This objection is overruled because ¶ 17 does not contain a legal conclusion.

- Meyer Declaration ¶ 27, in which Chef Meyer describes how both Bisou restaurants advertise on social media using the name "Bisou." Again, Cle claims this contains legal conclusions and hearsay. This objection is overruled because, first, there is no legal conclusion within the paragraph. Chef Meyer can testify to things she has personally observed on social media. Second, to the extent there are out-of-court statements contained within the paragraph, they are not hearsay because they are not offered for their truth but for the fact that they were made.

- Meyer Declaration ¶ 33, in which Chef Meyer states that she will never know how many customers she lost due to Bisou Dallas's conduct and that "while [she] was concerned about Cle's infringement, [she] never could have imagined just how devastating it actually turned out to be." Cle claims this paragraph contains legal conclusions and lacks foundation. This objection is overruled because, to the extent it contains a legal conclusion (discusses "Cle's infringement"), the Court need not credit it for the purpose of ruling on this motion. Moreover, to the extent Chef Meyer lacks foundation or knowledge of the extent of harm her business has suffered, the Court credits Bisous Bisous's other evidence to infer the harm Bisous Bisous has suffered.

- Meyer Declaration ¶ 36, in which Chef Meyer discusses the misdirected phone calls her bakery received. Cle claims this paragraph lacks foundation. This objection is overruled. Chef Meyer owns the bakery. She does not lack foundation to testify as to phone calls her bakery receives.

## IV.

## CONCLUSION

For the above reasons, Bisous Bisous's Application for a Temporary Restraining Order and Motion for a Preliminary Injunction (Doc. 12) is **GRANTED** in part. The Court issues the following preliminary injunction: Cle, Bisou Uptown, and anyone acting in concert with them, are

**PRELIMINARILY ENJOINED** from using the term "Bisou" in association with restaurant services and food and/or beverage products, including advertising for the same, in Dallas, Texas.

At the hearing, Cle asked the Court to order Bisous Bisous to post a bond in light of this ruling. Cle's request is **DENIED WITHOUT PREJUDICE** to seeking this relief by formal motion.

SO ORDERED.

SIGNED: August 16, 2021.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE