## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **BISOUS BISOUS LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **C.A. No. 3:21-cv-01614-B** |
| **v.** | § | |
| | § | **Jury Trial Demanded** |
| **THE CLE GROUP, LLC,** *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

---

## DEFENDANTS' RESPONSE TO MOTION FOR ORDER TO SHOW CAUSE

Defendants The CLE Group, LLC and Bisou Uptown Manager, LLC file their Response in opposition to Plaintiff Bisous Bisous LLC's (hereinafter "Plaintiff" or "the Bakery") Motion for Order to Show Cause, Doc. 54.

## I.    INTRODUCTION

Plaintiff is suing Defendants for over a million dollars based on Defendants' actions during less than a 2-month period.[1]  Moreover, the Bakery is doing its utmost to manufacture an ultimate court finding of exceptional case status[2] in the hopes of recouping the several hundreds of thousands of dollars in attorneys' fees that Plaintiff claims it has already incurred in this litigation. The instant motion is just another step towards obtaining that "Holy Grail" of trademark law.  The Court should not condone such gamesmanship.

---

[1] This is equivalent to more than a year's worth of gross revenue for the bakery for a damages' period that covers approximately six weeks.  *See* Doc. 13-1 ¶ 16 at 7 ("In just 2019-2020, BISOUS BISOUS' revenue neared Two Million Dollars.")

[2] *See* Doc. 26 ¶ L at 32 (seeking "the Court declare this an exceptional case in light of Defendants' knowing and willful infringement of the BISOUS Marks"); *Alliance for Good Gov't v. Coalition for Better Gov't*, 998 F.3d 661, 666 (5th Cir. 2021) (explaining "Lanham Act's fee-shifting provision" for prevailing party predicated on finding "a case exceptional").

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE       PAGE 1**

II.     **THE BAKERY'S RACE TO THE COURTHOUSE TO BEAT THE EXCEPTIONAL CASE DRUM**

On August 27, 2021, Defendants filed their Motion for Bond.  *See generally* Doc. 52.  It details the fact that an owner and manager of the Dallas-based restaurant  that is the subject of this litigation and others "spent more than an entire workweek following this Court's August 11 ruling 'making telephone calls, meeting with vendors and other individuals, and conducting independent research trying to determine how to make all the changes necessitated by the Court's ruling, including obtaining both cost and timing estimates for certain changes to existing advertisements, restaurant material, which may include but not necessarily be limited to food menus, drink menus, plates, napkins, business cards, table placards, uniforms, and sundry other restaurant accessories.'" (Doc. 52 at 4) (quoting Truesdell Decl. ¶ 7 at 2).  It also listed the detailed results of those efforts and provided a timeline that indicated that most of the necessary changes required by this Court's August 16-Order were "estimated to be completed by September 1, 2021."  Doc. 53 ¶¶ 9-19 at 2-3; *see generally id.*

Of course, if Defendants instituted nearly all the necessary changes within less than a week of their Motion for Bond, the Bakery's claim for exceptional-case status would be severely diminished.  Consequently, at 11:50 p.m. on that same Friday, August 27, the Bakery filed the instant Motion to Show Cause.  In so doing, it failed to meet the literal requirements of Local Rule 7.1 and, instead, represented to this Court that based on Defendants' alleged "failure to adequately address their non-compliance . . . [the Bakery] understands that Defendants oppose this motion." (Doc. 54 at 20.)  In addition, the Bakery made false or misleading statements in its "Certificate of Conference," claiming that the Bakery's "counsel identified numerous specific instances of non-compliance and requested a written explanation of what Defendants are doing to address each violation noted in the August 23, 2021 letter," *id.* at 19, but that "[n]o written report was provided."

