IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BISOUS BISOUS LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE CLE GROUP, LLC, <br> BISOU UPTOWN MANAGER, LLC, and <br> JOHN DOES 1–10, <br><br> Defendants. | Case No. 3:21-cv-01614-B |

**BISOUS BISOUS LLC'S OPPOSITION TO DEFENDANTS' MOTION FOR BOND**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND............................................................................................... 2

III. LEGAL STANDARD .......................................................................................................... 4

IV. ARGUMENT........................................................................................................................ 6

   A. No Bond Is Required In Light of the High Likelihood of Success of Bisous Bisous's Claims ................................................................................................................................ 6

   B. Defendants' Request for $140,000 Has No Relation to the Injunctive Relief ................ 7

V. CONCLUSION .................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allied Home Mortg. Corp. v. Donovan*,
    830 F. Supp. 2d 223 (S.D. Tex. 2011) ...............................................................................6

*Capital One Fin. Corp. v. Fountain*,
    No. 4:10-CV-683, 2011 WL 13220697 (E.D. Tex. Feb. 11, 2011) ..........................................4

*Dall. Cowboys Football Club, Ltd. v. Am's Team Props., Inc.*,
    616 F. Supp. 2d 622 (N.D. Tex. 2009) ...............................................................................7

*Dunkin' Donuts Franchised Rests. LLC v. Shrijee Inv., Inc.*,
    No. 08–12836, 2008 WL 5384077 (E.D. Mich. Dec. 23, 2008)............................................4, 6

*Gordon v. City of Houston, Tex.*,
    79 F. Supp. 3d 676 (S.D. Tex. 2015) ...............................................................................4

*Greer's Ranch Café v. Guzman*,
    No. 4:21-cv-00651-O, 2021 WL 2092995 (N.D. Tex. May 18, 2021)......................................6

*IHOP Franchising, LLC v. Tabel*,
    No. 13-2641-KHV-TJJ, 2014 WL 1767199 (D. Kan. Apr. 15, 2014) ......................................4

*Kaepa Inc. v. Achilles Corp.*,
    76 F.3d 624 (5th Cir. 1996) ...............................................................................4

*Petro Franchise Sys. LLC v. All Am. Prop., Inc.*,
    607 F. Supp. 2d 781 (W.D. Tex. 2009)............................................................................5, 7

*Sylvan Learning Inc. v. Learning Solutions, Inc.*,
    No. 1:11–00236–KD–B, 795 F. Supp. 2d 1284 (S.D. Ala. 2011) ..........................................5

*TGI Friday's Inc. v. Great Northwest Restaurants, Inc.*,
    652 F. Supp. 2d 763 (N.D. Tex. 2009) ................................................................5, 7, 12, 13

**Other Authorities**

Fed. R. Civ. P. 65(c) ...............................................................................1, 4

Plaintiff Bisous Bisous, LLC ("Bisous Bisous") submits this response in opposition to Defendants' Motion for Bond.

## I.   INTRODUCTION

In view of the strength of Bisous Bisous's likelihood of success on the merits of its trademark infringement claim, the Court may exercise its discretion to waive the requirement for a security in connection with the preliminary injunction ordered on August 16 (the "Preliminary Injunction"). This is the proper outcome here. To date, there have been at least **109** instances of actual confusion between the parties that are a direct result of Defendants' adoption of BISOU—a name it was forewarned not to use for this precise reason. As Bisous Bisous demonstrated at the Preliminary Injunction hearing through dozens of examples of actual confusion caused by Defendants' unauthorized use of BISOU with similar services offered to overlapping consumers just a mere mile away from its patisserie, Bisous Bisous has already been irreparably harmed. BISOUS BISOUS, what was once a strong brand and source identifier for Plaintiff, has become muddled with the Defendants and weakened as a result.

