IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BISOUS BISOUS LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE CLE GROUP, LLC, <br> BISOU UPTOWN MANAGER, LLC, and <br> BISOU LP HOLDINGS, LLC, <br><br> Defendants. | Case No. 3:21 CV01614-B |

**SECOND AMENDED COMPLAINT FOR WILLFUL TRADEMARK INFRINGEMENT
AND UNFAIR COMPETITION**

This is an action for willful trademark infringement and unfair competition under the federal Lanham Act and Texas common law.  Bisous Bisous LLC ("Bisous Bisous" or "Plaintiff"), through its attorneys, brings this action to stop the irreparable damage caused by the willful infringement of the BISOUS BISOUS trade name and trademark by The Cle Group, LLC ("CLE"), Bisou Uptown Manager, LLC ("Bisou"), and Bisou LP Holdings, LLC ("Bisou Holdings") (together, CLE, Bisou, and Bisou Holdings are referred to as "Defendants").  Following a hearing on August 11, 2021, during which the Court orally granted in part Bisous Bisous's motion for preliminary injunction, the Court entered an Memorandum Opinion and Order on August 16, 2021 enjoining "Cle, Bisou Uptown, and anyone acting in concert with them . . . from using the term 'Bisou' in association with restaurant services and food and/or beverage products, including advertising for the same, in Dallas, Texas" (Dkt. 45, the "8/16 Order"), Bisous Bisous seeks permanent injunctive relief with respect to both of Defendants' restaurants in Dallas and Houston

2

and all other remedies available under the law. Based upon its own knowledge as to its actions and upon information and belief as to all other persons and events, Bisous Bisous respectfully alleges as follows:

### NATURE OF THIS ACTION

1.      Bisous Bisous (pronounced /bi-zu - bi-zu/), heralded as the "*Best Bakery*" in Dallas by the *Dallas Observer*, has been a mainstay in Dallas for nearly a decade. The BISOUS BISOUS pâtisserie is well known and highly-regarded for serving up macarons, eclairs, and a variety of other sweet treats to dessert-seeking patrons.

2.      Despite Bisous Bisous's long use of BISOUS and prominence in Dallas—or perhaps because of it—Defendants, one of which is a "notorious" hospitality group from Houston that made headlines for flouting Covid restrictions at the height of the pandemic—opened the BISOU restaurant on July 7 and have been actively promoting it.[1] Defendants are well aware of Bisous Bisous and its longstanding rights in BISOUS BISOUS.  Through their counsel they were advised repeatedly that opening a restaurant named BISOU in Dallas would be an infringement of Bisous Bisous's trademark rights. The parties' eateries are located a mere mile away from each other on McKinney Avenue and, until Defendants were required to comply with the preliminary injunction, *both* appeared on Google Maps from a search of "bisous" or bisou":

---

[1] Amy McCarthy, *A Notorious Houston Hospitality Group Has a New Restaurant in the Works for Uptown Dallas - Cle Group made headlines for flouting COVID-19 rules in Houston at the height of the pandemic. Now it's expanding to Dallas*, EATER Dallas, Mar. 25, 2021, available at: https://dallas.eater.com/2021/3/25/22350266/dallas-bisou-restaurant-opening-uptown-cle-group-houston-expansion.



3.     In the short time following the opening of BISOU—two days—negative publicity about the quality of its food, poor service, and mistreatment of employees bombarded the internet. However, all of this negativity was misdirected *at BISOUS BISOUS*, wreaking havoc on this family-run business and immediately and irreparably damaging its hard-earned reputation. See the following examples of misdirected reviews on Google:



4.      In light of Defendants' use of a confusing similar name, there have been additional

occurrences of actual confusion between the parties including a misdirected delivery of thousands

of dollars of supplies to BISOUS BISOUS, a prospective employee of BISOU mistakenly showing

up for his interview at BISOUS BISOUS, and—in just a single day—about a dozen misplaced

calls to BISOUS BISOUS by people seeking reservations at and information about BISOU. Even

after BISOUS BISOUS filed this lawsuit, the media wrote about the misdirected reviews, and the

Court issued the 8/16 Order enjoining Defendants' use of BISOU in association with the Dallas

restaurant, Bisou and Cle continued to use BISOU to promote and operate the Dallas restaurant.

As a result, consumers have mistakenly called BISOUS BISOUS looking for BISOU as recently

as ten days *after* the 8/16 Order. It is likely that Defendants are aware of additional incidents of confusion.

5.      Defendants' use of the confusingly similar name BISOU for overlapping services is willful, in reckless disregard for Bisous Bisous's *incontestable* trademark rights, and is causing irreparable harm to the well-established goodwill and reputation of Bisous Bisous and its BISOUS BISOUS name and mark. As a result, Bisous Bisous has been forced to protect its interests and cease the damage caused by Defendants by seeking relief in this Court.

