UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BISOUS BISOUS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-1614-B |
| | § | |
| THE CLE GROUP, LLC, BISOU | § | |
| UPTOWN MANAGER, LLC, and | § | |
| BISOU LP HOLDINGS, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants The Cle Group, LLC and Bisou Uptown Manager, LLC[1] (collectively "Cle")'s Motion for Bond (Doc. 52). At issue is whether Defendants' request for bond exceeds the cost of complying with the Court's August 16, 2021, Preliminary Injunction ("PI") and whether Cle provides sufficient evidence for the Court to calculate or estimate a bond amount. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the pending motion.

---

[1] At the time of filing this motion, The Cle Group, LLC and Bisou Uptown Manager, LLC were the known Defendants in this case. *See* Doc. 26, Am. Compl. On October 4, 2021, Bisous Bisous LLC filed a Second Amended Complaint that added Bisou LP Holdings, LLC as a named defendant in the case. *See* Doc. 73, 2d Am. Compl. For the purposes of this motion, the Court only considers the defendants known at the time this motion was filed.

- 1 -

I.

BACKGROUND

At the August 11, 2021, hearing to determine whether the Court should grant Plaintiff Bisous Bisous LLC ("Bisous Bisous")'s Motion for a Preliminary Injunction (Doc. 12), Cle asked the Court to order Bisous Bisous to post a bond. Doc. 45, Order, 31. The Court denied Cle's request without prejudice, but allowed Cle to request such relief by formal motion. *Id.* Cle filed a Motion for Bond on August 27, 2021. Doc. 52, Defs.' Mot. Bisous Bisous filed its Response on September 17, 2021. Doc. 69, Pl.'s Resp. The Court now considers Cle's motion.

II.

LEGAL STANDARD

Federal Rule of Civil Procedure 65(c) grants a court the authority to "issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The "amount of security required pursuant to Rule 65(c) 'is a matter for the discretion of the trial court.'" *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d. 300, 303 (5th Cir. 1978) (per curiam)). When determining the amount, a court "may elect to require no security at all." *Id.* (quoting *Corrigan Dispatch*, 569 F.2d at 303.)

III.

ANALYSIS

Cle requests that the Court order Bisous Bisous to post bond in the amount of $140,000 to cover costs associated with complying with the Court's Preliminary Injunction Order issued on

August 16, 2021. Doc. 52, Defs.' Mot., 1. Cle relies on *TGI Friday's, Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 763 (N.D. Tex. 2009), and argues that the Court may exercise its discretion to "do a little rough justice" in determining the amount of the bond. *Id.* at 3–4 (first discussing *TGI Friday's*, then quoting "The People's Court" Judge Marilyn Milian). Defendant lists the following costs associated with the restaurant name change:

- $37,000 to "create, deliver, and install" signs with the new name
- $10,000 as an "approximate" cost to redesign the website to remove the word "bisou"
- $20,000 in attorneys' fees to change the name and apply for a new trademark
- $62,000 in "approximate" costs to "recreat[e], rebrand[], redesign[], remarket[], and repackag[e]" to remove references to "bisou"
- $11,000 "as an estimate in 'miscellaneous cost'" to ensure compliance with the PI

*Id.* 4–5.

Bisous Bisous argues against setting any amount of bond in this case "due to the strength of Bisous Bisous's case." Doc. 69, Pl.'s Resp., 6. Additionally, Bisous Bisous contends that individuals continue to confuse the two companies and this demonstrates a likelihood of success on the merits of the case. *Id.* at 6–7. Bisous Bisous concludes that this means no bond should be set. *Id.* at 7. In the alternative, Bisous Bisous requests that the Court lower the amount of the bond because of "(1) the strength of Bisous Bisous's evidence of confusion . . . , and (2) the irrelevant and speculative nature of Defendants' basis for its outsized request for $140,000." *Id.* Bisous Bisous contends that many of Defendants' costs "far exceed the scope" of the Court Order. *Id.*