*Id.* As stated above, Defendants' Motion for Bond included a detailed "written explanation of what Defendants are doing to address each violation noted in the August 23, 2021 letter." *Id.* at 19. In addition, the Bakery goes on to misleadingly represent that "counsel for the parties participated in a telephonic meet and confer on Thursday, August 26, 2021 during which Defendants' counsel [**only**] advised that his clients had started on the 'easier' compliance first." *Id.* at 20. In truth, Defendants' counsel indicated something more along the lines of "my clients started on the easier tasks to come in compliance with the Court's Order, have moved on to some of the more difficult tasks, but rest assured they are 100% committed to fully honoring and adhering to Her Honor's August 16-Order, and their efforts and a timeline will be provided in the Motion for Bond that we will be filing tomorrow." Consequently, the Bakery's representation to this Court that Defendants have failed to "**commit** to adhering to the 8/16 Order," *id.* (emphasis added), is completely, utterly, and irrefutably false. In fact, Mr. Truesdell represented to this Court on behalf of Defendants that the day after this Court ruled from the bench, he committed to determining all the "actual procedures necessary for adhering fully to the Court's ruling," Doc. 53-1 ¶ 5 at 1-2, and "estimate[d] that complete adherence to the Court's ruling will cost the defendants approximately $140,000." *Id.* ¶ 21 at 4. Defendants have spent significant sums already.

Although the Bakery failed to meet and confer as required by the Local Rules about this particular Motion to Show Cause, and made false or misleading statements in its Certificate of Conference—all in its race to the courthouse to beat the exceptional case drum—the Bakery is correct when it states that the defendants "oppose this motion." Doc. 54 at 20.

## III.   THE COURT SHOULD DISREGARD ALL THE BAKERY'S IRRELEVANT EXAMPLES OF ALLEGED VIOLATIONS PRIOR TO AUGUST 17, 2021

Plaintiff's motion clearly and unequivocally seeks "an order to show cause why Defendants should not be held in civil contempt of the Court's **August 16** Memorandum Opinion and Order.

. . ('8/16 Order')." (Doc. 54 at 1) (emphasis added). Yet the Bakery's brief and appendix is replete with examples of alleged violations through Defendants' use of the term "BISOU" before the August 16-Order was even entered. *See id.* at 2 (providing example of advertisements created before the Court ruled from the bench on August 11); *id.* (providing examples of postings "on August 11" with no indication they occurred prior to the Court's ruling from the bench at approximately 4:37 p.m. on August 11, 2021); *id.* (providing examples of three Instagram posts that were put up on August 12 and 13—before the August 16-Order—and were no longer displayed by the time the August 16-Order was entered); *id.* (providing example of advertisement posted on August 14 before entry of August 16-Order); *id.* (providing example of "promotional post" and claiming it was put up "just *hours **after*** the Order was issued on August 16 but conspicuously missing any timestamp to substantiate the claim); *see* Doc. 55-1 ¶ 4 at 2, App. 7 (authenticating screenshot taken on August 16, but purposefully failing to identify when screenshot was taken).

Because the Bakery's motion is admittedly limited to its "requests that the Court order Defendants to show cause why the Court should not hold them in contempt of the 8/16 Order," Doc. 54 at 20, the Court should disregard—at a minimum—any actions taken or actions not taken by Defendants prior to the entry of the Court's August 16-Order in alleged violation thereof.[3]

## IV.    THE CASES CITED BY THE BAKERY ARE EASILY DISTINGUISHABLE

### A.    The Alleged Violations Here Are Not Akin to Those in *Mary Kay*

In support of its initial request for $39,500 in attorneys' fees and costs, which Plaintiff's counsel "intends to update . . . at the hearing on this motion," *id.* at 19, the Bakery relies on *Mary Kay Inc. v. Designs by Deanna, Inc.*, No. 3:00-CV-1058, 2013 WL 6246484 (N.D. Tex. Dec. 3,

---

[3] Defendants contend, contrary to the Bakery's position that although the Court's August 16-Order did not provide a date by which Defendants had to complete its full compliance with the Court's order, a reasonable time frame was inherent in the Court's order. This is especially true in the instant case where the Court ordered Defendants to take affirmative action, which "is an extraordinary remedy and is generally disfavored." *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).

2013). That case is nothing like the instant case. In *Mary Kay*, Plaintiff filed a lawsuit against the defendants on May 19, 2000 for infringing its trademark when they "produced clothing and other items that wrongfully infringed on the MARY KAY Marks and Pink Trade Dress and sold the infringing items in areas near the sites of Mary Kay's annual conferences." *Id.* at \*2. Thereafter, the parties entered into a settlement agreement and agreed permanent injunction. *Id.* **Thirteen years later**, Plaintiff learned the defendants' were, contrary to the settlement agreement and agreed injunction, still "selling products and merchandise bearing the MARY KAY Marks, Pink Trade Dress, and other marks owned and used by Plaintiff." *Id.* at \*3. This time, "at or near Plaintiff's 2013 Leadership Conference . . . and over the internet." *Id.* Defendants "failed to appear, answer, or otherwise defend the 2013 Lawsuit." *Id.* Defendant later "conceded that she sold products and merchandise bearing the MARY KAY Marks and Pink Trade Dress at or near Plaintiff's 2013 Leadership Conference and that she offered similar products for sale over the internet." *Id.* at \*4.

Based upon such flagrant and egregious conduct, which spanned several months in 2013, and resulted in unknown revenue to Defendants,[4] the Court assessed "a compensatory fine in the sum of $5,000," *id.* at \*1, and awarded attorneys' fees of $48,250. *Id.* Here, the alleged violations are not akin to selling unauthorized merchandise over the internet or at plaintiff's own conference center for months but, instead, amount to not having the term "BISOU" completely stricken or removed from every conceivable use within hours of the Court's Order, including an isolated incident—if true—of a "valet attendant . . . saying 'Welcome to Bisou.'"[5] (Doc. 55-16 ¶ 5 at 1, App. 107.)

---

[4] As of the date of this filing, the Dallas-based restaurant has not only **not** made a profit, its sales have decreased by approximately 50%.

[5] Oddly, Mr. Peterson, a trained and experienced professional private investigator, did not think to note the alleged valet's name tag so that Defendants or the Court could know who supposedly welcomed him to the Dallas-based restaurant by exclaiming "Welcome to Bisou." Nor did Mr. Peterson note the name of the waiter who allegedly

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE     PAGE 5**

**B.      No One Has Been Refusing to Honor the Court's Order As in *Chao***

Plaintiff pushes the envelope even further by relying on *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725 (5th Cir. 2002) in the Bakery's attempt to get awarded upwards of $50,000 in anticipated "updated" attorneys' fees and costs for Defendants' inability to completely adhere to this Court's August 16-Order within hours—or at most days—after its issuance.   In *Chao*, inspectors for the Occupational Safety and Health Administration ("OSHA") showed up at a shipyard to inspect various vessels, including the defendant's.   However, "when the inspectors began to inspect the area where [one vessel] was in dry dock, the vessel's owner, [Defendant], refused to authorize OSHA personnel to board its vessel." *Id.* at 727.   This initial standoff lasted about two months, during which time the court granted a warrant to inspect the vessel. *Id.* Nevertheless, when "OSHA inspectors sought to execute the warrant . . . [Defendant] refused to honor the warrant." *Id.*   This second standoff lasted **<u>over a year</u>** until "the district court issued an order finding [Defendant] in civil contempt and . . . [sought] documentation supporting an award of attorneys fees and costs." *Id.*   The case is easily distinguishable.

First, none of the defendants in the instant case, nor anyone in concert with them, is refusing to honor the Court's August 16-Order.   Mr. Truesdell, who is an owner of each Defendant and works at the Dallas-based restaurant, makes this clear in his sworn declaration.   He states:   "On the day the Court granted Plaintiff's Motion for Preliminary Injunction from the bench on August 11, 2021, Defendants committed 100% to making all changes necessary to fully comply with the Court's ruling."   Ex. 1, Truesdell Decl. ¶ 5 at 1; *see generally id.*   He testifies, moreover, that "Defendants have devoted substantial time, money, and manpower to determine and institute the

---

greeted him and engaged in a lengthy conversation about how "the restaurant had been open for 'a few weeks' and that their nightclub upstairs was having its grand opening . . . [and] that 'Bisou' was part of 'the Cle Group' and that they had another location in Houston."  (Doc. 55-16 ¶¶ 7-8 at 1, App. 107.)

actual procedures necessary for adhering fully to the Court's ruling, which prohibits the defendants from using the word 'bisou' in association with restaurant services, including advertising for the same in Dallas." *Id.* ¶ 6 at 2.  Consequently, Defendants are wholeheartedly honoring the Court's August 16-Order.

Second, any delay by Defendants in being able to fully honor the Court's August 16-Order is not remotely analogous to the nearly two-year delay that occurred in *Chao*.  In addition, and contrary to the facts in *Chao,* almost all of Defendants' delay was the result of third parties indicating that they could not institute the changes required by the August 16-Order immediately after its issuance.  For example, Aria Signs & Designs indicated it could not remove the Dallas-based restaurant's signage before August 30, 2021.  *Id.* ¶ 8; *see* Attach. A, App. 2 – App. 3.  Similarly, Wes Walz Media indicated that it could not redesign the restaurant's website before September 1, 2021.  Doc. 53-1 ¶ 12 at 3.  And "the law firm of Monshaugen & Van Huff, P.C. . . . indicates . . . changing all names that use the word 'bisou' and applying for a new trademark that does not use the word 'bisou' . . . [cannot] be completed [before] October 5, 2021." *Id.* ¶¶ 13-14 at 3.  Other vendors—for COVID-related reasons or simply scheduling conflicts—also indicated that September 1, 2021 was the date by which they could make the requested and required changes. *See id.* ¶¶ 15-19 at 3.

Consequently, Defendants are not refusing to honor the Court's August 16-Order but, instead, have instituted almost all the changes required by it in a reasonable and timely manner, and will fully comply with the order as expeditiously as possible.

## V.     THERE HAS BEEN SUBSTANTIAL COMPLIANCE WITH THE 8/16-ORDER

The Bakery acknowledges that contempt is not warranted simply because there has not been full, complete, and absolute literal compliance with every aspect of the Court's August 16-Order by the time the Bakery filed its motion on August 27, 2021.  In fact, it admits that neither

sanctions nor a finding of contempt is justified if Defendants make a showing of "substantial compliance with the court order or a present inability to comply."  (Doc. 54 at 14) (citations omitted).  Based on Mr. Truesdell's declarations dated August 26, 2021 and September 9, 2021, Defendants have made such a showing.

Although the Bakery's motion is awash with pejorative and inaccurate claims that Defendants "have dragged their feet," *id.* at 1, made only "superficial changes," *id.* at 2, or "surface-level changes," *id.* at 7, and that many of the alleged violations "would take minutes to correct," *id.* at 16, that is not accurate,[6] nor do "Defendants' actions 'reflect only a casual effort to comply' with the preliminary injunction."  *Id.* at 17-18 (quoting *Mendoza v. Regis Corp.*, No. SA01CA0937FB(NN), 2005 WL 1950118, at *4 (W.D. Tex. Aug. 11, 2005)).

As Mr. Truesdell testified on August 26, 2021, the very day after the Court ruled from the bench that Plaintiff's motion for a preliminary injunction was granted, he "began researching the costs, timing, manpower, logistics, availability of vendors during the COVID pandemic, and the actual procedures necessary for adhering fully to the Court's ruling." (Doc. 53-1 ¶ 5 at 1-2.) Although the Bakery appears to suggest that he or someone in his stead should have immediately begun to remove each "large sign on the building that read 'BISOU CONTINENTAL CUISINE'" to ensure there was no reference to "bisou" on the "mix-use retail and residential condominium building," (Doc. 55-16 ¶ 5 at 1), that is not a quick or easy task.  In fact, Mr. Truesdell testified that "[v]arious vendors with whom [he] spoke raised the spike in COVID cases as a reason for either their reluctance to perform the work immediately or the reason for delay in performing the work ultimately." (Doc. 53-1 ¶ 6 at 2.) With particular respect to signage, he testified that the

---

[6] The Bakery's contention that these changes could be completed "in minutes" is based purely on attorney argument and is not supported by any testimony from professionals or non-professionals in the various fields in which the changes are required.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE      PAGE 8**

company that installed the sign indicated that it could not or would not get someone out to the restaurant to remove the sign before September 1, 2021.  *Id.* ¶ 10.  He testified further that based on the approximately 45 hours that he and his team spent from August 12 to August 20 "making telephone calls, meeting with vendors and other individuals, and conducting independent research trying to determine how to make all the changes necessitated by the Court's ruling," *id.* ¶ 7, he concluded that all the changes required by the Court's ruling—except the ones that had to be done by a law firm—could be "completed by September 1, 2021."  *See id.* ¶¶ 10, 12, 16 & 19.

Now, of course, just because Mr. Truesdell represented on August 26 that **all** the changes required by the Court's August 16-Order, including **all** the changes and more that Plaintiff's counsel identified in its August 23, 2021 correspondence, were "estimated to be **completed** by September 1, 2021," *id.* ¶ 19 (emphasis added), that does not mean that none were started before September 1, 2021.  In fact, Mr. Truesdell testified that a substantial number of changes were accomplished within days of the issuance of the August 16-Order.  *See* Ex. 1, Truesdell Decl. ¶ 8 at 2; Attach. A (stating many changes were "[c]ompleted by Cle Group Managers:  Joshua Hume and Angela Burns on or about August 19, 2021 . . . . For example Napkins, Floor matts, Menus, Business Cards, Dinnerware/Tableware, Party Favors, Decorations, Remove pictures . . . Remove Bisou's logo . . . Remove logo from TV screens").  As of the date of this filing, Mr. Truesdell testifies that he estimates that "at least 90% of all the necessary changes have occurred to ensure that Defendants are in full compliance with this Court's August 16-Order."  *Id.* ¶ 11 at 3.

Defendants' compliance is in stark contrast with *Mendoza* with which Plaintiff equates their actions and labels them as "only a casual effort to comply." (Doc. 54 at 17-18.)  In *Mendoza*, the defendant made virtually no effort to comply with the court's order or even inform its employees of the order for three years.  The court summarized the conduct there as follows:

At the time **the injunction was issued in April of 2002**, the Regis employee responsible for telephone directory listings was Stacy Berndt. In her deposition testimony, Ms. Berndt acknowledged that no one at Regis had ever informed her of the existence of the injunction. It appears from the record that of the Regis employees responsible for directory listings, **not one was informed of the existence of the injunction prior to July of 2004**. Nor does the record present any evidence that Regis took any action beyond normal procedures to ensure the deletion of the listings in question. Regis has offered no evidence that it ever took the initiative to follow up with TMP or SBC personnel concerning the change requests or to review the directories to ensure that they were in compliance with the injunction. Consequently, **the prohibited listings have continued uninterrupted** in three separate SBC phone directories **for a period of more than three years after the issuance of the injunction**. Taken in totality, **defendants' actions reflect only a casual effort to comply** with the permanent injunction, and do not rise to a level of substantial compliance. Defendants have not made every reasonable effort to comply with the injunction. This evidence compels a finding of civil contempt.

*Mendoza*, 2005 WL 1950118, at *4 (emphasis added) (footnotes omitted).

The question that begs to be answered is what constitutes "substantial compliance"? Various authorities have defined it in various ways. Under any definition, however, Defendants clearly have met the standard. For example, this court has previously embraced the standard that states simply "When . . . the alleged contemnor has made an effort to comply, the court will not find contempt." *Lawfinders Assocs., Inc. v. Legal Research Center, Inc.*, No. 3:98-CV-1766, 1998 WL 872844, at *2 (N.D. Tex. Nov. 30, 1998) (quoting 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2960, at 381–82 (2d ed. 1995)). Clearly, Defendants have made much more than "an effort to comply." Again, according to Mr. Truesdell, Defendants have effected at least 90% of the changes necessary to comply with the Court's August 16-Order.

## VI.    CONCLUSION

For all the above reasons, Defendants respectfully request that the Court deny Plaintiff's Motion in full.

Dated:  September 9, 2021                   Respectfully submitted,

                                            **BUETHER JOE & COUNSELORS, LLC**

                                            By:    */s/ Kenneth P. Kula*
                                                   Eric W. Buether
                                                   State Bar No. 03316880
                                                   Eric.Buether@BJCIPLaw.com
                                                   Christopher M. Joe
                                                   State Bar No. 00787770
                                                   Chris.Joe@BJCIPLaw.com
                                                   Kenneth P. Kula
                                                   State Bar No. 24004749
                                                   Ken.Kula@BJCIPLaw.com

                                                   1700 Pacific Avenue
                                                   Suite 4750
                                                   Dallas, Texas 75201
                                                   Telephone:    (214) 730-5660
                                                   Facsimile:    (972) 707-1248

                                            **ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5.1(d) on this 9th day of September, 2021.

*/s/ Kenneth P. Kula*
Kenneth P. Kula