The security payment provided under Rule 65(c) is intended to reflect the "costs and damages" sustained by a party found to be wrongfully enjoined or restrained. While that outcome appears highly unlikely, as applied here, the payment would be limited to the costs, if any, that Defendants might incur as a result of complying with the Court's Preliminary Injunction—*i.e.*, removing the term "bisou" from their website and social media pages, restaurant materials, and electronic and physical signs at a single restaurant. Defendants, however, seek payment for unnecessary costs of rebranding activities that are beyond the scope of what was required to comply with the Court's August 16 Memorandum and Order (the "8/16 Order"). Through a series of opaque fee proposals, Defendants attempt to sweep in the cost of, among other things, a self-induced website makeover ("$10,000") pitched as a "complete online branding redesign of a

1

website" with new color schemes and a purported "relaunch" of 20+ online channels; *another* "web design" complete with new "creative copy" (i.e., editorial text) on the website and accompanying "impact images," "optimized performance," "cross linking" to news sites, and more including consulting services to discuss the "direction" of the business and the "naming of a hospitality concept," accompanied with "mood boards" and a host of other marketing and branding guidance ("$62,000"); and a corporate name change and new trademark filing(s) ("$20,000"). In essence, Defendants are asking Bisous Bisous to post security not only for taking the infringing mark down, which is the only thing Defendants had to do, but for a complete image makeover, which is inappropriate and far beyond that which is reasonable.

Notably, from what Plaintiff can tell, none of this vendor-required re-branding activity has happened. Defendants use the same website and social media accounts they did before; they merely swapped out BISOU for CLE RESTAURANT or CLE SUPPER CLUB. New outdoor signage for the restaurant, estimated to cost $37,000 and occur by September 1, is not there, which makes sense given that the proposal for this work is dated December 21, *2020* and was for the BISOU signs—not a new sign following the Preliminary Injunction. And what is missing from Defendants' Motion is an estimate for the single change they had to make and did ultimately make—a deletion of BISOU. Given that Defendants are using their same websites and social media accounts, and a name, CLE, that they already owned, making this change was likely free, or close to it. In short, Defendants' estimate of $140,000 is wholly unsupported, irrelevant, and should be denied.

## II.   FACTUAL BACKGROUND

On July 19, 2021, Bisous Bisous sought injunctive relief to enjoin Defendants' infringing use of the confusingly similar mark BISOU with their new, Dallas-based French-inspired

2

restaurant ("BISOU Dallas").[1] The opening of BISOU Dallas on July 7, 2021, in the same neighborhood in Dallas as BISOUS BISOUS, immediately instigated confusion among the parties' shared local consumer base, to the detriment of Bisous Bisous's family-friendly French bakery.[2] Bisous Bisous presented evidence of actual confusion between BISOUS BISOUS and BISOU Dallas, including evidence of dozens of misdirected calls, mistaken visitors, and misdirected social media posts.[3] At a hearing on August 11, 2021 (the "8/11 Hearing"), the Court granted Bisous Bisous's Preliminary Injunction Motion,[4] which was memorialized in the 8/16 Order."[5] The Court found *every* digit of the likelihood of confusion analysis (but for Defendants' intent, which the Court found was neutral), to weigh in Bisous Bisous's favor, taking stock of Bisous Bisous's overwhelming evidence of actual confusion. As a result, the Court issued an injunction in the 8/16 Order, as follows:

> Cle, Bisou Uptown, and anyone acting in concert with them, are **PRELIMINARILY ENJOINED** from using the term "Bisou" in association with restaurant services and food and/or beverage products, including advertising for the same, in Dallas, Texas.[6]

Despite the Court's clear mandate, Defendants continued to use the enjoined BISOU term in advertising on social media and websites and in the operation of its restaurant, including holding a "grand opening" and making *new* posts on social media using the term BISOU. As a result, Bisous Bisous has experienced more actual confusion, including at least twenty-six calls from individuals seeking Bisou, two visits from individuals seeking Bisou, and at least five third-party

---

[1] Bisous Bisous's Application for a Temporary Restraining Order and Motion for a Preliminary Injunction ("Preliminary Injunction Motion") (Dkt. 12).
[2] *See generally id.*
[3] *Id.* at 19-20.
[4] Dkt. 44.
[5] Dkt. 45.
[6] *Id.* at 30-31.

3

social media posts mistakenly tagging BISOUS BISOUS's location tag on Instagram and/or tagging Bisous Bisous's Instagram handle when intended for Bisou.

At the 8/11 Hearing, the Court denied Defendants' request to order Bisous Bisous to post bond. The Court again denied Defendants' request for bond without prejudice in the 8/16 Order. On August 27, 2021, while Bisous Bisous attempted to quell the ongoing confusion through its Motion to Show Cause Why Defendants Should Not be Held in Contempt and for Sanctions,[7] Defendants prepared and submitted the present Motion for Bond.[8]

### III.    LEGAL STANDARD

Federal Rule 65(c) authorizes the issuance of security in connection with a preliminary injunction or temporary restraining order to pay "the costs and damages sustained by a party that is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Courts have broad latitude with respect to the amount of the bond, and may "dispense with security altogether if the grant of an injunction carries no risk of monetary loss to the defendant." *See Kaepa Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).[9] Further, courts have not required any bond when there is a high probability of success on the merits of the plaintiff's claims. *See Dunkin' Donuts Franchised Rests. LLC v. Shrijee Inv., Inc.,* No. 08–12836, 2008 WL 5384077, at *9 (E.D. Mich. Dec. 23, 2008) (the strength of a franchisor's likelihood of success on the merits "obviates any need for a bond."); *IHOP Franchising, LLC v. Tabel*, No. 13-2641-KHV-TJJ, 2014 WL 1767199, at *13 (D. Kan. Apr. 15, 2014) (no bond required when plaintiffs showed a high likelihood of

---

[7] Dkt. 54 (the "Contempt Motion").
[8] Dkt. 52 (the "Motion").
[9] *Gordon v. City of Houston, Tex.,* 79 F. Supp. 3d 676, 695 (S.D. Tex. 2015), *judgment entered*, No. CIV. 14-03146, 2015 WL 1119980 (S.D. Tex. Feb. 2, 2015) (waiving bond requirement when granting plaintiff's request for injunctive relief); *Capital One Fin. Corp. v. Fountain*, No. 4:10-CV-683, 2011 WL 13220697, at *7 (E.D. Tex. Feb. 11, 2011) (same).

success on their trademark infringement claims); *Sylvan Learning Inc. v. Learning Solutions, Inc.*, No. 1:11–00236–KD–B, 795 F. Supp. 2d 1284, 1304 (S.D. Ala. 2011) (same).

Two primary considerations apply to Defendants' request for a bond. The first and "most important" consideration is the plaintiff's likelihood of success on the merits of its request for injunctive relief. When, as here, the plaintiff has established "a strong likelihood of success on the merits," courts have declined to order a bond, as noted above and admitted by Defendants,[10] or have found that a "relatively low bond is sufficient." *TGI Friday's Inc. v. Great Northwest Restaurants, Inc.*, 652 F. Supp. 2d 763, 774 (N.D. Tex. 2009) (reducing defendant's requested bond amount by *100 fold* upon finding plaintiff established a strong likelihood of success on the merits on its infringement claims); *see also Petro Franchise Sys. LLC v. All Am. Prop., Inc.*, 607 F. Supp. 2d 781, 801 (W.D. Tex. 2009) (concluding that a "relatively low bond amount is appropriate" because "Plaintiffs' likelihood of success on the merits is strong").

The second consideration is the strength of the evidence Defendants present in support of the requested amount. Speculative or conclusory allegations of the loss defendants will suffer as a result of a wrongful injunction are insufficient to establish a bond amount. *See TGI Friday's Inc.*, 652 F. Supp. at 774 (rejecting the basis for defendants' requested bond and defendants' estimate that it will cost $500,000 to reopen each restaurant impacted by the preliminary injunction as "not supported by any evidence," and reducing defendants' requested bond amount); *see also Petro Franchise Sys.*, 607 F. Supp. 2d at 801 (granting preliminary injunction ordering defendants to cease use of plaintiff's name and trademarks and setting a low bond where franchisees failed to provide adequate support for the loss they could suffer from the preliminary injunction). As discussed below, neither consideration weighs in favor of granting Defendants' Motion.

---

[10] *See* Mot. at 3.

## IV.   ARGUMENT

### A.   No Bond Is Required In Light of the High Likelihood of Success of Bisous Bisous's Claims

As Defendants acknowledge,[11] a court may elect to require no security at all when issuing a preliminary injunction or a temporary restraining order. *See Greer's Ranch Café v. Guzman*, No. 4:21-cv-00651-O, 2021 WL 2092995, at *8 (N.D. Tex. May 18, 2021) (finding no need for Plaintiffs to post security absent evidence that defendants will suffer financial loss from a TRO); *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 235 (S.D. Tex. 2011) (granting injunctive relief and finding no bond was "necessary"). The strength of a party's likelihood of success on the merits obviates any need for a bond. *Dunkin' Donuts Franchised Rests. LLC*, 2008 WL 5384077, at *9. In contrast to Defendants' claim that there is "ample evidence" to support a bond in the amount of $140,000, the circumstances of this case do not warrant a security at all due to the strength of Bisous Bisous's case.

Following briefing and a hearing on Bisous Bisous's motion for a preliminary injunction, this Court held that Bisous Bisous "demonstrated a substantial likelihood of success on the merits of its three trademark claims."[12] Indeed, ***all*** of the likelihood of confusion factors with the exception of Defendants' intent (which was neutral) weighed in Bisous Bisous's favor.[13] In particular, this Court found that in presenting twenty-six misdirected calls, two misdirected physical visitors, and numerous mistaken social media posts and online reviews, Bisous Bisous "demonstrated actual confusion, and Cle's attempts to cast doubt on the actual confusion are unavailing."[14] Since then, consumers have been confused by Defendants' use of BISOU. As

---

[11] Mot. at 3.
[12] 8/16 Order at 24.
[13] *Id.* at 10–24.
[14] *Id.* at 23.

discussed at the 9/13 hearing on Bisous Bisous's Contempt Motion, Bisous Bisous received a minimum of thirty-nine more misdirected calls, five more mis-tagged or misdirected social media posts, and two more mistaken visitors.[15] This is further evidence of the substantial likelihood of confusion. *See Dall. Cowboys Football Club, Ltd. v. Am's Team Props., Inc.*, 616 F. Supp. 2d 622, 640 (N.D. Tex. 2009) ("Although not necessary to find a likelihood of confusion, the best evidence of likelihood of confusion is provided by evidence of actual confusion.").

### B. Defendants' Request for $140,000 Has No Relation to the Injunctive Relief

Even if the Court finds that a bond is warranted, it should be minimal in light of (1) the strength of Bisous Bisous's evidence of confusion as discussed above, and (2) the irrelevant and speculative nature of Defendants' basis for its outsized request for $140,000. Where a party has demonstrated a likelihood of success on the merits, "less weight" may be given to the "speculative harms the injunction may indirectly cause defendants to suffer." *TGI Friday's Inc.*, 652 F. Supp. 3d at 774; *see also Petro Franchise Sys.*, 607 F. Supp. 2d at 801 (plaintiff's likelihood of success warrants the "resolution of any uncertainties with respect to the proper basis of calculation" to weigh in plaintiff's favor).

Here, the requirements for Defendants to comply with the Order were simple: remove existing uses of, and refrain from further using, the term "Bisou" in association with their Dallas restaurant, including advertising for the same.[16] Yet, Defendants seek costs that far exceed the scope of what they were required to do and what is reasonably necessary to comply with the Court's Order. To illustrate, Defendants submit that they will incur the following costs to comply with the 8/16 Order:

---

[15] *See* Contempt Mot. at 11-13.
[16] 8/16 Order at 24.

7

- $37,000 to create, deliver, and install two LED illuminated signs that do not use the word "bisou," including construction drawing and permit acquisition (the "Sign Costs");[17]

- $10,000 for a "complete online branding redesign" of the current website from "BisouDallas.com to BTXDallas.com," including "colors, templates, back end reconstruction as well as all online channels (20+) to be recreated and relaunched" (the "Website Costs");[18]

- $20,000 in attorneys' fees to change "all names" on file with governmental entities that use the word "bisou" and to apply for a new trademark (the "Attorneys' Fees");[19]

- $62,000 for "a comprehensive recreating, rebranding, redesigning, remarketing, and repackaging" to ensure the word "bisou" is not used, including the cost of: (1) "Naming/Brand Identity/Logo Design," with deliverables such as "naming of hospitality concept," "set brand colors," and a "brand guidelines deck"; (2) "Website Design & Development," with deliverables such as "design website/sections/pages with moder+simple+clean user face . . ." and "CMS[20] for easy updates/changes, SEO built in, . . . optimized performance, cross-linking"; (3) "Graphic Design Package," with deliverables such as a "special events media deck"; and (4) "Digital Marketing Package," with deliverables such as "create digital marketing strategy & planning 60 days," "grow following on Facebook &

---

[17] Declaration of Justin Trusedell (Dkt. 53-1) ("Trusedell Decl.") ¶ 9; App. at 2-3 (Att. A).
[18] Truesdell Decl. ¶ 11; App. at 5 (Att. B).
[19] Truesdell Decl. ¶ 13; App. at 7 (Att. C).
[20] CMS stands for "content management system."

8

Instagram platforms," "create social media content," "create online ad content," and "setup social media channels" (the "Rebranding Costs");[21] and

- $11,000 in an inexplicable "miscellaneous cost" to ensure the word "bisou" is not used in any manner that violates the Court's ruling, including by addressing the concerns outlined in Bisous Bisous's August 23 letter (the "8/23 Letter") and potentially other unidentified uses (the "Miscellaneous Costs").[22]

A review of Defendants' "evidence" of these costs reveal that they encapsulate fees for services far beyond what is required under the 8/16 Order, reflect *duplicative costs*, and are otherwise unreliable estimates that do not support the requested bond amount.

**Sign Costs**: Defendants' Attachment A is an unsigned "proposal" from a sign manufacturer dated December 21, **2020**, outlining the contemplated cost of the creation, delivery, and installation of the *current/prior* (i.e., BISOU) signage—not the cost of removing the BISOU signage as required under the Preliminary Injunction.[23]

**Website Costs**: Defendants' Attachment B is described by Justin Truesdell, an owner of both Defendants, as an "invoice"[24] indicating that it will cost $10,000 for a "*limited* redesign of the current website so that the word 'bisou' is not used."[25] However, the exhibit itself describes the service as a "*[c]omplete* online branding redesign" of BisouDallas.com on a new domain, BTXDallas.com, encompassing new "colors," "templates," and the recreation and relaunch of 20+

---

[21] Truesdell Decl. ¶ 15; App. at 9 (Att. D).
[22] Trusedell Decl. ¶ 18; *see also* Mot. at 4–5.
[23] Truesdell Decl. ¶ 9; App. at 2–3 (Att. A).
[24] Truesdell Decl. ¶ 11. By Defendants' own admission, Attachment B is not a true "invoice" reflecting the terms of payment for services rendered, since Defendants had not yet decided whether to hire the company. Truesdell Decl. ¶ 12 ("*If* Defendants choose to hire Wes Walz Media . . .") (emphasis added).
[25] Truesdell Decl. ¶ 11 (emphasis added).

9

online channels.[26] Nothing in the 8/16 Order compels Defendants to redesign their website or social media accounts, much less with a design featuring new "colors" or "templates" included in Defendants' $10,000 estimate. And, as noted below, these services and costs are duplicated in the Rebranding Costs.

**Attorneys' Fees**: Defendants include in their bond request the cost for their attorneys to "chang[e] their corporate name" and to file "a Trademark for new entity name."[27] Yet, nothing in the 8/16 Order requires—and Bisous Bisous did not even request—these actions. Bisou Uptown Manager, LLC does not need to change its corporate name to cease use of the BISOU mark in association with its restaurant services and advertising. In fact, many restaurants, or more broadly, entities, are owned or operated by a corporate entity whose name is completely different from their public-facing one.[28] Further, Defendants may apply to register a trademark for their new name if they wish, but it has no relation to the Preliminary Injunction and cannot serve as justification for a security.

**Rebranding Costs**: The most expensive category of Defendants' purported costs— "comprehensive" Rebranding Costs—is not only overbroad, but also attempts to collect security for taking the *same* action twice. Similar to Attachment B (Website Costs), Attachment D describes a wide variety of prospective costs for actions that are far beyond Defendants' required compliance. Among a laundry list of services is "Website Design & Development" (costing $20,500 alone) that includes consultation on the "direction, colors, [and] content" of Defendants' website. These overlap with the redesign costs already claimed under the Website Costs.

---

[26] Truesdell Decl. ¶ 11; App. at 5 (Att. B) (emphasis added).
[27] Truesdell Decl. ¶ 13; App. at 7 (Att. C).
[28] As just one example, the national sandwich chain that uses SUBWAY in connection with food/restaurant services and advertising for the same is run by a corporate entity that is named "Doctor's Associates Inc."

10

Defendants cannot inflate the bond amount by claiming costs for the *same services twice*—especially when those costs cover unnecessary services and changes that Defendants appear to have made on their own prior to filing the Motion (e.g., ceasing use of BisouDallas.com). In addition to the overhaul of Defendants' website design, the Rebranding Costs include creative and marketing services with no apparent link to the adherence to the 8/16 Order. For example, services such as creating a "brand guidelines deck," creating *new* social media content, advertisements, comprehensive marketing strategies, and more, overseeing social media management and engagement, and overseeing the placement of ads[29] are not required. In fact, there is no evidence that Defendants even intend to utilize all of these services. All that is required of Defendants is to cease use of "bisou." To the extent they choose to make changes beyond that, those costs are their own and not incurred as a result of the Preliminary Injunction.

**Miscellaneous Costs**: Defendants' inclusion of an additional $11,000 as estimated "miscellaneous costs" should be excluded entirely from the bond amount as wholly speculative. Defendants make no attempt to specify what those costs entail. While Defendants state vaguely that this value "may include some, all, or even other items in addition to those listed in [Bisous Bisous's 8/23 Letter]," they do not explain which items in the letter will incur such costs (or why) or what the "other items in addition to those listed" might be. Most of the changes identified in the 8/23 Letter could have been completed by Defendants without a vendor and at virtually no cost, e.g., ceasing referring to the restaurant as "Bisou" when answering the phone and greeting customers, removing uses of BISOU on its social media accounts and its own website, deleting a BISOU branded menu from Defendants' Google Business Profile, and refraining from using

---

[29] Truesdell Decl. ¶ 13; App. at 9-10 (Att. D).

@bisoudallas.com email addresses to conduct business for the restaurant.[30] Instagram, Facebook, and LinkedIn users can change their own username and "bio" line[31] or "About" pages at no cost. Relatedly, users on Facebook[32] and Instagram[33] may easily edit captions for existing posts, and delete old ones in a matter of minutes, with no effect on follower count, or the number of "likes" a post receives. Furthermore, these changes—and **all** the other changes identified in the 8/23 Letter, including the removal of BISOU from signage and physical items in the restaurant—overlap with services Defendants have already accounted for under the Sign Costs, Website Costs, and Rebranding Costs. Again, Defendants cannot justify its requested bond amount with duplicative costs.

When, as here, Defendants' estimated costs are not explained, let alone supported by credible evidence, their assertion is plainly speculative. *See TGI Friday's, Inc.*, 652 F. Supp. at 774 (rejecting basis for bond when "defendants' estimate that it will cost $500,000 to reopen each restaurant [was] not supported by any evidence.").

Defendants rely on *TGI Friday's Inc. v. Great Northwest Restaurants, Inc.*, a trademark infringement case in which the court ordered defendants to post a bond of $100,000, to support their request for a $140,000 bond. However, that case, which Defendants claim is "analogous," involved a preliminary injunction that prohibited the defendants from using plaintiff/franchisor

---

[30] Truesdell Decl. ¶ 17; App. at 12–13 (Att. E).
[31] *How do I update Instagram profile information like my name, username, and email?*, INSTAGRAM (Sept. 17, 2021), https://help.instagram.com/583107688369069; *How do I change my Facebook Page's name?*, FACEBOOK (Sept. 17, 2021), https://www.facebook.com/help/271607792873806/; *Edit Your Profile*, LINKEDIN (Sept. 17, 2021), https://www.linkedin.com/help/linkedin/answer/5/edit-your-profile?lang=en.
[32] *How to edit a post I've shared on Facebook?*, FACEBOOK (Sept. 17, 2021), https://www.facebook.com/help/462476073850410.
[33] *How do I add, edit, or delete the caption of an existing Instagram post?*, INSTAGRAM (Sept. 17, 2021), https://help.instagram.com/1490745927855762/?helpref=uf_permalink.

12

TGIF's trademarks and service marks at *ten* former franchise locations. *TGI Friday's Inc.*, 652 F. Supp. 3d at 776. In contrast, the Preliminary Injunction here affects Defendants' *one* restaurant that is only a couple of months old. It is hard to believe, and the evidence does not support, that Defendants' efforts to cease use of BISOU with its one restaurant—particularly when many physical items easily are repurposed at Defendants' *other* BISOU restaurant unaffected by the Preliminary Injunction—amount to, or even come close to, the $100,000 bond the court concluded was proper in *TGI Friday's Inc.* for the *ten* restaurants at issue there. 652 F. Supp. 3d at 774.

Despite this factual distinction, the court's reduction of the defendants' requested bond amount by ***100 fold*** in *TGI Friday's Inc.* is instructive here. *Id.* The court rejected the defendants' request for a $10 million bond, which was based on the defendants' estimated cost of reopening each restaurant, as "unwarranted and excessive." *Id.* In doing so, the court noted that the injunction "[did] not order the restaurants to close" and found that the "fairest measure for the security amount is the cost to Defendants of ***removing*** TGIF's marks from their restaurants," along with litigation fees and expenses and the cost of complying with the parties' franchise agreements. *Id.* (emphasis added). Notably, the court did not include the cost of *rebranding* or marketing of a new restaurant name, as Defendants inappropriately seek here.

A similar scope should apply in this case: Defendants cannot tack on the costs of rebranding (or any other service they could conceivably incur while using its new name) because those services were not required under the 8/16 Order. And for the change they were required to make, Defendants submitted **no** reliable or relevant cost estimate.

## V.   CONCLUSION

Defendants' request for $140,000 in security, or any security at all, is unjustified and improper. The Court should deny Defendants' Motion for Bond.

13

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **FISH & RICHARDSON P.C.** |
| Dated: September 17, 2021 | By: /s/ David B. Conrad |
|  | David B. Conrad |
|  | Texas Bar No. 24049042 |
|  | conrad@fr.com |
|  | 1717 Main Street, Suite 5000 |
|  | Dallas, TX 75201 |
|  | Telephone: (214) 747-5070 |
|  | Facsimile: (214) 747-2091 |
|  |  |
|  | Kristen McCallion (*admitted pro hac vice*) |
|  | mccallion@fr.com |
|  | Vivian Cheng (*admitted pro hac vice*) |
|  | cheng@fr.com |
|  | 7 Times Square, 20th Floor |
|  | New York, NY 10036 |
|  | Telephone: (212) 765-5070 |
|  | Facsimile: (212) 258-2291 |
|  |  |
|  | *Attorneys for Plaintiff* |
|  | BISOUS BISOUS LLC |

14

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 17, 2021, a true and correct copy of the foregoing document has been filed with the clerk of court for the U.S. District Court, Northern District of Texas and served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

Dated: September 17, 2021                                         */s/ David B. Conrad*
                                                                                         David B. Conrad