## PARTIES

6.      Bisous Bisous is a Texas limited liability company with its principal place of business in this District, at 3700 McKinney Avenue, Suite 150, Dallas, Texas 75204.

7.      CLE is a Texas limited liability company with its principal place of business at 6767 Portwest Dr, Ste 120, Houston, TX 77024.

8.      Bisou is a limited liability company with its principal place of business in this District at 2619 McKinney Avenue, Suite 120, Dallas, TX 75204, and a registered office at 1225 North Loop West, Suite 640, Houston, TX 77008.

9.      Bisou Holdings is a limited liability company with its principal place of business at 6767 Portwest Dr., Ste 120, Houston, TX 77024.

## JURISDICTION AND VENUE

10.      The Court has subject matter jurisdiction over this action, pursuant to Section 39(a) of the Lanham Act, 15 U.S.C. § 1121(a), and Sections 1131 (federal question jurisdiction), 1338(a) (trademark infringement), 1338(b) (unfair competition), and 1367(a) (supplemental jurisdiction over state law claims) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 1367(a).

11.      The Court has personal jurisdiction over CLE because it renders and advertises services to consumers in Texas, is registered in Texas, maintains a registered agent for service of

process in Texas, regularly does business in the state, purposefully directs its business activities toward Texas residents, and derives substantial revenue from its services used or consumed in Texas. CLE further promotes Bisou's and Bisou Holdings' services under the infringing BISOU designation to Texas residents and has authority over Bisou Holdings' use of BISOU in association with BISOU in Houston.

12.     The Court has personal jurisdiction over Bisou because it advertises, offers for sale and/or sells its services to consumers in Texas, including at BISOU (now called "Cle Supper Club" to comply with the 8/16 Order) at 2619 McKinney Avenue in Dallas, is registered in Texas, maintains a registered agent for service of process in Texas, regularly does business in the state, purposefully directs its business activities toward Texas residents, and derives substantial revenue from its services used or consumed in Texas. Bisou further promoted its services under the infringing BISOU designation to Texas residents.

13.     The Court has personal jurisdiction over Bisou Holdings because it renders and advertises services to consumers in Texas, including at BISOU at 4444 Westheimer Rd Suite A-120, Houston, TX 77027, is registered in Texas, maintains a registered agent for service of process in Texas, regularly does business in the state, purposefully directs its business activities toward Texas residents, and derives substantial revenue from its services used or consumed in Texas. Bisou Holdings also promotes its services and previously promoted Bisou's services under the infringing BISOU designation to Texas residents.

14.     Venue is proper in this District under 28 U.S.C. § 1391. A substantial portion of the events that give rise to this action occurred in this District, including at the restaurant BISOU located at 2619 McKinney Avenue, Suite 120, Dallas, Texas 75204, and Defendants are subject to personal jurisdiction in Texas.

## FACTUAL BACKGROUND

### BISOUS BISOUS

15.     Bisous Bisous is a family-owned pâtisserie located in the heart of Uptown Dallas.

Long a fixture at the White Rock Local Market in Dallas since at least as early as 2012, Bisous

Bisous opened its own retail shop and bakery—under the BISOUS BISOUS name—in 2015 on

McKinney Avenue. It quickly gained a devout following due to the talent of its owner, Le Cordon

Bleu College of Culinary Arts trained pastry chef Andrea Meyer.



16.     Chef Meyer was the CultureMap TasteMaker Award's "2019 Pastry Chef of the

Year." She has been invited to culinary events such as Taste of Dallas, Park and Palate, and Chefs

for Farmer and featured in promotional material for these events as the chef of BISOUS BISOUS

pâtisserie. For nearly a decade, Chef Meyer has been serving a variety of pastries and desserts

under the BISOUS BISOUS word and design marks:



17.     Bisous Bisous specializes in a large variety of French-style pastries made from scratch daily from the finest ingredients, including its signature French macarons, cruffins, croissants, tarts, éclairs, and custom-made cakes. Bisous Bisous also offers culinary classes (suspended for Covid), sells its products in multiple locations through its mobile food truck, and operates an off-site kitchen for its wholesale business.

18.     Bisous Bisous's high-quality products and services and the popularity of the BISOUS BISOUS brand is apparent from the numerous awards and recognitions that it has

received over the years. For example, BISOUS BISOUS was chosen in 2017 as the "Best Bakery" in Dallas by the Dallas Observer and continues to hold that title on the Observer's "Best of Dallas" list. It is on USA Today's "10Best" list as one of the top ten bakeries in Dallas. It was selected as the "Best Bakery for Sweets" in 2015 by D Magazine and was D Magazine's "Reader's Choice" for "Best Bakery for Sweets" in 2016.

19.     BISOUS BISOUS has also been the subject of numerous unsolicited media articles. *EATER Dallas* writes about BISOUS BISOUS in articles titled "10 Places to Indulge in Dallas's Finest Macarons" (2015), "Where to Find the Best Pies in DFW" (2017), and "17 Excellent Options for Father's Day Takeout" (2020), and *Thrillist* slates BISOUS BISOUS as one of "The Best Ice Cream Shops in Dallas" (2020).

20.     Chef Meyer and her BISOUS BISOUS bakery and branded desserts have also been the subject of numerous articles and interviews, including in news sources such as *The Daily Meal* (2015), *Shoutout DFW* (2020), the *Dallas Observer* (2014, 2015, 2019), and *Central Track* (2017).  In January 2017, Chef Meyer was featured in a cover article for *Bake* magazine, a national publication for members of the baking industry.  The article, which referred to BISOUS BISOUS as "BISOUS," noted that "the patisserie is widely regarded for having the best French macarons in Dallas" and that Chef Meyer "has successfully earned a name for her pastry shop as a local favorite in a highly competitive marketplace."



21.     In December 2019, Chef Meyer appeared on Fox 4 KDFW's *Good Day* program to feature BISOUS BISOUS's chocolate peppermint parfait, and again in February 2020 in celebration of the Fifth Anniversary of BISOUS BISOUS on McKinney Avenue:



11



22.     Bisous Bisous advertises its BISOUS BISOUS bakery and products through a variety of media outlets across the country, including via its website, at <bisous-bisous.com>, and social media such as Facebook and Instagram, where Bisous Bisous has nearly 18,000 followers. While much of the promotion of BISOUS BISOUS comes from word of mouth, Bisous Bisous also invests in advertising/marketing its business using the BISOUS BISOUS word and design marks. Its exceptional products, promotional efforts, and growing fan base are all reflected in its increasing sales and revenue.

23.     In addition to its common law trademark rights in the BISOUS BISOUS word and design marks, Bisous Bisous owns the following federal trademark registrations, some of which are *incontestable*:

- BISOUS BISOUS, Reg. No. 4,811,207, covering "bakery goods, excluding solid chocolate" in Class 30;
- BISOUS BISOUS, Reg. No. 5,120,605, covering "retail bakery shop" in Class 35;
- BISOUS BISOUS, Reg. No. 5,120,606, covering "café and restaurant services" in Class 43;

- BISOUS BISOUS PÂTISSERIE [& Design], Reg. No. 4,811,208, covering "bakery goods excluding solid chocolate" in Class 30;
- BISOUS BISOUS PÂTISSERIE [& Design], Reg. No. 5,106,226, covering "retail bakery shop" in Class 35;
- BISOUS BISOUS PÂTISSERIE [& Design], Reg. No. 5,106,227, covering "café and restaurant services" in Class 43.

Together, Bisous Bisous's common law rights and U.S. federal trademark registrations for the above marks are referenced herein as the "BISOUS Marks."

24.     As a result of Bisous Bisous's considerable investment of time, energy, and resources in the advertising and promotion of its products and services provided under BISOUS BISOUS, the BISOUS BISOUS name and marks have become well-known to the public and trade as identifying and distinguishing Bisous Bisous as the source of the high quality goods and services in connection with which the mark is used. The BISOUS BISOUS trademarks serve as unique source identifiers for Bisous Bisous's premium desserts and bakery services. The BISOUS BISOUS name and mark represent considerable goodwill of great value to Bisous Bisous. That goodwill has already suffered from CLE's unlawful use of BISOU. The damage to Bisous Bisous's trademark rights and high quality reputation is irreparable.

## CLE's Controversial Business Practices and Poor Reputation

25.     CLE is a Houston-based hospitality group that represents the nightclubs "Clé Day & Night," "Spire," and "Heart," restaurant "Kiss," and the infringing BISOU restaurants in both Houston and Dallas, which are owned and operated by Bisou Holdings and Bisou, respectively. CLE claims to represent the "best" in Houston hospitality, but its business practices have earned it a poor reputation instead.

26.     Defendants' nightclubs and restaurants are known for their crowded parties and "Instagram-able" scene more than the quality of their food or services.

13

27.     Since its opening in late 2018, and particularly in the last two years, the BISOU restaurant in Houston has been criticized by its customers, state regulators, and the industry. Below are just a few examples and excerpts of consumer reviews from BISOU Houston's pages on Yelp, Google, and Trip Advisor.

28.     Comments about BISOU Houston's "extremely underwhelming" food include reports of food poisoning and vermin:







29.     Customers have described experiencing unfair, discriminatory treatment and rude service by the staff and management at BISOU Houston:

14



**Deonte S.**
Houston, TX
📷 32  ⊙ 3

 ★☆☆☆☆  2/27/2021

My friends and I were racially profiled and not able to get in.  They let us in then 5 minutes later made us leave and wait to be let back in.  They 25-30 more ppl in while we waited.  Worst experience ever.  They let a white guy in with shorts, flip flops and backwards cap on.  That's when I knew it was racial!  I will never come to this establishment again.  I get wanted the place to be flooded with women but when you let all white guys in and not let us in after initially letting us in then making us leave to wait to be let back in to never met us in.  It was the most unprofessional establishment I've ever visited.  I'm going to all of my platforms to share this horrible experience and encourage my friends to never go in there.



**Laura G.**
Houston, TX
📷 12  ⊙ 30  🖼 8

★☆☆☆☆  2/25/2020

DO NOT dine here. Toulouse, Steak48, and MAD are better places to dine. Bartender didn't know what a high ball glass was, server was rarely present, brought the wrong food order, was celebrating a friends birthday and the table behind us got a little flaming candle while we did not. Drinks were wrong. Awful. We spoke to the manager and he could care less. There's a champagne lunch special on the website that has been on their website for several weeks that they do not honor. Can you say, Bait and switch? This restaurant won't be in Houston for too much longer.

P.S. They actually deleted my review from their Facebook page. Wow.



Crysie P
11 reviews                                                    ⋮

★★★★★  a year ago

I've been here several times and today was absolutely HORRIBLE! Poor service and our food was cold! They made us wait for hours before serving us while we watched the white ppl be services punctually. We started out with a white waiter and they switched us to a black waitress who was terrible and rude! I'll never patronize this place again and I spend a lot of money eating out! Bisou is canceled for me😒



🟢⚪⚪⚪⚪  Reviewed May 9, 2021  ☐ via mobile
**Terrible!**

Ihearttravel100
New York City, New York
📷 105  👍 45

Went for Mother's Day and the food was on the level of eating at a cafeteria. Not good at all. Also, nowhere did it say 20% gratuity automatically included, and when I asked for the manager, nobody came over. We got so frustrated, we just left.

Plus, my mom is handicapped with a handicapped placard, and with no place to park near the restaurant, we had to park valet down the way, and they charged $9 for it. Everywhere else, they waive fee for handicapped.

What a terrible experience all the way around!

30.     In the last year and a half, BISOU Houston has been plagued with negative reviews recounting its disregard for Covid safety precautions. As shown in the representative reviews and

15

excerpts below, several customers complained about BISOU's management flouting safety ordinances and that its practices even led to a "super spreader" event:







31.    As Covid-19 cases continued to increase in the summer of 2020 in the State of Texas, CLE's venues openly disobeyed the capacity limits and social distancing requirements imposed for the public's health and safety and continued to do so through 2021. Videos and images of crowded and largely mask-less gatherings at CLE's venues, including scenes of the crowded bar at BISOU Houston, an over-capacity pool party at Clé, and a concert at Spire went "viral" on

16

social media and prompted government officials to take action. Such violations earned Spire one of the first spots on the Houston mayor's "Wall of Shame," a collection of Houston establishments that failed to follow Covid guidelines, just as the mayor reported a record high of new coronavirus cases and additional deaths.

32.     As reported by the online publication *EATER Dallas*,[2] when the spread of Covid-19 led Texas Governor Greg Abbott to walk back his plans to reopen bars at limited capacity in the summer of 2020, CLE's venues continued to host crowded parties under a loophole in the Governor's executive order that allowed them to stay open as "reception halls." Members of the industry who were respecting government guidelines took to social media to express their disappointment with Defendants' irresponsible actions, which were "doing untold damage to our community and industries."[3]

33.     In the past year and a half, the Texas Alcoholic Beverage Commission has repeatedly suspended the liquor license at several of CLE's venues, including at BISOU Houston. Most recently, in June 2021, the liquor license at Clé was suspended for a *third* time—this time due to a deadly shooting at the nightclub.

### Defendants' Willful Infringement of the BISOUS Marks

34.     In January 2021, Bisous Bisous learned about CLE's intentions to open another restaurant under the infringing name BISOU in Dallas and promptly notified CLE of its longstanding trademark rights in the BISOUS Marks. Bisous Bisous objected to CLE's further infringement and requested that CLE cease use of the BISOU mark due to the inevitable confusion and damages that would result from CLE's use of a nearly identical mark in connection with a

---

[2] *See* supra n.1.
[3] https://www.facebook.com/sean.beck.1232/posts/10221061428778287.

restaurant selling identical goods and services to those sold by Bisous Bisous under the BISOUS Marks just one mile from BISOUS BISOUS.

35.     Despite admitting that BISOUS BISOUS is recognized in the Dallas, Texas area and that BISOU offers pastries just like BISOUS BISOUS does, Defendants forged ahead with its plans to expand to Dallas.

36.     On March 1, 2021, and notwithstanding its actual knowledge of Bisous Bisous's longstanding rights in and federal registrations for the BISOUS Marks, CLE filed U.S. trademark application Serial No. 90552573 for the mark BISOU CONTINENTAL for "[a]rranging and conducting nightclub entertainment events" in International Class 41 and "[r]estaurant and bar services, including restaurant carryout services" in International Class 43.

37.     In or around March 2021, the press began writing about CLE's forthcoming opening of BISOU in Dallas. At least one such article, titled "A Notorious Houston Hospitality Group Has a New Restaurant in the Works for Uptown Dallas" and published by *EATER Dallas*, discussed CLE's history of liquor license suspensions and packed-out parties during the pandemic.

38.     While Bisous Bisous continued to object to CLE's use of BISOU, CLE simply ignored Bisous Bisous's concerns. Instead, Bisou opened BISOU in Dallas, publicized the opening of BISOU in Dallas on social media using the infringing handle @bisoudtx and name "Bisou Dallas" on Instagram and Facebook, as well as the domain name *<bisoudallas.com>*, and continued to advertise and manage BISOU Dallas and render restaurant services under the infringing mark BISOU for over a week following the Court's 8/16 Order:

*Instagram*                                        *Facebook*



39.    As shown above, Bisou frequently displayed the name of its Dallas restaurant as BISOU alone. Defendants also refer to the Houston restaurant as BISOU alone.

40.    CLE also advertised and promoted BISOU on its website and social media accounts such as LinkedIn and Instagram:

19



4



5



4 https://www.linkedin.com/company/clegrouphtx/about/.
5 https://clegrouphtx.com/bisou-restaurant-houston/.

41.     Defendants' use of BISOU presents a high likelihood of confusion because the mark is virtually identical to the BISOUS Marks and is used in connection with restaurant services and food products.

42.     Like BISOUS BISOUS, BISOU Houston's French-inspired menu features pastries and desserts, as shown on CLE's website at https://bisourestaurant.com/dessert/.

43.     The BISOU Dallas menu is also French-inspired.  Upon information and belief, BISOU Dallas also offers a separate dessert menu similar to BISOU Houston and will soon begin serving brunch, including pastries.

44.     Bisous Bisous began experiencing actual confusion due to Defendants' use of BISOU even *before* the restaurant opened for business.  About one month before BISOU's opening, an individual mistakenly showed up at BISOUS BISOUS for an employee interview when, on information and belief, he was seeking to interview at BISOU.

45.     One week prior to the opening of BISOU, a carrier mistakenly delivered a large set of supplies intended for BISOU to BISOUS BISOUS. The delivery was addressed to "BISOU UPTOWN." The mistaken delivery, which took up a large portion of Bisous Bisous's limited office space, impeded its employees' ability to work until they were able to reach someone at BISOU to pick up the packages. Another delivery driver mistakenly called BISOUS BISOUS about a forthcoming delivery for BISOU.

46.     Defendants held and promoted a launch party for BISOU the night of July 7, 2021. Upon information and belief, Defendants encouraged party-goers to share their experience on social media using the hashtags #bisou and #bisoudallas and the location tag "Bisou Dallas."

47.     In light of BISOU Houston's and CLE's reputation, it is no surprise that CLE's newest restaurant by the same infringing name BISOU in Dallas quickly became known for the

21

same poor service and quality within hours of its opening.  Dozens of consumers seeking to recount their negative experiences at BISOU's opening left negative reviews about bad food, service, and treatment on the Internet; however, most of these reviews were posted on *BISOUS BISOUS's* pages on Yelp and Google.  Below is just a representative sample of the one-star reviews of BISOU submitted mistakenly on the Google page for BISOUS BISOUS on July 7–8, 2021:



48.     In just 24 hours, BISOUS BISOUS's Google rating had fallen as a result of the slew of one-star reviews intended for BISOU, but placed on BISOUS BISOUS's page. This is devastating for any business, and particularly a small business like BISOUS BISOUS that thrives on word of mouth promotion and on-line reviews.

49.     Consumers of BISOU also mistakenly selected the location tag for BISOUS BISOUS on Instagram and Facebook when posting photos of BISOU.





 As shown in the above-right screenshot taken from BISOUS BISOUS's location tag page on Instagram,[6] Instagram users looking for photos of BISOUS BISOUS will see a photo of BISOU mixed in with photos of BISOUS BISOUS.

---

[6] *See* https://www.instagram.com/explore/locations/419600349/bisous-bisous-patisserie.

50.     Since BISOU Dallas' opening, Bisous Bisous has received nearly forty calls intended for BISOU Dallas.  Bisous Bisous's employees and even Chef Meyer herself have had to field calls from consumers asking questions about BISOU, including whether they can bring balloons, what the hours are, whether they can make a reservation, and what the wait time is at BISOU.  On July 10, 2021 alone, Bisous Bisous's bakery manager counted *eleven* calls intended for BISOU.  Mistaken calls have continued in the weeks following, including after the 8/16 Order when Defendants continued using BISOU in association with the Dallas restaurant.

51.     Since its opening and despite these clear instances of confusion, Defendants continued to promote BISOU on websites and social media, including Instagram, using the standalone mark BISOU:



52.     Individuals seeking to reach BISOU continued to mistakenly call *BISOUS BISOUS*. BISOUS BISOUS received two calls on July 16, one call on July 20, four calls on July 24, and one call as recently as July 28—all seeking information about BISOU.

53.     Bisou's steady increase in the branding of its restaurant services and food with the term BISOU and Defendants' promotion of BISOU has already caused confusion and, unless permanently enjoined, will continue to cause confusion with the relevant public, eroding the goodwill and value that Bisous Bisous has built in the BISOUS Marks through continuous use for nearly a decade.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**
**(Section 32 of the Lanham Act, 15 U.S.C. § 1114(1))**

54.     Bisous Bisous re-alleges each of the allegations in the preceding paragraphs as if fully stated herein.

55.     As described above, Bisous Bisous owns the BISOUS Marks in connection with bakery goods, retail bakery shop services, and café and restaurant services.

56.     The U.S. federal trademark registrations for the BISOUS Marks—some of which are *incontestable*—are in full force and effect, and Bisous Bisous owns all right, title, and interest in them.

57.     The BISOUS Marks are inherently distinctive and continue to acquire distinctiveness and goodwill in the marketplace through Bisous Bisous's use of those marks in commerce. As a result of their widespread and continuous use, the BISOUS Marks have become associated in the minds of consumers and the industry with Bisous Bisous. The reputation and goodwill that it has built up in the BISOUS Marks is of great value to Bisous Bisous.

58.     Bisous Bisous's ownership and exclusive use in commerce of the BISOUS Marks predates the use by CLE of the infringing BISOU mark and other confusingly similar BISOU-formative marks.

59.     Defendants are using the infringing mark BISOU as a source identifier in interstate commerce in connection with the sale, offering for sale, and/or advertising of restaurant services and food/beverage products, including at BISOU in Dallas (until enjoined from doing so) and in Houston and in promotional materials on their websites and social media accounts.

60.     Defendants' use of BISOU was and is without Bisous Bisous's consent. Such unauthorized use by Defendants has caused confusion and mistake among consumers, and has

27

deceived consumers as to the origin, sponsorship, approval, or affiliation of Defendants' goods and services, and is likely to continue to do so, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

61.     Defendants' unlawful acts, which were committed, and continue to be committed at least with respect to BISOU Houston, with knowledge of Bisous Bisous's prior, registered rights in the BISOUS Marks, are knowing, willful, and done in bad faith.

62.     Defendants' acts have caused and, unless and until such acts are enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Bisous Bisous for which Bisous Bisous has no adequate remedy at law, including undermining consumers' association of the BISOUS Marks with Bisous Bisous.

63.     In light of the foregoing, Bisous Bisous is entitled to injunctive relief prohibiting Defendants, and anyone working in concert or participation with them, from using the BISOU mark or any other mark confusingly similar to the BISOUS Marks.

64.     Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions and have caused Bisous Bisous monetary damage in an amount presently unknown but to be determined at trial.

### COUNT II
### FEDERAL UNFAIR COMPETITION
### (Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

65.     Bisous Bisous re-alleges each of the allegations in the preceding paragraphs as if fully stated herein.

66.     As described above, Bisous Bisous owns the distinctive BISOUS Marks in connection with bakery goods, retail bakery shop services, and café and restaurant services through

its continuous use of the marks since at least as early as 2012 in Dallas, Texas, which is well prior to any use of BISOU by CLE.

67.     Bisous Bisous's common law rights in the BISOUS Marks predate CLE's infringing use of the BISOU mark and other confusingly similar BISOU-formative marks.

68.     Defendants' actions described above constitute use of a false designation of origin which wrongfully and falsely designates the origin of their goods and services and is likely to cause confusion or mistake and/or to deceive as to affiliation, connection, or association among and between the parties, or as to the origin, sponsorship, or approval of their goods and services by Bisous Bisous. As such, these actions constitute a false description or representation used in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

69.     Defendants' unlawful acts, which were committed, and continue to be committed at least with respect to BISOU Houston, with knowledge of Bisous Bisous's prior common law rights in the BISOUS Marks, are knowing, willful, and done in bad faith.

70.     Defendants' acts have caused and, unless and until such acts are enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause great harm and irreparable injury to Bisous Bisous for which Bisous Bisous has no adequate remedy at law, including undermining consumers' association of the BISOUS Marks with Bisous Bisous.

71.     In light of the foregoing, Bisous Bisous is entitled to injunctive relief prohibiting Defendants, and anyone working in concert or participation with them from using the BISOU mark or any other mark confusingly similar to the BISOUS Marks.

29

72.     Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions and have caused Bisous Bisous monetary damage in an amount presently unknown but to be determined at trial.

**COUNT III**
**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**
**UNDER TEXAS COMMON LAW**

73.     Bisous Bisous re-alleges each of the allegations in the preceding paragraphs as if fully stated herein.

74.     As described above, Bisous Bisous owns the distinctive BISOUS Marks in connection with bakery goods, retail bakery shop services, and café and restaurant services through its continuous use of the marks since at least as early as 2012 in Dallas, Texas, which is well prior to any use of BISOU by Defendants.

75.     Bisous Bisous's common law rights in the BISOUS Marks predate Defendants' infringing use of the BISOU mark and other confusingly similar BISOU-formative marks.

76.     Defendants are using the infringing mark BISOU as a source identifier in interstate commerce, and in the State of Texas, in connection with the sale, offering for sale, and/or advertising of restaurant services and food/beverage products, including at BISOU Dallas (until enjoined from doing so) and BISOU Houston and in promotional materials on CLE's website and social media accounts.

77.     Defendants' use of BISOU was and is without Bisous Bisous's consent. Such unauthorized use by Defendants has caused confusion and mistake among consumers in Texas, and has deceived Texas residents as to the origin, sponsorship, approval, or affiliation of Defendants' goods and services, and is likely to continue to do so. As such, Defendants' acts constitute trademark infringement and unfair competition under Texas common law.

78.     Defendants' unlawful acts, which were committed, and continue to be committed at least with respect to BISOU Houston, with knowledge of Bisous Bisous's prior common law rights in the BISOUS Marks—including after acknowledging that BISOUS BISOUS is recognized in the Dallas, Texas area—are knowing, willful, and done in bad faith.

79.     Defendants' acts have caused and, unless and until such acts are enjoined by this Court, will continue to cause, great harm and irreparable injury to Bisous Bisous for which Bisous Bisous has no adequate remedy at law, including undermining consumers' association of the BISOUS Marks with Bisous Bisous.

80.     In light of the foregoing, Bisous Bisous is entitled to injunctive relief prohibiting Defendants, and anyone working in concert or participation with them from using the BISOU mark or any other mark confusingly similar to the BISOUS Marks.

81.     Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions and have caused Bisous Bisous monetary damage in an amount presently unknown but to be determined at trial.

## COUNT IV
## ORDER FOR EXPRESS ABANDONMENT/REFUSAL OF CLE'S TRADEMARK APPLICATION FOR BISOU CONTINENTAL
### (Section 37 of the Lanham Act, 15 U.S.C. § 1119)

82.     Bisous Bisous re-alleges each of the allegations in the preceding paragraphs as if fully stated herein.

83.     This Court has the power to determine whether CLE is entitled to registration of the mark BISOU CONTINENTAL as claimed in CLE's trademark application Serial No. 90552573 under Section 37 of the Lanham Act, 15 U.S.C. § 1119, because this action involves federally registered trademarks.

84.     This action, including Bisous Bisous's Count I under 15 U.S.C. § 1114(1), involves the federally registered BISOUS Marks.

85.     There is a close nexus between CLE's trademark application Serial No. 90552573 and Bisous Bisous's prior-registered BISOUS Marks at issue in this case. CLE seeks to register the mark BISOU CONTINENTAL, which is confusingly similar to the BISOUS Marks, for virtually identical goods.

86.     In light of Bisous Bisous's prior-used and prior-registered BISOUS Marks, CLE's use and proposed registration of BISOU CONTINENTAL as a trademark in commerce in connection with the advertising, rendering, offering for sale, and/or sale of the applied-for services in Serial No. 90552573 is likely to cause confusion, to cause mistake, and/or to deceive consumers as to the origin, source, or affiliation of CLE's goods.

87.     As a result of the likelihood of confusion, Bisous Bisous will be damaged by the registration of CLE's trademark application Serial No. 90552573.

88.     In light of the foregoing, registration of CLE's Serial No. 90552573 should be refused under 15 U.S.C. § 1052(d). Registration of CLE's Serial No. 90552573 should also be refused because the application was filed by CLE despite that CLE does not have—and did not have at the time of the filing of Serial No. 90552573—a bona fide intent to use the BISOU CONTINENTAL mark in commerce with the applied-for services by virtue of the fact that it "does not control the determination or use of either [BISOUS] restaurant's marks or signage." CLE's application is therefore *void ab initio*.

89.     Accordingly, Bisous Bisous seeks a declaration that CLE is not entitled to registration of the mark BISOU CONTINENTAL in Serial No. 90552573, and that the Court

certify an Order to the Director of the United States Patent and Trademark Office to refuse registration of U.S. Serial No. 90552573.

90.     In the alternative, Bisous Bisous seeks an order from the Court directing CLE to file with the USPTO a Request for Express Abandonment (Withdrawal) of Application for U.S. Serial No. 90552573.

## PRAYER FOR RELIEF

For these reasons, plaintiff Bisous Bisous respectfully prays that this Court enter judgment in its favor and against Defendants as follows:

A.     That the Court enter judgment in favor of Bisous Bisous, including injunctive relief, and against Defendants, on all claims for relief asserted in the Second Amended Complaint;

B.     That the Court enter judgment determining that Defendants willfully infringed Bisous Bisous's registered BISOUS Marks in violation of the Lanham Act, 15 U.S.C. § 1114;

C.     That the Court enter judgment determining that Defendants committed willful acts of false designation of origin through its unauthorized use of the BISOUS Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a);

D.     That the Court enter judgment determining that Defendants willfully infringed the BISOUS Marks and committed unfair competition under Texas common law;

E.     That the Court grant an injunction permanently enjoining and restraining Defendants, their officers, agents, servants, employees, attorneys, and all persons acting for, by, through, or under them, or in concert with them from doing the following:

     1.     Using the term "BISOU" (or any similar or derivative term including any BISOU-formative term) in association with restaurant services and food and/or beverage services or products, including in advertising or promotional material for the same or in domain names;

     2.     Using the term "BISOU" (or any similar or derivative term including any

33

BISOU-formative term) in any other manner that creates confusion  or is likely to create confusion with Bisous Bisous's BISOUS Marks;

3.  Using the term "BISOU" (or any similar or derivative term including any BISOU-formative term) which in any way constitutes unfair competition with Bisous Bisous; and

4.  Registering or applying to register any trademark, service mark, domain name, or other source identifier or symbol of origin consisting of or incorporating the term "BISOU" or any other similar or derivative term that infringes or is likely to be confused with the BISOUS Marks including any BISOU-formative term.

F.  Consistent with Paragraph (F) above, that the Court order Defendants to:

1.  Remove from display any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the term "BISOU" or any similar or derivative term that infringes or is likely to be confused with the BISOUS Marks including any BISOU-formative term, including from all Internet webpages and social media accounts within Defendants' custody or control;

2.  Deliver to the Court for destruction, or to show proof of destruction of, any and all physical advertisements and marketing, promotional materials, and sales materials comprising, bearing, or displaying the term "BISOU" or any similar or derivative term that infringes or is likely to be confused with the BISOUS Marks including any BISOU-formative term, including all signage and menus; and

3.  Cancel the registration of any domain names comprising or consisting of the term "BISOU" or any confusingly similar term, including <bisourestaurant.com> and <bisoudallas.com>.

G.  That the Court issue an order directing Defendants to file with the Court and serve on Bisous Bisous within thirty (30) days after service on them of an injunction, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

H.  That the Court determine that CLE is not entitled to registration of the mark BISOU CONTINENTAL that is the subject of CLE's trademark application U.S. Serial No. 90552573;

34

I.      That the Court certify an order to the Director of the USPTO, pursuant to 15 U.S.C. § 1119, to refuse registration of U.S. Serial No. 90552573 or, in the alternative, issue an order directing CLE to file with the USPTO a Request for Express Abandonment (Withdrawal) of the Application for U.S. Serial No. 90552573.

J.      That the Court award to Bisous Bisous monetary relief in an amount to be fixed by the Court in its discretion as just, including:

      1.    All profits received by Defendants from sales and revenues of any kind made as a result of its trademark infringement and unfair competition;

      2.    All damages sustained by Bisous Bisous as a result of Defendants' infringement and unfair competition, including ascertainable damages, the costs incurred by Bisous Bisous for corrective advertising, the costs for this action, and Bisous Bisous's reasonable attorneys' fees.

K.      That the Court declare this an exceptional case in light of Defendants' knowing and willful infringement of the BISOUS Marks;

L.      That Bisous Bisous's damages be trebled;

M.      That the Court award to Bisous Bisous pre-judgment and post-judgment interest on all damages awarded, as permitted by law; and

N.      That the Court award to Bisous Bisous all other relief as this Court considers just and proper.

Respectfully submitted,

**FISH & RICHARDSON P.C.**

Dated: October 1, 2021                    By: */s/ David B. Conrad*

                                  David B. Conrad
Texas Bar No. 24049042
conrad@fr.com
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

Kristen McCallion (admitted *pro hac vice*)
mccallion@fr.com
Vivian Cheng (admitted *pro hac vice*)
cheng@fr.com
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

*Attorneys for Plaintiff*
BISOUS BISOUS LLC

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 1, 2021, a true and correct copy of the foregoing document has been filed with the clerk of court for the U.S. District Court, Northern District of Texas and served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

Dated: October 1, 2021                                      */s/ David B. Conrad*
                                                            David B. Conrad