In *TGI Friday's*, a franchisor sought a preliminary injunction against its franchisees to prevent the "use of its trademarks and service marks in connection with ten restaurants" owned and operated

by the franchisees. 652 F. Supp. 2d at 765. The franchisees stopped paying the franchise fees but continued to use TGI Friday's ("TGIF")'s marks. *Id.* at 766. The only element of infringement in dispute in the case was "whether [the franchisees were] using TGIF's marks with its consent, or whether their use [was] unauthorized." *Id.* at 768. The court found all four factors for a preliminary injunction weighed in favor of TGIF and granted a PI. *Id.* at 767–73. When determining whether to require bond with the PI, the court took into consideration TGIF's "strong likelihood of success on the merits" and that the franchisees' restaurants could continue to operate—albeit after removing TGIF's marks. *Id.* at 774. Ultimately, the court set the bond at $100,000—far below the requested $10 million bond—due in part to a lack of evidence in the record for calculating or estimating the costs "of removing TGIF's marks from their restaurants," and the cost of compliance, which included "legal fees and expenses of litigation." *Id.*

Just like in *TGI Friday's*, Cle may still operate their restaurant in Uptown Dallas while complying with the PI. *See* Doc. 45, Order, 30–31 (enjoining the use of the word "Bisou", but continuing to allow the restaurant to operate). But unlike the franchisor in *TGI Friday's*, Cle provides the Court some estimations of the costs of compliance with the preliminary injunction. *See* Doc. 52, Defs.' Mot., 4–5 (citing attachments and appendices containing invoices). The Court now addresses each claimed cost in turn.

For the new signage, Cle provides an invoice from December 21, 2020, listing the costs for installing the original "Bisou" signage. Doc. 53-2, Attach. A, 1. Since this invoice details the cost of the original signs, this invoice does not provide the Court with any evidence from which to calculate or estimate the costs of the new signs for the restaurant. Furthermore, the invoice is for the cost of installing new signage, not the cost removing the old signage, which is what the PI requires. *See* Doc.

45, Order, 30–31; *cf. TGI Friday's*, 652 F. Supp. 2d at 774 (discussing the cost "of removing TGIF's marks from their restaurants"). Accordingly, the Court finds a bond for this cost unwarranted.

To redesign the website, Cle provides an invoice from August 17, 2021, charging $10,000 for a "[c]omplete online branding redesign." Doc. 53-3, Attach. B, 1. The PI required Cle to remove the infringing mark from their website, not to redesign their website. *See* Doc. 45, Order, 30–31. As such, the Court finds an amount of $1,000 appropriately covers the cost for removing the infringing mark from the website.

Next, Cle provides an invoice dated August 18, 2021, charging a $20,000 flat attorney's fee to "chang[e] the name of the company with all governmental entities" and trademark the new name. Doc. 53-4, Attach. C, 1. The PI required Cle to stop "using the term 'Bisou' in association with restaurant services and food and/or beverage products, including advertising." Doc. 45, Order, 30–31. As Cle's Dallas restaurant was named Bisou Uptown, Cle had to change the corporate identity of the restaurant to come into full compliance. The costs for changing the name are therefore warranted. But the PI did not require Cle to trademark their new name, so the Court finds half of the attorney's fees, $10,000, appropriate for covering the cost of complying with the PI.

For the comprehensive rebranding, Cle provides an invoice dated August 24, 2021, listing $15,500 for "Naming/Brand Identity/Logo Design," $20,500 for "Website Design & Development," $7,500 for "Graphic Design Package," and $18,500 for Digital Marketing Package for a total of $62,000. Doc. 53-5, Attach. D, 1–2. The PI enjoined Cle from using the infringing mark and did not require Cle to rebrand. *See* Doc. 45, Order, 30–31. Therefore, these costs exceed the scope of bringing the restaurant into compliance with the PI and this amount is unwarranted.

Lastly, Cle claims $11,000 in "miscellaneous costs" associated with complying with Bisous Bisous's correspondence from August 23, 2021, that detailed ten instances of continued used of the term "Bisou." Doc. 53-6, Attach. E, 1–2. Because Cle did not provide any receipts or any method to calculate these miscellaneous costs, the Court finds a bond for this amount is unwarranted. *See TGI Friday's*, 652 F. Supp. 2d at 774 (reducing bond due to a lack of evidence to calculate the cost of compliance).

## IV.

## CONCLUSION

For the above reasons, Cle's Motion for Bond is **GRANTED IN PART** and **DENIED IN PART**. The Court **ORDERS** Bisous Bisous to file with the Court a bond in the amount of $11,000 within **FOURTEEN (14)** days of this Order.

**SO ORDERED.**

**SIGNED: October 15, 2021.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE